3/12/2021 12:26 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 51424502
By: Monica Jackson
Filed: 3/12/2021 12:26 PM

CAUSE NO. _____

| | | |
|---|---|---|
| WHITE STAR PETROLEUM HOLDINGS, LLC LITIGATION TRUST, | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § § | |
| v. | § § | |
| THE ENERGY & MINERALS GROUP LP, JOHN T. RAYMOND, ELLIOT J. CHAMBERS, SCOTT R. MUELLER, LOUIS JOHN SCHAUFELE IV, LAURA A. TYSON, EMG WHITE STAR HOLDINGS LLC, EMG LIGHTHOUSE HOLDINGS LLC, EMG FUND III MANAGEMENT LP, THE ENERGY & MINERALS GROUP FUND III LP, EMG FUND III GP LP, EMG FUND II MANAGEMENT LP, EMG FUND II GP LP, THE ENERGY & MINERALS GROUP FUND II LP, | § § § § § § § § § § § § § § § § § | _____ JUDICIAL DISTRICT |
| *Defendants.* | § | HARRIS COUNTY, TEXAS |

---

**PLAINTIFF WHITE STAR PETROLEUM HOLDINGS, LLC
LITIGATION TRUST'S ORIGINAL PETITION**

---

**TO THE HONORABLE JUDGE OF THIS COURT:**

Plaintiff, White Star Petroleum Holdings, LLC Litigation Trust (the "**Trust**"), through its trustee Harold L. Kaplan (the "**Trustee**") files this Original Petition complaining of Defendants The Energy & Minerals Group LP ("**EMG**"); John T. Raymond, Elliot J. Chambers, Scott R. Mueller, Louis John Schaufele IV, Laura A. Tyson (collectively the "**Managers, Members, Officers, and Executives**"); EMG White Star Holdings LLC ("**EMG White Star Holdings**"); EMG Lighthouse Holdings LLC, EMG Fund III Management LP, The Energy & Minerals Group Fund III LP, EMG Fund III GP LP, EMG Fund II Management LP, EMG Fund II GP LP, The Energy & Minerals Group Fund II LP (collectively the "**EMG-Related Entities**") and respectfully would show as follows:

**INTRODUCTION**

1.      This dispute arises out of White Star's[1] purchase of Lighthouse Oil and Gas LP ("**Lighthouse**") for the excessive and wholly unsubstantiated price of $108 million—almost double the value of the Lighthouse assets.  This transaction can only be described as the product of incestuous business relationships, irreconcilable conflicts of interest and unchecked self-dealing.

2.      The excessive price paid by White Star becomes more troubling considering the circumstances leading to the transaction.  Prior to White Star's negotiations with Lighthouse, the auditors for Lighthouse performed a review of the company and concluded it was in severe financial distress and that there was "substantial doubt about [its] ability to continue as a going concern."

---

[1] White Star Petroleum Holdings, LLC and subsidiary White Star Petroleum, LLC (collectively "**White Star**").

3.      Shortly after learning the dire news, private equity company EMG, a major investor in Lighthouse, along with related managers, members, officers, executives, and affiliates began plotting a solution to avoid the seemingly inevitable Lighthouse bankruptcy and approximate $60 million write-off that would result.

4.      Notwithstanding the real value of the Lighthouse assets and the fact that it was on the brink of insolvency, EMG foisted Lighthouse onto the EMG-controlled White Star at a grossly inflated purchase price.  By improperly exercising its controlling ownership position in White Star, EMG (along with related managers, members, officers, executives and affiliates) coercively directed White Star to use Lighthouse's own "self-valuation" of $108 million to set the deal price, all to the benefit of EMG and the fatal detriment of White Star.

5.      Throughout negotiations, there were red flags suggesting ulterior motives behind the transaction.  Even though EMG and the White Star board recognized that EMG had interests on both sides of the transaction, White Star was never allowed to obtain an independent valuation of Lighthouse.  Unsurprisingly, internal evaluations performed by White Star, including a third-party audit of Lighthouse's supposed "proven undeveloped reserves" ("**PUDs**"), showed that Lighthouse's self-valuation was an exaggeration of the true value of those assets.

6.      Yet, even after EMG and related managers, members, officers, executives, and affiliates were told that Lighthouse's valuation was based on a bogus methodology that hinged, at least in part, on fanciful estimates of Lighthouse's PUDs (resulting in a wildly inaccurate valuation), they forced White Star to proceed with the acquisition based solely on the self-valuation.  Ultimately, following a complete abdication by all involved, White Star succumbed to these efforts, consummated the conflicted transaction, and was financially sacrificed as a result – having overpaid for Lighthouse by more than $45 million and incurring more than $23 million

more in cash capital expenditures and millions more for Lighthouse's operations.  The transaction amounted to a forced bailout of Lighthouse with absolutely no benefit to White Star. The burden of the bloated Lighthouse transaction ultimately (and foreseeably) led to White Star's insolvency. The Litigation Trust brings this action to recover for these damages.

**DISCOVERY CONTROL PLAN**

7.      Plaintiff intends to conduct discovery under Level 3 of Texas Rule of Civil Procedure 190.

**PARTIES**

**PLAINTIFF**

8.      Plaintiff White Star Petroleum Holdings, LLC Litigation Trust is a business trust created by the confirmed Joint Chapter 11 Plan of Liquidation of White Star Petroleum Holdings, LLC and its Debtor Affiliates and the related Litigation Trust Agreement.[2]  The Trust, through trustee Harold L. Kaplan, was created to investigate, prosecute, and otherwise pursue viable potential causes of action assigned to the Trust by debtors White Star Petroleum Holdings, LLC, White Star Petroleum, LLC, White Star Petroleum II, LLC, WSP Finance Corporation, and White Star Petroleum Operating, LLC (collectively, "**Debtors**") for the benefit of creditors with certain allowed unpaid claims against the debtors' estate, including specifically "any claim or cause of action related to, or in connection with, the debtors' acquisition of Lighthouse Oil & Gas LP." Some of these beneficiaries reside in and are citizens of Texas and Oklahoma.  All claims asserted herein have been assigned to the Trust and the Trust has absolute authority and standing to assert and prosecute these claims for the benefit of the beneficiaries of the Trust.

---

[2] *See In re White Star Petroleum Holdings, LLC, et al.,* Case No. 19-12521-JDL (Bankr. W.D. Okla.) (the "**Bankruptcy Proceeding**").

**DEFENDANT EMG**

9.      Defendant The Energy & Minerals Group LP ("**EMG**"), is a Delaware entity with its principal place of business located in Texas.  The Energy and Minerals Group controlled, directly or indirectly, all of the EMG-Related Entities as well as EMG White Star Holdings, LLC. The Energy & Minerals Group may be served with citation by serving the citation and a copy of the petition on its Managing Partner and Chief Executive Officer, John T. Raymond.  Mr. Raymond may be served at 2229 San Felipe Street, Suite 1300, Houston, Texas 77019.

**DEFENDANT MANAGERS, MEMBERS, OFFICERS, AND EXECUTIVES**

10.      Defendant John T. Raymond ("**Raymond**"), an individual residing in Harris County, Texas, served as CEO, managing partner, and co-founder of EMG, as well as a member of the board of managers of White Star during the relevant time.  Mr. Raymond also served as an executive and/or board member of various EMG-Related Entities on both sides of the Lighthouse transaction, including as CEO of EMG White Star Holdings, LLC and EMG Lighthouse Holdings, LLC, among others.  He may be served with citation at his usual place of business in Harris County, at 2229 San Felipe Street, Suite 1300, Houston, Texas 77019, or wherever he may be found.

11.      Defendant Elliot J. Chambers ("**Chambers**"), an individual residing in Oklahoma, served as CEO and on the board of managers for White Star during the relevant time.  Mr. Chambers is subject to the jurisdiction of this Court because, among other things, he regularly communicated with and conducted business with other Defendants in Texas pursuant to his duties to White Star and travelled to Harris County, Texas for board meetings.  He may be served with citation at Commissioners of the Land Office State of Oklahoma 204 N. Robinson, Suite 900 Oklahoma City, Oklahoma 73102, or wherever he may be found.

12.     Defendant Scott R. Mueller ("**Mueller**"), an individual residing in Oklahoma, served on the board of managers of White Star during the relevant time.  Mr. Mueller is subject to the jurisdiction of this Court because, among other things, he regularly communicated with and conducted business with other Defendants in Texas pursuant to his duties to White Star and travelled to Harris County, Texas for board meetings.  He may be served with citation at Avondale Acquisition Corp. 301 NW 63, Suite 400 Oklahoma City, Oklahoma 73116, or wherever he may be found.

13.     Defendant Louis John Schaufele IV ("**Schaufele**"), an individual residing in Texas, is a principal at EMG who also served as a member of the board of managers of White Star during the relevant time.  He may be served with citation at 3641 Greenbrier Dr., Dallas, Texas 75225-5106, or wherever he may be found.

14.     Defendant Laura A. Tyson ("**Tyson**"), an individual residing in Harris County, Texas, is managing director of EMG and was EMG's general counsel and Chief Compliance Officer during the relevant time.  Ms. Tyson also served as a member of the board of managers of White Star.  She may be served with citation at her usual place of business in Harris County, at 2229 San Felipe Street, Suite 1300, Houston, Texas 77019, or wherever she may be found.

**DEFENDANT EMG WHITE STAR HOLDINGS**

15.     Defendant EMG White Star Holdings, LLC ("**EMG White Star Holdings**") is a Delaware entity with its principal place of business located in Texas.  Defendant EMG White Star Holdings owned a majority interest in White Star Holdings, LLC, thereby controlling White Star. Defendant EMG White Star Holdings may be served with citation by serving the citation and a copy of the petition on its registered agent as follows: John T. Raymond, 2000 McKinney Ave., Suite 1250 Dallas, TX 75201.

### DEFENDANT EMG-RELATED ENTITIES

16.     Defendant EMG Lighthouse Holdings, LLC ("**EMG Lighthouse Holdings**") is a Delaware entity with its principal place of business located in Texas.  Defendant EMG Lighthouse Holdings was one of the two largest interest holders in Lighthouse with an ownership interest of approximately 49% and exercised control over Lighthouse.  Defendant EMG Lighthouse Holdings may be served with citation by serving the citation and a copy of the petition on its registered agent as follows: John G. Calvert, 2000 McKinney Ave., Suite 1250 Dallas, Texas 75201.

17.     Defendant EMG Fund III Management, LP is a Delaware entity with its principal place of business located in Texas.  It is one of the entities through which EMG exerted control over White Star and EMG White Star Holdings, LLC.  Defendant EMG Fund III Management, LP may be served with citation by serving the citation and a copy of the petition on its registered agent as follows: John G. Calvert, 2000 McKinney Ave., Suite 1250 Dallas, Texas 75201.

18.     Defendant The Energy & Minerals Group Fund III, LP is a Delaware entity with its principal place of business located in Texas.  It is one of the entities through which EMG exerted control over White Star and EMG White Star Holdings, LLC.  Defendant The Energy & Minerals Group Fund III, LP may be served with citation by serving the citation and a copy of the petition on its registered agent as follows: John G. Calvert, 2000 McKinney Ave., Suite 1250 Dallas, Texas 75201.

19.     Defendant EMG Fund III GP, LP is a Delaware entity with its principal place of business located in Texas.  It is one of the entities through which EMG exerted control over White Star and EMG White Star Holdings, LLC.  Defendant EMG Fund III GP, LP may be served with citation by serving the citation and a copy of the petition on its registered agent as follows: John G. Calvert, 2000 McKinney Ave., Suite 1250 Dallas, Texas 75201.

20.     Defendant EMG Fund II Management, LP is a Delaware entity with its principal place of business located in Texas.  It is one of the entities through which EMG exerted control over Lighthouse.  Defendant EMG Fund II Management, LP may be served with citation by serving the citation and a copy of the petition on its Chief Executive Officer, John T. Raymond at 2000 McKinney Avenue, Suite 1250, Dallas, Texas 75201 or wherever he may be found.

21.     Defendant EMG Fund II GP, LP is a Delaware entity with its principal place of business located in Texas.  It is one of the entities through which EMG exerted control over Lighthouse.  Defendant EMG Fund II GP, LP may be served with citation by serving the citation and a copy of the petition on its Chief Executive Officer, John T. Raymond at 2000 McKinney Avenue, Suite 1250, Dallas, Texas 75201 or wherever he may be found.

22.     Defendant The Energy & Minerals Group Fund II, LP is a Delaware entity with its principal place of business located in Texas.  It is one of the entities through which EMG exerted control over Lighthouse.  Defendant The Energy & Minerals Group Fund II, LP may be served with citation by serving the citation and a copy of the petition on its Chief Executive Officer, John T. Raymond at 2000 McKinney Avenue, Suite 1250, Dallas, Texas 75201 or wherever he may be found.

## JURISDICTION AND VENUE

23.     This Court has general and specific personal jurisdiction over Defendants, as they have continuous and systematic contacts with the State of Texas and sufficient minimum contacts with the State of Texas, such that the exercise of personal jurisdiction over Defendants is consistent with any constitutional due process rights and traditional notions of fair play and substantial justice.  Defendants have engaged in business in Texas and/or the causes of action asserted herein arose from and/or relate to purposeful acts committed by Defendants in Texas.

24.     The amount in controversy exceeds this Court's minimum jurisdictional requirements.

25.     Plaintiff expressly pleads that its claims are based on state law and that it has not alleged, nor does it intend to allege, any claims arising under federal law so as to invoke federal question jurisdiction under 28 U.S.C. § 1331.  There is not complete diversity of the parties, thus precluding removal under 28 U.S.C. § 1441(b)(2).  For example, some of the Plaintiff Trust's debtor-beneficiaries as well as some of the Defendants reside in Texas and Oklahoma.

26.     Venue is proper in Harris County, Texas, under Chapter 15 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE because all or a substantial part of the events giving rise to Plaintiff's claims occurred in Harris County, Texas.  TEX. CIV. PRAC. & REM. CODE § 15.002(a). In addition, EMG's executive offices and principal place of business are located in Harris County, Texas.

## FACTS

### BACKGROUND

27.     White Star and the other Debtors were in the oil and gas exploration and production business from early 2014 on and owned and developed various mineral interests in Oklahoma.

28.     EMG, through defendant EMG White Star Holdings, LLC, and other companies, owned the vast majority of the White Star ownership interests.

29.     Through those ownership interests and its appointment of EMG employees Raymond, Tyson, and Schaufele to White Star's board of managers, EMG controlled White Star throughout White Star's existence.

30.     Chambers, White Star's former chief executive, and Mueller, the designee of a minority owner of White Star, were the other members of White Star's board.

**WRONGFUL CONDUCT**

31.     In March of 2016, Lighthouse's consolidated financial statements for the year ending December 31, 2015 revealed Lighthouse was going bankrupt.  Auditors noted:

> At December 31, 2015 Lighthouse is compliant with the financial covenants of its revolving credit facility.  However, Management has prepared forecasts for 2016 and based on the current forecasts there is considerable risk that a borrowing base deficiency will arise in the second quarter of 2016.  The borrowing base review is scheduled to occur in May 2016 and due to the decline in commodity prices and reserves it is unlikely that the Company's borrowing base will be maintained at current levels and as such the amount drawn could exceed the amount available (see also note 6).  Presently, Management is uncertain about both the timing of the change in borrowing base and the amount. These factors **create a substantial doubt about the Company's ability to continue as a going concern**.

32.     A few months later, after Lighthouse's borrowing base redetermination was to occur, EMG – which owned approximately 49% of Lighthouse and was the majority owner of White Star – directed White Star to merge with Lighthouse.

33.     Pursuant to EMG's directive, White Star performed an evaluation of Lighthouse that yielded a $60 million valuation.  In response, EMG explicitly directed White Star to instead use Lighthouse's own inflated self-valuation in determining the relative values of the companies for purposes of the transaction. Lighthouse's self-valuation placed its value at or around $108 million – nearly double the value that White Star had placed on the Lighthouse assets. Remarkably, this $108 million was the amount White Star ultimately paid for Lighthouse.

34.     At all times, EMG and related managers, members, officers, executives, and affiliates knew Lighthouse's self-valuation was false and misleading.  In fact, at least one White Star employee warned that the Lighthouse self-valuation was "way off."

35.     Although EMG and White Star's board and management talked for months about the need for a fairness opinion to ensure that the price paid for Lighthouse was legitimate and the result of a fair process, no fairness opinion was ever obtained.

36.     Moreover, there does not appear to have been any sort of marketing or competitive bidding process for Lighthouse or its assets that might have provided an independent check on the fairness of the Lighthouse price.

37.     EMG simply dictated the price that would be paid for Lighthouse and White Star's board and management acquiesced and agreed, thereby abdicating their responsibility to ensure that White Star was paying a legitimate price and conducting a fair process.

38.     Ultimately, through the Bankruptcy Proceeding, all White Star's assets were sold to Contango Oil & Gas a few years later, with White Star receiving for the Lighthouse assets only a small fraction of what White Star had previously been directed to pay for them.

39.     White Star's board and management knew or ought to have known that the Lighthouse valuation was false and misleading.

40.     At the time of the Lighthouse transaction, EMG and White Star's board and management received several clear indications that Lighthouse's self-valuation lacked integrity:

    a.  White Star staff explicitly told certain members of White Star's board that Lighthouse's valuation of Lighthouse's PUDs was grossly overstated.

    b.  A third-party oil and gas reserves analysis valued Lighthouse's PUDs at about half of the value Lighthouse placed on them and valued White Star's reserves at a significantly higher price than the price used in determining the merger consideration.

    c.  In at least three contemporaneous deals, White Star's board and management assigned little to no value to PUDs or undeveloped acreage, yet in the Lighthouse transaction they paid a very high price for such assets, which accounted for more than 70% of the Lighthouse purchase price.  This

was all contrary to any sound methodology.

      d.   White Star acquired significant assets from Devon Production Company, LP in 2016 for 1/5 of the relative price paid to Lighthouse, which was determined after prorating the respective deal prices by the amount of acreage, reserves, or production White Star received.

41.    Ultimately, EMG and related managers, members, officers, executives, and affiliates intentionally forced White Star to knowingly overpay for Lighthouse. No disinterested third party would have ever paid the agreed upon purchase price.

42.    Not only did the Lighthouse overpayment cost White Star at least $45 million, but the transaction also cost White Star more than $23 million in cash capital expenditures at a time when White Star was already facing liquidity problems. This ultimately, and foreseeably, led to White Star's insolvency.

### BANKRUPTCY & THE LITIGATION TRUST

43.    On May 24, 2019, creditors of White Star commenced an involuntary bankruptcy proceeding for White Star under Chapter 11 of the Bankruptcy Code by filing petitions for relief in the U.S. Bankruptcy Court for the Western District of Oklahoma.

44.    On May 28, 2019, White Star commenced voluntary proceedings under Chapter 11 of the Bankruptcy Code by filing petitions for relief in the U.S. Bankruptcy Court for the District of Delaware.

45.    On June 20, 2019, the presiding judge for the Delaware proceeding entered an order transferring the proceeding to the U.S. Bankruptcy Court for the Western District of Oklahoma (the "**Bankruptcy Court**"). The Bankruptcy Court opened a new voluntary proceeding under Chapter 11 of the Bankruptcy Code, which was then consolidated with the Bankruptcy Proceeding,

where Debtors' cases proceeded thereafter.

46.     In the Bankruptcy Proceeding, the April 16, 2020 Bankruptcy Court order confirming the Plan and approving the Litigation Trust Agreement created the Plaintiff litigation trust.

47.     The Plan became effective on April 28, 2020, and all of the rights, title, and interests in various causes of actions vested with the Litigation Trust as of that date, including all rights, title, and interests to, inter alia, all claims (1) against the Debtors' current or former directors or officers arising prior to April 30, 2019 based on any act that is determined to constitute gross negligence, willful misconduct, fraud, or a criminal act, or (2) that arise from the Lighthouse transaction.

48.     The Plan and Litigation Trust Agreement empower the Trustee to investigate and prosecute such claims and entitle the Trustee to access Debtors' books and records in pursuit and investigation of these claims.

49.     The factual allegations set forth herein are based on a review of White Star's books and records to-date.

<u>**CAUSES OF ACTION**</u>

I.     **BREACH OF FIDUCIARY DUTY (AGAINST THE MANAGERS, MEMBERS, OFFICERS, AND EXECUTIVES; EMG WHITE STAR)**

50.     Plaintiff incorporates by reference all allegations in this Petition as if set out in full here.

51.     Based on their positions as managers, members, officers, and executives of White Star, Raymond, Chambers, Mueller, Schaufele, and Tyson (collectively the "**Managers, Members, Officers, and Executives**") each had a fiduciary relationship with White Star (both formal, informal, special, and confidential).  In addition, based on its status as the controlling

owner of White Star at the time of the Lighthouse transaction, EMG White Star had a fiduciary relationship with White Star (both formal, informal, special, and confidential).  As a result, EMG White Star, the Managers, Members, Officers, and Executives owed fiduciary duties, including the duty of loyalty and utmost good faith, duty of candor, duty to refrain from self-dealing, duty to act with integrity of the strictest kind, duty of fair and honest dealing, and a duty of full disclosure.

52.   Each of EMG White Star and the Managers, Members, Officers, and Executives breached their fiduciary duties to White Star by willfully and knowingly abdicating their duties to ensure White Star paid a legitimate price for Lighthouse as part of a fair deal process.

53.   Defendants EMG White Star, the Managers, Members, Officers, and Executives' breach of these duties harmed White Star by knowingly causing, allowing, and/or forcing White Star to overpay for Lighthouse by at least $45 million and to undercut its liquidity.

54.   Defendants EMG White Star, the Managers, Members, Officers, and Executives benefited from this breach based on their connection or affiliation to EMG and their own pecuniary interests.

55.   At all times, Defendants EMG White Star, the Managers, Members, Officers, and Executives did not act in good faith, but rather in willful misfeasance, constituting bad faith, fraud, gross negligence, or willful misconduct.

56.   At all times, Defendants EMG White Star, the Managers, Members, Officers, and Executives acted in a manner opposed to the business interests of White Star, as well as contrary to all applicable agreements.

57.   This conduct constituted a complete abdication and a conscious dereliction of their duties.

58.   In addition, each of Defendants EMG White Star, the Managers, Members,

Officers, and Executives breached their duties to White Star by knowingly causing, allowing, and/or forcing an affiliate transaction that was not entered into on an arms-length basis or terms (*i.e.*, the Lighthouse transaction was not as favorable to White Star as would have been the case had no affiliates and/or related parties been involved). Lighthouse and White Star must be considered affiliates because they shared common control – EMG possessed a dominant role over both whereby it exercised actual control over the business affairs of both Lighthouse and White Star.

II.   **AIDING AND ABETTING BREACH OF FIDUCIARY DUTY (AGAINST EMG AND THE EMG-RELATED ENTITIES)**

59.   Plaintiff incorporates by reference all allegations in this Petition as if set out in full here.

60.   The Managers, Members, Officers, and Executives, as well as EMG White Star, breached their fiduciary duties to White Star as set forth above.

61.   EMG and the EMG-Related Entities[3] colluded in or aided and abetted these breaches of fiduciary duties and were both active and knowing participants. Moreover, EMG and the EMG-Related Entities had actual knowledge of the relationship and attendant fiduciary duties owed to White Star by the Managers, Members, Officers, and Executives, as well as EMG White Star.

62.   EMG and the EMG-Related Entities participated in these breaches for the purpose of advancing their own interests, pecuniary and otherwise, obtaining both direct and indirect benefits from their collusion.

---

[3] For clarity, EMG Lighthouse Holdings LLC, EMG Fund III Management LP, The Energy & Minerals Group Fund III LP, EMG Fund III GP LP, EMG Fund II Management LP, EMG Fund II GP LP, The Energy & Minerals Group Fund II LP are referenced collectively as the "**EMG-Related Entities**."

63.     EMG and the EMG-Related Entities' knowing, intentional, and reckless participation in these breaches of fiduciary duties proximately caused White Star substantial damage.

### III.     BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (AGAINST THE MANAGERS, MEMBERS, OFFICERS, AND EXECUTIVES; EMG WHITE STAR)

64.     Plaintiff incorporates by reference all allegations in this Petition as if set out in full here.

65.     EMG White Star and the Defendant Managers, Members, Officers and Executives owed White Star certain rights and benefits that White Star expected to receive under the parties' agreements.  These Defendants were bound by these agreements, including an implied covenant of good faith and fair dealing that inhered into those agreements as a matter of law.

66.     Through their wrongful, arbitrary and unreasonable conduct, these Defendants willfully and knowingly deprived White Star of these rights and benefits expected under the parties' agreements, thereby breaching the implied covenant of good faith and fair dealing.

67.     These breaches of the implied covenant of good faith and fair dealing directly and proximately caused White Star substantial damage.

### IV.     GROSS NEGLIGENCE & WILLFUL MISCONDUCT (AGAINST THE MANAGERS, MEMBERS, OFFICERS, AND EXECUTIVES; EMG WHITE STAR)

68.     Plaintiff incorporates by reference all allegations in this Petition as if set out in full here.

69.     Defendants EMG White Star and the Managers, Members, Officers, and Executives' conduct with respect to the Lighthouse transaction constituted an extreme departure from the ordinary standard of care, signifying more than inadvertence or inattention.

70.     At all times, these Defendants owed White Star a duty of care.

71.     These Defendants' wrongful conduct breached that duty and caused White Star substantial damage.

**V.     COMMON LAW FRAUD/FRAUDULENT CONCEALMENT (AGAINST THE MANAGERS, MEMBERS, OFFICERS, AND EXECUTIVES; EMG WHITE STAR)**

72.     Plaintiff incorporates by reference all allegations in this Petition as if set out in full here.

73.     Defendants EMG White Star and the Managers, Members, Officers, and Executives misrepresented material facts, or failed to disclose material facts, to White Star in connection with the Lighthouse transaction.

74.     When these Defendants made the misrepresentations, they knew or believed the same to be false, or made the misrepresentations recklessly, as positive assertions, without knowledge of their truth.

75.     These Defendants made these misrepresentations with the intent that White Star act on them.

76.     White Star fully, or at least in part, reasonably relied on these Defendants' misrepresentations and suffered substantial damage as a direct and proximate result.

**VI.     NEGLIGENT MISREPRESENTATION (AGAINST THE MANAGERS, MEMBERS, OFFICERS, AND EXECUTIVES; EMG WHITE STAR)**

77.     Plaintiff incorporates by reference all allegations in this Petition as if set out in full here.

78.     Defendants EMG White Star and the Managers, Members, Officers, and Executives made representations in the course of their business and in connection with a transaction in which they had a pecuniary interest.

79.     These Defendants supplied false information for the guidance of others in their business, including White Star.  This information was a misstatement of existing facts.

80.     Defendants did not exercise reasonable care or competence in obtaining or communicating this information.

81.     White Star suffered pecuniary loss by justifiably relying on these representations.

**VII.     BREACH OF CONTRACT (AGAINST THE MANAGERS, MEMBERS, OFFICERS, AND EXECUTIVES; EMG WHITE STAR)**

82.     Plaintiff incorporates by reference all allegations in this Petition as if set out in full here.

83.     Valid contracts existed between White Star and the Defendants EMG White Star and the Managers, Members, Officers, and Executives, including but not limited to the White Star operating agreements.

84.     White Star performed its obligations under the parties' contracts, but these Defendants breached their obligations by engaging in the wrongful and improper conduct associated with the Lighthouse transaction, as described more fully throughout this Petition.

85.     Defendants' breaches directly and proximately caused White Star substantial damage.

**VIII.     TORTIOUS INTERFERENCE (AGAINST EMG AND THE EMG-RELATED ENTITIES)**

86.     Plaintiff incorporates by reference all allegations in this Petition as if set out in full here.

87.     As set forth in Cause of Action number VII for Breach of Contract, above, White Star had valid contracts with the Managers, Members, Officers, and Executives, as well as EMG White Star.

17

88.     Defendants EMG and the EMG-Related Entities knew or had reason to know of these contractual relationships.

89.     These Defendants willfully and intentionally interfered with these contractual relationships to force the improper and conflicted Lighthouse transaction, directly and proximately causing White Star substantial damage.

### IX.   STATUTORY FRAUD (AGAINST EMG AND EMG LIGHTHOUSE HOLDINGS, LLC)

90.     Plaintiff incorporates by reference all allegations in this Petition as if set out in full here.

91.     Defendants EMG and EMG Lighthouse Holdings, LLC committed statutory fraud when they made false representations concerning Lighthouse's actual value.

92.     The Lighthouse transaction involved stock in a corporation or a joint stock company.

93.     These Defendants made false representations, including repeated false representations concerning past or existing material facts, namely the value of Lighthouse and its assets, for the purpose of inducing White Star to enter a contract.

94.     Defendants made these representations with actual awareness of the falsity thereof and for a series of ulterior motives.

95.     White Star justifiably relied on these false representations, resulting in substantial damage.

**X.**    **SECURITIES FRAUD UNDER THE TEXAS SECURITIES ACT AND/OR THE DELAWARE SECURITIES ACT (AGAINST EMG AND EMG LIGHTHOUSE HOLDINGS, LLC)**

96.    Plaintiff incorporates by reference all allegations in this Petition as if set out in full here.

97.    In connection with the Lighthouse transaction, EMG and EMG Lighthouse Holdings, LLC required White Star to rely on valuations of Lighthouse's assets that they knew or ought to have known were false and misleading.  Defendants' false and misleading acts and omissions, including but not limited to statements, representations and omissions related to these valuations, were material, were made in connection with and to facilitate the sale of the Lighthouse assets and interests to White Star, and were made intentionally to justify the inflated Lighthouse purchase price.

98.    But for these false and misleading statements and omissions, White Star would not have entered the Lighthouse transaction, nor would it have paid the grossly excessive purchase price for Lighthouse.  These false and misleading statements and omissions were relied on by White Star to its detriment, causing it to incur substantial damage as the direct and proximate result.  This damage includes, but is not limited to, at least $45 million, the amount that Defendants caused White Star to overpay for Lighthouse.

**XI.**    **SECURITIES FRAUD – CONTROL PERSON LIABILITY – UNDER THE TEXAS SECURITIES ACT AND/OR THE DELAWARE SECURITIES ACT (AGAINST EMG; THE EMG-RELATED ENTITIES; EMG WHITE STAR HOLDINGS; RAYMOND, TYSON AND SCHAUFELE)**

99.    Plaintiff incorporates by reference all allegations in this Petition as if set out in full here.

100.    As explained herein, Defendants EMG, the EMG-Related Entities, EMG White Star Holdings, Raymond, Tyson and Schaufele each directly or indirectly controlled EMG and

EMG Lighthouse Holdings, LLC, thus each constituted a "control person" under applicable law. Each of these Defendants exerted such control as shown by the actions giving rise to the preceding Cause of Action number X, above, for Securities Fraud.

101.    As a result, each of these Defendants is jointly and severally liable with EMG and EMG Lighthouse Holdings, LLC for the substantial damage caused by the fraudulent acts set forth in the preceding cause of action for securities fraud.

### XII.    SECURITIES FRAUD – AIDING LIABILITY -- UNDER THE TEXAS SECURITIES ACT AND/OR THE DELAWARE SECURITIES ACT (AGAINST THE MANAGERS, MEMBERS, OFFICERS, AND EXECUTIVES; EMG WHITE STAR)

102.    Plaintiff incorporates by reference all allegations in this Petition as if set out in full here.

103.    Defendants EMG White Star and the Managers, Members, Officers and Executives materially and knowingly aided and abetted EMG and EMG Lighthouse Holdings in their wrongful conduct described in Cause of Action number X, above, for Securities Fraud, by foregoing any independent valuation or proper scrutiny of the sellers' representations – permitting a sale based on a valuation they knew to be inaccurate.

104.    Defendants' abdication of the duties, obligations, and responsibilities exhibited an intent to deceive or defraud, as well as a reckless disregard for the truth and the law.

105.    Accordingly, Defendant aiders are jointly and severally liable to the same extent as the sellers for sellers' misrepresentations.

### XIII.    CIVIL CONSPIRACY (AGAINST ALL DEFENDANTS)

106.    Plaintiff incorporates by reference all allegations in this Petition as if set out in full here.

107.    Together, Defendants engaged in a conspiracy when they plotted to and succeeded in causing White Star to purchase Lighthouse for a grossly inflated price.

108.    Defendants formed a combination of two or more persons.

109.    Defendants' object was to accomplish an unlawful purpose and various tortious acts, including, but not limited to, the breach of various duties and standards of care intended to protect White Star from being used as a mere vehicle to benefit others.

110.    Defendants had a meeting of the minds on their proposed course of action and planned, assisted, or encouraged these wrongful acts.

111.    Defendants then executed this course of action through the Lighthouse transaction, an overt act.

112.    Defendants' conspiracy to force White Star to purchase Lighthouse was a proximate cause of substantial damage to White Star.

113.    Because Defendants acted together to further the common purpose of their conspiracy, they are each subject to vicarious liability and should be held jointly and severally liable.

### DAMAGES & OTHER RELIEF REQUESTED

114.    **Actual Damages.**   As a result of Defendants' conduct as specified herein, Defendants are liable for the actual, direct, indirect, and consequential damage caused to White Star.

115.    **Exemplary Damages.**  Plaintiff is entitled to recover exemplary damages, in an amount to be determined by the jury, due to the fraud and malice (both actual malice and conscious indifference) of Defendants.

116.     **Attorneys' Fees, Costs, Pre- and Post-Judgment Interest.**  Plaintiff is entitled to recover reasonable and necessary attorneys' fees under TEX. CIV. PRAC. & REM. CODE chapter 38 and TEX. REV. CIV. STAT. ANN. ART. 581-33.  Plaintiff also seeks its costs of court and pre- and post-judgment interest.

**MISCELLANEOUS**

117.     **Jury Demand.**  Plaintiff requests a trial by jury and will pay the requested fee.

118.     **Tex. R. Civ. P. 47.**  Pursuant to Rule 47(c) of the Texas Rules of Civil Procedure, Plaintiff seeks monetary relief over $1,000,000.

119.     **Conditions Precedent.**  All conditions precedent to Plaintiff's claims for relief have been performed, have occurred, have been waived, or have otherwise been excused from performance.

**PRAYER**

Plaintiff White Star Petroleum Holdings, LLC Litigation Trust respectfully requests that Defendants be cited to appear and answer, and that upon final trial of this cause, they would have judgment on the grounds and causes of action as stated, for actual damages, including direct, indirect, incidental and consequential damages, exemplary damages, costs of court, and attorneys' fees, together with pre-judgment interest and post-judgment interest at the legal rate.  Plaintiff also seeks all other and further relief, at law or equity, to which it may be entitled.

Dated: March 12, 2021

Respectfully submitted,

**SCHIFFER HICKS JOHNSON, PLLC**

/s/ *Andrew S. Hicks*
Andrew S. Hicks
State Bar No. 24032419
Adam M. Dinnell
State Bar No. 24055405
Bryan E. Zubay
State Bar No. 24102688
700 Louisiana St., Suite 2650
Houston, Texas 77002
Tel: 713.357.5150
Fax: 713.357.5160
ahicks@shjlawfirm.com
adinnell@shjlawfirm.com
bzubay@shjlawfirm.com

*Attorneys for Plaintiff White Star*
*Petroleum Holdings, LLC Litigation Trust*