# EXHIBIT B

**Dated: April 16, 2020**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ——————————————————— x | |
| In re : | Chapter 11 |
| : | |
| WHITE STAR PETROLEUM HOLDINGS, LLC, : | Case No. 19-12521-JDL |
| *et al.*,[1] : | |
| : | Jointly Administered |
| Debtors. : | |
| ——————————————————— x | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING THE JOINT CHAPTER 11 PLAN OF LIQUIDATION OF WHITE STAR PETROLEUM HOLDINGS, LLC AND ITS DEBTOR AFFILIATES

---

[1]  The Debtors in these chapter 11 cases, and the last four digits of their U.S. taxpayer identification numbers are: White Star Petroleum Holdings, LLC (0575) ("WSTR Holdings"), White Star Petroleum, LLC (0977) ("WSTR"), White Star Petroleum II, LLC (4347) ("WSTR II"), White Star Petroleum Operating, LLC (5387) ("WSTR Operating") and WSP Finance Corporation (9152) ("WSP Finance" and together with WSTR Holdings, WSTR, WSTR II and WSTR Operating, the "Debtors").  The Debtors' corporate headquarters is located at 301 N.W. 63rd Street, Suite 600, Oklahoma City, OK 73116.

White Star Petroleum Holdings, LLC and its debtor affiliates, as debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), having:[2]

a.   commenced, on May 28, 2019, these chapter 11 cases (collectively, the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware;

b.   continued to manage their assets as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.   filed, on June 21, 2019, the *Debtors' Motion for Orders (I) (A) Approving the Bid Procedures and Certain Bidding Protections, (B) Approving the Notice Procedures, (C) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures and (II) (A) Authorizing the Sale of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances and (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases with Notice of Opportunity for Hearing and Notice of Hearing* [Doc. 86];

d.   closed, on November 1, 2019, the sale of substantially all of the Debtors' assets to Contango Oil and Gas Company [Doc. 775];

e.   filed, on January 6, 2020, the *Joint Chapter 11 Plan of Liquidation of White Star Petroleum Holdings, LLC and its Debtor Affiliates* [Doc. 945] (including the Plan Supplement and all other exhibits and schedules thereto, as may be amended, modified or supplemented from time to time in accordance with its terms and the terms hereof, the "Plan"), the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of White Star Petroleum Holdings, LLC and its Debtor Affiliates* [Doc. 946] (including all exhibits and schedules thereto, as may be amended, modified or supplemented from time to time, the "Disclosure Statement"), and the *Debtors' Motion for an Order (I) Approving the Disclosure Statement; (II) Establishing a Voting Record Date for the Plan; (III) Approving Solicitation Packages and Procedures for the Distribution Thereof; (IV) Approving the Forms of Ballots; (V) Establishing Procedures for Voting on the Plan; and (VI) Establishing Notice and Objection Procedures for the Confirmation of the Plan* [Doc. 947] (the "Solicitation Procedures Motion");

f.   filed, on January 31, 2020, a revised version of the Disclosure Statement [Doc. 981, Ex. 1];

---

[2]   Capitalized terms used but not otherwise defined in this order (the "Confirmation Order") shall have the meanings ascribed to such terms in the Plan, attached hereto as Exhibit A.  The rules of interpretation set forth in Section 2.2 of the Plan shall apply to this Confirmation Order.

g.  filed, on February 11, 2020, a revised version of the Plan [Doc. 1007, Ex. 1];

h.  filed, on February 11, 2020, the first amended Disclosure Statement [Doc. 1008, Ex. 1];

i.  filed, on February 14, 2020, solicitation versions of the Disclosure Statement [Doc. 1021, Ex. 1] and the Plan [Doc. 1020, Ex. 1];

j.  caused to be distributed solicitation materials beginning on February 14, 2020, consistent with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and the *Order (I) Approving the Disclosure Statement, (II) Establishing a Voting Record Date, (III) Approving Solicitation Packages and Solicitation Procedures, (IV) Approving the Forms of Ballots, (V) Establishing Voting and Tabulation Procedures and (VI) Establishing Notice and Objection Procedures for the Confirmation of the Plan* [Doc. 1016] (the "Solicitation Procedures Order"), which also approved, among other things, solicitation procedures (the "Solicitation Procedures") and related notices, forms and ballots provided to each Class (collectively, the "Solicitation Packages"), as evidenced by the *Certificate of Service of Leticia Sanchez re: Solicitation Materials* [Doc. 1050] (the "KCC Certificate");

k.  caused to be published, on February 26, 2020, the Confirmation Hearing Notice in *The Oklahoman* as evidenced by the *Debtors' Notice of Affidavit of Publication of the Notice of Hearing to Consider Confirmation of Debtors' Joint Chapter 11 Plan of Liquidation in the Oklahoman* [Doc. 1049] (the "Publication Affidavit"),

l.  filed, on March 19, 2020, the Plan Supplement (as amended and supplemented from time to time, the "Plan Supplement") containing, among other things, the Litigation Trust Agreement and the Plan Administration Agreement [Doc. 1093];

m.  filed, on March 19, 2020, the *Notice of Filing of Proposed Plan Confirmation Order* [Doc. 1094];

n.  filed, on March 31, 2020, the *Certification of Leticia Sanchez with Respect to the Tabulation of Votes on the Joint Chapter 11 Plan of Liquidation of White Star Petroleum Holdings, LLC and its Debtor Affiliates* [Doc. 1122] (the "Voting Certification");

o.  filed, on March 31, 2020, *the Declaration of Steven P. Coverick in Support of Confirmation of the Joint Chapter 11 Plan of Liquidation of White Star Petroleum Holdings, LLC and its Debtor Affiliates* [Doc. 1121] (the "Coverick Declaration");

p.  filed, on March 31, 2020, the *Debtors' Memorandum of Law in Support of Confirmation of the Joint Chapter 11 Plan of Liquidation of White Star Petroleum Holdings, LLC and its Debtor Affiliates* [Doc. 1120] (the "Plan Confirmation Brief");

q.  filed, on March 31, 2020, an amended version of the Plan [Doc. 1123, Ex. 1]; and

r.  filed, on March 31, 2020, the *Notice of Revised Proposed Plan Confirmation Order* [Doc. 1124].

This Court having:

a.      transferred these Chapter 11 Cases from the United States Bankruptcy Court for the District of Delaware to this Court;

b.      consolidated, on July 3, 2019, these Chapter 11 Cases into the involuntary case filed against WSTR;

c.      entered, on July 12, 2019, the *Order (A) Approving Bid Procedures for Sale of Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, And Hearing To Approve, Sale Of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing and (E) Approving Assumption And Assignment Procedures* [Doc. 290];

d.      entered, on September 30, 2020 the *Order Authorizing (A) the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith* [Doc. 657] (the "Sale Order");

e.      entered, on February 14, 2020, the *Order (I) Approving the Disclosure Statement, (II) Establishing a Voting Record Date, (III) Approving Solicitation Packages and Solicitation Procedures, (IV) Approving the Forms of Ballots, (V) Establishing Voting and Tabulation Procedures and (VI) Establishing Notice and Objection Procedures for The Confirmation of the Plan* [Doc. 1016];

f.      reviewed the Plan, the Plan Supplement, the Plan Confirmation Brief, the Coverick Declaration, the Voting Certification and all pleadings, exhibits, statements, responses and comments regarding Confirmation, including all objections, statements and reservations of rights made with respect thereto;

g.      heard the statements, arguments and objections made by counsel in respect of Confirmation;

h.      considered all oral representations, documents, filings and other evidence regarding Confirmation; and

i.      overruled, including for the reasons stated on the record of the Confirmation Hearing, any and all objections to the Plan and Confirmation and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated.

NOW, THEREFORE, this Court hereby makes and issues the following findings of fact, conclusions of law and order:

SC1:5068161.7

## I.     FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A.     Jurisdiction and Venue**

1.     The Court has jurisdiction to consider confirmation of the Plan pursuant to 28 U.S.C. §§ 157 and 1334 and rule 81.4(a) of the Local Civil Rules of the United States District Court for the Western District of Oklahoma.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested herein is section 1129 of the Bankruptcy Code.  This Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

**B.     Eligibility for Relief**

2.     The Debtors are entities eligible for relief under section 109 of the Bankruptcy Code.

**C.     Commencement and Joint Administration of the Chapter 11 Cases**

3.     On May 28, 2019 (the "Petition Date"), each of the Debtors filed with the United States Bankruptcy Court for the District of Delaware a voluntary petition for relief under title 11 of the Bankruptcy Code.  These Chapter 11 Cases were transferred to the United States Bankruptcy Court for the Western District of Oklahoma on June 20, 2019.  On July 3, 2019, the Debtors' voluntary cases were consolidated into the involuntary case for WSTR that was filed on May 24, 2019.[3]  Each Debtor continues to manage its assets as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015 [Doc. 27].

---

[3]     For WSTR only, "Petition Date" shall mean May 24, 2019.

SC1:5068161.7

**D.      Appointment of the Committee**

4.      On June 10, 2019, the United States Trustee for the District of Delaware appointed the Official Committee of Unsecured Creditors (the "<u>Committee</u>") pursuant to section 1102 of the Bankruptcy Code [Doc. 60].

**E.      Solicitation Procedures Order**

5.      On February 14, 2020, the Court entered the Solicitation Procedures Order, which, among other things:  (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code; (b) fixed 4:00 p.m. (Central Time) on February 13, 2020 as the Voting Record Date (as defined in the Solicitation Procedures Order); (c) fixed 4:00 p.m. (Central Time) on March 26, 2020, as the Confirmation Objection Deadline (as defined in the Solicitation Procedures Order); (d) fixed 8:00 p.m. (Central Time) on March 26, 2020, as the Voting Deadline; (e) fixed 9:30 a.m. (Central Time) on April 16, 2020, as the date and time for the Confirmation Hearing; and (f) approved the Solicitation Procedures, the Solicitation Packages and other materials relating to solicitation that were attached as exhibits to the Solicitation Procedures Order.

**F.      Transmittal and Mailing of Materials; Notice**

6.      As evidenced by the KCC Certificate, due, adequate and sufficient notice of the Plan and the Confirmation Hearing, together with the Confirmation Objection Deadline and Voting Deadline has been given to:  (a) the United States Trustee for the Western District of Oklahoma; (b) all known creditors; (c) all equity security holders; (d) the Internal Revenue Service; (e) counsel to the agent for the Debtors' prepetition secured lenders, Winston & Strawn LLP, 333 South Grand Avenue, 38th Floor, Los Angeles, California 90071 (Attn: Justin Rawlins); (f) counsel to the Committee, Morgan, Lewis & Bockius LLP, One Federal St., Boston, Massachusetts 02110 (Attn: Andrew Gallo) and (g) all parties who have filed a notice of

SC1:5068161.7

appearance and request for service of documents pursuant to the Case Management Order, in each case only to the extent such parties have not otherwise been served with the Confirmation Hearing Notice pursuant to the Solicitation Procedures Order.

7.     As evidenced by the Publication Affidavit, the Confirmation Hearing Notice was published in *The Oklahoman* on February 26, 2020.

8.     Adequate and sufficient notice of the Confirmation Hearing, and all applicable dates, deadlines and hearings described in the Solicitation Procedures Order, was given in compliance with the Bankruptcy Rules, the Local Bankruptcy Rules for the Western District of Oklahoma (the "Local Rules") and the Solicitation Procedures Order as evidenced by the KCC Certificate and Publication Affidavit, and no other or further notice is or shall be required.

**G.     Solicitation**

9.     As evidenced by the KCC Certificate, votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with the Disclosure Statement, the Solicitation Procedures Order, sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules and any other applicable rules, laws and regulations.

10.     Specifically, as evidenced by the KCC Certificate, the Solicitation Packages approved by this Court in the Solicitation Procedures Order were transmitted to and served on all Holders in Classes that were entitled to vote to accept or reject the Plan, and relevant portions of the Solicitation Packages and other materials approved by the Solicitation Procedures Order were transmitted to and served on other parties-in-interest in these Chapter 11 Cases, all in compliance with section 1125 of the Bankruptcy Code, the Solicitation Procedures Order, the Solicitation Procedures, the Bankruptcy Rules and the Local Rules.  Transmittal and

service of such documents was adequate and sufficient, and no other or further notice is or shall be required.

**H.    Voting Certification**

11.    The Debtors filed the Voting Certification on March 31, 2020, consistent with the Solicitation Procedures Order.  As evidenced by the Voting Certification, all procedures used to tabulate ballots received in connection with Confirmation were fair and conducted in accordance with the Solicitation Procedures Order.

12.    Holders of Claims in Class 3 and Class 4 were eligible to vote on the Plan. Holders of Claims in Class 1 and Class 2 are deemed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan.  Holders of Equity Interests in Class 5 are deemed to reject the Plan and therefore, are not entitled to vote to accept or reject the Plan.

13.    As evidenced by the Voting Certification, Holders of Claims in Classes 3 and 4 voted to accept the Plan (collectively, the "Impaired Accepting Classes").

14.    Based on the foregoing, and as evidenced by the Voting Certification, at least one Impaired Class of Claims has voted to accept the Plan (excluding the acceptance by any insiders of the Debtors) in accordance with the requirements of sections 1124 and 1126 of the Bankruptcy Code.

**I.    Plan Supplement**

15.    On March 19, 2020, the Debtors filed the Plan Supplement with this Court.  The documents contained in the Plan Supplement are integral to, part of and incorporated by reference into the Plan.  The Plan Supplement complies with the terms of the Plan, and the filing and notice of all documents contained in the Plan Supplement constitute good and proper notice in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Solicitation Procedures Order, and no other or further notice is or shall be required.  Pursuant to

the Plan, the Debtors may file additional documents as amendments to the Plan Supplement prior

to the Effective Date.

## J.     Bankruptcy Rule 3016

16.     The Plan is dated and identifies the Entities submitting it, thereby

satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement with the clerk of this

Court satisfied Bankruptcy Rule 3016(b).

## K.     Burden of Proof

17.     The Debtors, as proponents of the Plan, have met their burden of proving

the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code.

## L.     Compliance with the Requirements of Section 1129 of the Bankruptcy Code

18.     The Plan complies with all applicable provisions of section 1129 of the

Bankruptcy Code as follows:

### i.     Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code

19.     The Plan complies with all applicable provisions of the Bankruptcy Code

as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123

thereof.

#### a.     Sections 1122 and 1123(a)(1)—Proper Classification

20.     The classification of Claims and Equity Interests under the Plan is proper

under the Bankruptcy Code.  Pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code,

Article 4 of the Plan provides for the separate classification of Claims and Equity Interests into

five Classes, based on differences in the legal nature or priority of such Claims and Equity

Interests (other than General Administrative Claims, DIP Claims, Professional Claims and the

U.S. Trustee Fees, which are addressed in Article 3 of the Plan and which are not required to be

designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code). Valid business, factual and legal reasons exist for the separate classification of the various Classes of Claims and Equity Interests created under the Plan, the classifications were not done for any improper purpose, and the creation of such Classes does not unfairly discriminate among Holders of Claims or Equity Interests.

21. The evidence supporting the Plan proffered or adduced by the Debtors at, or prior to, or in declarations filed in connection with, the Confirmation Hearing regarding the Debtors' classification and treatment of Claims and Equity Interests (a) is reasonable, persuasive, credible and accurate, (b) utilizes reasonable and appropriate methodologies and assumptions and (c) has not been controverted by other credible evidence.

22. As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class. Accordingly, the requirements of sections 1122(a), 1122(b) and 1123(a)(1) of the Bankruptcy Code are satisfied.

**b.**      **Section 1123(a)(2)—Specification of Unimpaired Classes**

23. Section 4.2 of the Plan specifies that Claims in Class 1 and Class 2 are Unimpaired under the Plan. General Administrative Claims, DIP Claims, Professional Claims and the U.S. Trustee Fees also are Unimpaired under the Plan, although these Claims are not classified under the Plan. Accordingly, the requirements of section 1123(a)(2) of the Bankruptcy Code are satisfied.

**c.**      **Section 1123(a)(3)—Specification of Treatment of Impaired Classes**

24. Section 4.2 of the Plan specifies that Claims in Class 3 and Class 4 are Impaired under the Plan and the treatment for each such Impaired Class. Accordingly, the requirements of section 1123(a)(3) of the Bankruptcy Code are satisfied.

####        d.        Section 1123(a)(4)—No Discrimination

25.        Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article 4 of the Plan uniformly provides for the same treatment of each Claim or Equity Interest, as the case may be, in a particular Class, unless the Holder of a particular Claim or Equity Interest has agreed to a less favorable treatment with respect to such Claim or Equity Interest.  Accordingly, the requirements of section 1123(a)(4) of the Bankruptcy Code are satisfied.

####        e.        Section 1123(a)(5)—Adequate Means for Plan Implementation

26.        Pursuant to section 1123(a)(5) of the Bankruptcy Code, Article 5 and various other provisions of the Plan, along with various agreements set forth in the Plan Supplement, provide adequate and proper means for the Plan's implementation.  Accordingly, the requirements of section 1123(a)(5) of the Bankruptcy Code are satisfied.

####        f.        Section 1123(a)(6)—Voting Power of Equity Securities

27.        In accordance with the Plan, all Equity Interests in the Debtors shall be canceled and the Debtors' corporate entities shall be wound down.  Therefore, section 1123(a)(6) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

####        g.        Section 1123(a)(7)—Selection of the Plan Administrator and the Litigation Trustee

28.        The Plan Administrator will be determined in accordance with the terms of the Plan and the Plan Administration Agreement, which is consistent with the interests of the creditors as beneficiaries of the Wind Down Estates and public policy.  The Litigation Trustee will be determined in accordance with the terms of the Plan and the Litigation Trust Agreement, which is consistent with the interests of the creditors as beneficiaries of the Litigation Trust and public policy.  Accordingly, the requirements of section 1123(a)(7) of the Bankruptcy Code are satisfied.

SC1:5068161.7

### h. **Section 1123(b)—Discretionary Contents of the Plan**

29.     The Plan contains various provisions that may be construed as discretionary and are not required for Confirmation under the Bankruptcy Code. As set forth below, such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code. Thus, section 1123(b) of the Bankruptcy Code is satisfied.

#### (i)     *Section 1123(b)(1)-(2)—Claims and Executory Contracts*

30.     Pursuant to sections 1123(b)(1) and 1123(b)(2) of the Bankruptcy Code, Article 4 of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Equity Interests. Section 6.1 of the Plan provides for the rejection of the Executory Contracts and Unexpired Leases of the Debtors that are not D&O policies, not previously assumed or rejected pursuant to an order of the Court and not subject to a pending motion to assume or notice of assumption in connection with the Sale.

#### (ii)    *Section 1123(b)(3)—Settlement, Releases, Exculpation, Injunction and Preservation of Claims and Causes of Action*

31.     **Compromise and Settlement.** The Plan settles issues in these Chapter 11 Cases pursuant to Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code. These settlements are in consideration for the Distributions and other benefits provided under the Plan and any other compromise and settlement provisions of the Plan. The Plan itself constitutes a compromise of all Claims, Equity Interests and Causes of Action relating to the contractual, legal and subordination rights that any Holder may have with respect to any Allowed Claim or Equity Interest or any Distribution to be made on account of such Allowed Claim or Equity Interest. The compromises and settlements embodied in the Plan are in the best interests of the Debtors, their Estates and all Holders, and are fair, equitable and reasonable.

32.     Other than as specifically set forth in the Plan, the Plan approves the good-faith compromise and settlement of the Committee Adversary Proceeding pursuant to Bankruptcy Rule 9019.  Approval of such compromise and settlement under Bankruptcy Rule 9019, as well as such compromise and settlement, is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.

33.     **Releases by the Debtors.**  The releases and discharges by the Debtors described in Section 10.5 of the Plan (the "Debtor Release") pursuant to section 1123(b)(3)(A) of the Bankruptcy Code represent a valid exercise of the Debtors' business judgment.

34.     **Voluntary Release by Holders of Claims and Equity Interests.**  The voluntary release by certain Holders of Claims and Equity Interests described in Section 10.6 of the Plan (the "Voluntary Release by Holders of Claims and Equity Interests") is appropriate because it was voluntary.  The Voluntary Release by Holders of Claims and Equity Interests is provided only by (a) the DIP Parties, (b) the Committee, (c) the RBL Parties in their capacities as such and (d) each Holder of a Claim or an Equity Interest that was provided a Ballot or an Election Form and does not opt out of the Voluntary Release by Holders of Claims and Equity Interests in compliance with the instructions set forth in the Solicitation Materials.  Holders have had a full opportunity to determine whether to opt out of the Voluntary Release by Holders of Claims and Equity Interests.  Thus, the Voluntary Release by Holders of Claims and Equity Interests is consensual.

35.     The Voluntary Release by Holders of Claims and Equity Interests is sufficiently voluntary so that it can be considered to be (a) given in exchange for the good, valuable and significant consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims released by Holders of Claims and Equity Interests

-13-

electing to provide such release; (c) in the best interests of the Debtors and all Holders; (d) fair, equitable and reasonable; (e) given and made after notice and opportunity for hearing; (f) given at arm's length and in good faith; (g) appropriately narrow in scope; and (h) a bar to any Releasing Party asserting any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, released by the Voluntary Release by Holders of Claims and Equity Interests against any of the Released Parties to the fullest extent permitted by applicable law and is hereby approved.

36.     **Exculpation**.  The exculpation provisions set forth in Section 10.8 of the Plan are essential to the Plan.  The record in these Chapter 11 Cases fully supports the exculpation, and the exculpation provisions set forth in Section 10.8 of the Plan are appropriately tailored to protect the Exculpated Parties from inappropriate litigation related to acts or omissions up to and including the Effective Date and are hereby approved.

37.     **Injunction.**  The injunction provisions set forth in Section 10.9 of the Plan are essential to the Plan and are (a) necessary to preserve and enforce the Debtor Release, the Voluntary Release by Holders of Claims and Equity Interests and the exculpation provisions set forth in Section 10.8 of the Plan, (b) fair and reasonable and (c) narrowly tailored to achieve their purpose.

38.     Each of the Debtor Release, the Voluntary Release by Holders of Claims and Equity Interests, the exculpation provisions and the injunction provisions are: (a) within the jurisdiction of this Court; (b) an essential means of implementing the Plan; (c) an integral element of the transactions incorporated into the Plan; (d) in the best interests of the Debtors, their Estates and all stakeholders in these Chapter 11 Cases; and (e) narrowly tailored and consistent with sections 105, 1123 and 1129 of the Bankruptcy Code, other provisions of the

-14-

Bankruptcy Code and other applicable law. The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the Debtor Release, the Voluntary Release by Holders of Claims and Equity Interests, the exculpation provisions and the Plan Injunction contained in Article 10 of the Plan.

39. **Preservation of Claims and Causes of Action**. In accordance with section 1123(b)(3)(B) of the Bankruptcy Code, Section 5.9 of the Plan appropriately provides for the preservation and vesting in the Wind Down Estates or the Litigation Trust, as applicable, of each retained Cause of Action. The provisions regarding the retained Causes of Action in the Plan are appropriate and are in the best interests of the Debtors, their Estates and all Holders.

i. **Section 1123(d)—Cure of Defaults**

40. Section 6.1 of the Plan provides for the rejection of all Executory Contracts and Unexpired Leases of the Debtors not previously assumed or rejected pursuant to an order of the Court and not subject to a pending motion to assume or notice of assumption in connection with the Sale. Accordingly, no cure defaults are proposed in the Plan, and the requirements of section 1123(d) of the Bankruptcy Code are satisfied.

ii. **Section 1129(a)(2)—Compliance of the Debtors with the Applicable Provisions of the Bankruptcy Code**

41. The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126 and 1128 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019.

42. Votes to accept or reject the Plan were solicited by the Debtors after this Court approved the adequacy of the Disclosure Statement.

43. The Debtors and their agents have solicited and tabulated votes on the Plan and have, along with their respective present and former members, partners, representatives, officers, directors, employees, advisors and attorneys, participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e) of the Bankruptcy Code and in a manner consistent with the applicable provisions of the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules and all other applicable rules, laws and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

44. The Debtors and their present and former members officers, directors, employees, advisors, attorneys and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distribution of recoveries under the Plan and, therefore, are not, and will not be, liable at any time for the violation of any applicable law, rule or regulation governing (a) the solicitation of acceptances or rejections of the Plan and (b) distributions made pursuant to the Plan, the Plan Administration Agreement or the Litigation Trust Agreement (as applicable), so long as such distributions are made consistent with and pursuant to the Plan, Plan Administration Agreement or the Litigation Trust Agreement (as applicable). Accordingly, the requirements of section 1129(a)(2) of the Bankruptcy Code are satisfied.

### iii. Section 1129(a)(3)—Proposal of Plan in Good Faith

45. The Debtors have proposed the Plan in good faith and not by any means forbidden by law. This Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself and the process leading to its formulation. The Debtors' good faith is evident from the record of these Chapter 11 Cases, the Disclosure

Statement and the hearing thereon, the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases.

46. The Plan is the product of extensive, good faith, arm's length negotiations among the Debtors and certain of their principal constituencies. The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' good faith, serve the public interest and assure fair treatment of Holders. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

### iv. Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable

47. The procedures set forth in the Plan for payment of, and/or this Court's review and ultimate determination of, the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incidental to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(4) of the Bankruptcy Code are satisfied.

### v. Section 1129(a)(5)—Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy

48. In accordance with the Plan, the Debtors' corporate entities will be wound down and, other than the Plan Administrator, the Debtors will not retain or appoint any directors, officers or employees. Accordingly, the requirements of section 1129(a)(5) of the Bankruptcy Code are satisfied.

### vi. Section 1129(a)(6)—Approval of Rate Changes

49. The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission. Therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

SC1:5068161.7

### vii. Section 1129(a)(7)—Best Interests of Holders of Claims and Equity Interests

50.     The liquidation analysis attached as <u>Appendix D</u> to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered or adduced at or prior to, or in declarations in connection with, the Confirmation Hearing: (a) are reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that recoveries for Holders of Allowed Claims and Equity Interests in every Class under the Plan on account of such Claim or Equity Interest, as of the Effective Date, will have a value equal to or greater than the amount such Holder would receive if the applicable Debtor was liquidated on the Effective Date under chapter 7 of the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(7) of the Bankruptcy Code are satisfied.

### viii. Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class

51.     Class 1 and Class 2 are Unimpaired Classes of Claims and are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. As set forth in the Voting Certification, Class 3 and Class 4 have voted to accept the Plan. Class 5 receive no Distributions under the Plan and are deemed not to have accepted the Plan.

52.     Because the Plan is deemed not to have been accepted by Class 5, the Debtors seek Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code. Thus, although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to the rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting Classes and thus

SC1:5068161.7

satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to the rejecting Classes as described further below.

### ix. Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code

53. The treatment of General Administrative Claims, DIP Claims, Professional Claims and U.S. Trustee Fees under Article 3 of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

### x. Section 1129(a)(10)—Acceptance by At Least One Impaired Class

54. As set forth in the Voting Certification, the Impaired Accepting Classes have voted to accept the Plan. Specifically, Holders of Claims in Class 3 and Class 4 have voted to accept the Plan. As such, there is at least one Class of Claims that is Impaired under the Plan and has accepted the Plan, determined without including any acceptance of the Plan by any insider (as defined by the Bankruptcy Code). Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

### xi. Section 1129(a)(11)—Feasibility of the Plan

55. The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence supporting the Plan proffered or adduced by the Debtors at, or prior to, or in declarations filed in connection with, the Confirmation Hearing: (a) is reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence and (d) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the need for further liquidation or financial reorganization of the Debtors or any successor to the Debtors under the Plan except as

SC1:5068161.7

provided in the Plan.  Accordingly, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

### xii.  Section 1129(a)(12)—Payment of Bankruptcy Fees

56.     Section 3.6 of the Plan provides that all fees payable pursuant to title 28 section 1930 of the United States Code, as determined by this Court at the Confirmation Hearing, shall be paid for each quarter (including any fraction thereof) until these Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.  Accordingly, the Debtors have satisfied the requirements of section 1129(a)(12) of the Bankruptcy Code.

### xiii.  Section 1129(a)(13), (14), (15) and (16)—Non-Applicability of Certain Sections

57.     The Debtors do not owe any "retiree benefits" (as defined in section 1114 of the Bankruptcy Code) or domestic support obligations, are not individuals and are business corporations.  Therefore, sections 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

### xiv.  Section 1129(b)—Confirmation of Plan Over Non-Acceptance of Impaired Class

58.     The Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code notwithstanding that the requirements of section 1129(a)(8) have not been met because the Debtors have demonstrated by a preponderance of the evidence that the Plan (a) satisfies all of the other requirements of section 1129(a) of the Bankruptcy Code and (b) does not "discriminate unfairly" and is "fair and equitable" with respect to Class 5.

59.     The Plan does not "discriminate unfairly" with respect to Class 5 because there is no discrimination in treatment between Class 5 Holders and there are no other Classes comprised of Holders with comparable legal rights.

60.     The Plan is "fair and equitable" with respect to Class 5 because no junior Class of Claims or Equity Interests will receive or retain any property under the Plan on account of such Claims or Equity Interests.  There is no unfair discrimination with respect to Class 5 as no there are no other similarly situated Classes that are receiving disparate treatment.

61.     The Plan therefore satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed.

**xv.     Section 1129(c)—Only One Plan**

62.     Other than the Plan, no other plan has been filed in these Chapter 11 Cases.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

**xvi.    Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes or Application of Securities Laws**

63.     No governmental unit has requested that this Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (as amended, the "Securities Act"), and the principal purpose of the Plan is not such avoidance.  Accordingly, the requirements of section 1129(d) of the Bankruptcy Code are satisfied.

**M.     Section 1129(e)—Small  Business Case**

64.     None of these Chapter 11 Cases is a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

**N.     Satisfaction of Confirmation Requirements**

65.     Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations, certificates and affidavits filed in connection with Confirmation of the

Plan and all evidence and arguments made, proffered or adduced at the Confirmation Hearing, the Plan satisfies all requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**O.      Disclosure: Agreements and Other Documents**

66.      The Debtors have disclosed all material facts regarding: (a) the sources and distribution of Cash under the Plan; (b) the terms and conditions of the Plan Administration Agreement and the Litigation Trust Agreement and (c) the cancellation of all existing agreements, notes and Equity Interests.

**P.      Likelihood of Satisfaction of Conditions Precedent to the Effective Date**

67.      Each of the conditions precedent to the Effective Date, as set forth in Section 9.1 of the Plan, and without affecting the rights of any party to enforce such condition, has been satisfied or waived in accordance with the provisions of the Plan, or is reasonably likely to be satisfied.

**Q.      Implementation**

68.      All documents and agreements necessary to implement the Plan, including those contained in the Plan Supplement (including the Plan Administration Agreement and Litigation Trust Agreement), and all other relevant and necessary documents are essential elements of the Plan and entry into and consummation of the transactions contemplated by each such document and agreement is in the best interests of the Debtors, their Estates and Holders. The Debtors have exercised reasonable business judgment in determining to enter into these documents and have provided sufficient and adequate notice of these documents (if notice of such documents was required).  The terms and conditions of these documents are fair and reasonable and were negotiated in good faith and at arm's length.  The Debtors, the Plan Administrator or the Litigation Trustee, as applicable, are authorized, without further approval of

SC1:5068161.7

this Court, to execute and deliver all agreements, documents, instruments and certificates relating to the transactions contemplated by such documents and perform their obligations thereunder.

## R.      Good Faith

69.      Based on the record in these Chapter 11 Cases, the Exculpated Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the Plan, including any action or inaction in connection with their participation in the activities described in section 1125 of the Bankruptcy Code.  Accordingly, the Exculpated Parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 10.8 of the Plan.  The Exculpated Parties, up to and including the Effective Date, will continue to act in good faith, if they proceed to (a) consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby with respect to which the applicable Exculpated Parties are bound or otherwise obligated and (b) take the actions authorized and directed or contemplated by this Confirmation Order.

## S.      Corporate Action

70.      Upon the Effective Date, all actions contemplated by and set forth in the Plan shall be deemed authorized and approved.  All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection with implementation of the Plan shall be deemed to have occurred and shall be in effect upon the Effective Date, without any requirement of further action by the directors or officers of any Debtor.

**T.**      **Executory Contracts and Unexpired Leases**

         71.     The Debtors have exercised reasonable business judgment in determining to reject by the Plan all Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy other than (a) Executory Contracts or Unexpired Leases previously assumed or rejected pursuant to an order of the Bankruptcy Court, (b) Executory Contracts or Unexpired Leases that are the subject of a motion to assume, or for which a notice of assumption has been filed pursuant to the assumption and assignment procedures approved by the this Court in connection with the Sale and (c) an Executory Contract that is a D&O Policy, in the case of (a) and (b), that is pending on the Effective Date. Each rejection of an Executory Contract or Unexpired Lease in accordance with the Plan, this Confirmation Order, other orders of this Court or otherwise shall be legal, valid and binding upon all non-debtor parties to such Executory Contract or Unexpired Lease, all to the same extent as if such rejection had been authorized and effectuated pursuant to a separate order of this Court that was entered pursuant to section 365 of the Bankruptcy Code before Confirmation. The Debtors have provided sufficient and adequate notice to any Entity whose Executory Contract or Unexpired Lease is rejected solely by virtue of the fact that the Plan rejects all such contracts.

**U.**      **Retention of Jurisdiction**

         72.     This Court properly may retain jurisdiction over the matters set forth in Section 12.1 of the Plan and other applicable provisions of the Plan.

## II.    ORDER

         BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

## A.    Order

73.    The Plan and all of its provisions are confirmed.  A copy of the Plan is attached hereto as <u>Exhibit A</u>.

## B.    Objections

74.    To the extent that any objections, reservations of rights, statements, or joinders to Confirmation have not been withdrawn, waived or settled before entry of this Confirmation Order, cured by the relief granted herein or otherwise resolved as stated on the record of the Confirmation Hearing, such objections, reservations of rights, statements and joinders are hereby overruled on the merits.

## C.    Confirmation of the Plan

75.    The documents contained in the Plan Supplement, and any amendments, modifications and supplements thereto, and all documents and agreements related thereto, and the execution, delivery and performance thereof by the Debtors, the Plan Administrator or the Litigation Trustee, as applicable, are authorized and approved as finalized, executed and delivered.  As set forth in the Plan, once finalized and executed, upon the occurrence of the Effective Date, the documents comprising the Plan Supplement and all other documents and agreements contemplated by the Plan and the Plan Supplement shall constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in accordance with their terms.

## D.    Findings of Fact and Conclusions of Law

76.    The findings of fact and the conclusions of law set forth herein shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014.  To the extent any of the following articles, sections or provisions constitute findings of fact or conclusions of law, they are adopted

as such. To the extent any of the prior findings of fact or conclusions of law constitute an order of this Court, they are adopted as such.

**E.  General Settlement of Claims and Equity Interests**

77.  Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, the Plan constitutes a good faith compromise of all Claims, Equity Interests and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim, or any Distribution to be made on account of such Allowed Claim. Approval of such compromise or settlement of all such Claims and controversies, as well as such compromise or settlement, is in the best interests of the Debtors and their Estates and is fair, equitable and reasonable. Subject to Article 7 of the Plan, all Distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

**F.  Settlement of Committee Adversary Proceeding; Allowed RBL Secured Claim**

78.  The compromise and settlement of the Committee Adversary Proceeding is approved under Bankruptcy Rule 9019. Based upon the representations and arguments of counsel, all other testimony either actually given or proffered, other evidence introduced at the Confirmation Hearing and the full record of these Chapter 11 Cases, this Confirmation Order constitutes the Bankruptcy Court's approval of the settlement of the Committee Adversary Proceeding because, among other things: (a) the settlement reflects a reasonable balance between the possible success of the litigation, on the one hand, and the benefits of fully and finally resolving the litigation and allowing the Debtors to expeditiously exit chapter 11, on the other hand; (b) absent the settlement of the Committee Adversary Proceeding, there is a likelihood of complex and protracted litigation, with the attendant expense, inconvenience and delay; (c) each of the parties supporting the settlement are represented by counsel that is recognized as being

knowledgeable, competent and experienced; (d) the settlement is the product of arm's-length bargaining and good faith negotiations between sophisticated parties; and (e) the settlement is fair, equitable and reasonable and in the best interests of the Debtors, their respective Estates and property, creditors and other parties-in-interest.

79.     The RBL Secured Claim (including the RBL Deficiency Claim) is Allowed and such Claim is supported by valid, perfected and enforceable first priority liens in the Prepetition RBL Collateral (as defined in the Final DIP Order) (including the Adequate Protection Lien), which are not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, or a Claim for which a Holder asserts a setoff under section 553 of the Bankruptcy Code. For the avoidance of doubt, however, nothing in this paragraph shall impact the priority of the RBL Secured Claim or the validity, priority and extent of any M&M Lien Claims.

## G.     References to Plan Provisions

80.     The failure specifically to include or to refer to any particular article, section or provision of the Plan, Plan Supplement or any related document or agreement in this Confirmation Order shall not diminish or impair the effectiveness of such article, section or provision, it being the intent of this Court that the Plan be confirmed and any related documents approved.

## H.     Immediate Binding Effect

81.     Notwithstanding Bankruptcy Rule 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement and all other relevant and necessary documents shall be immediately effective and enforceable and deemed binding upon the Debtors and any and all Holders (irrespective of whether such Holders have accepted, or are deemed to have accepted, the Plan), all Entities that are parties to or are

-27-

subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors and the respective heirs, executors, administrators, successors or assigns, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, if any, of any of the foregoing.

## I.    Cancellation of Existing Notes, Instruments, Certificates and Other Documents

82.    On the Effective Date, except as otherwise specifically provided for in the Plan, the DIP Credit Agreement, RBL Credit Agreement, Enlink Credit Agreement, Unsecured Notes Indenture and any other Certificate, Equity Interest, share, note, bond, indenture, purchase right, option, warrant, intercreditor agreement or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors or giving rise to any Claim or Equity Interest, shall be cancelled, and the Debtors and their Affiliates shall not have any obligations thereunder and shall be released and discharged therefrom.

## J.    Section 1145 Exemption from Registration Under the Securities Act

83.    The solicitation of acceptances and rejections of the Plan was exempt from the registration requirements of the Securities Act and applicable state securities laws, and no other non-bankruptcy law applies to the solicitation.

84.    To the extent the interests in the Wind Down Estates or Litigation Trust are deemed to be "securities," the offering, issuance and distribution of such interests shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any applicable state and local laws requiring registration of securities, pursuant to section 1145 of the Bankruptcy Code or another available exemption from registration under the Securities Act.

**K.    Provisions Governing Distributions**

85.    Article 7 of the Plan is hereby approved.  Except as otherwise set forth in the Plan, the Distribution Agent, at the direction of the Debtors, the Plan Administrator or the Litigation Trustee, as applicable, shall make all Distributions required under Article 7 of the Plan.

**L.    Treatment of Executory Contracts and Unexpired Leases**

86.    The Executory Contract and Unexpired Lease provisions of Article 6 of the Plan are hereby approved.

**M.    Vesting of Assets in the Wind Down Estates**

87.    All Plan Assets shall vest in the Wind Down Estates free and clear of all Liens, Claims, charges or other encumbrances or interests to the extent permitted by section 1141 of the Bankruptcy Code.

**N.    Approval of Litigation Trust and Vesting of the Assets in the Litigation Trust**

88.    The Litigation Trust and the Litigation Trust Agreement pursuant to Section 5.4 of the Plan are hereby approved.  On the Effective Date, the Litigation Trustee and the Litigation Trust Oversight Committee (as defined in the Litigation Trust Agreement) shall be appointed in accordance with the Plan and Litigation Trust Agreement without further order of the Court.  On or prior to the Effective Date, the Litigation Trust shall be established in accordance with the Plan and Litigation Trust Agreement for the purpose of carrying out the duties assigned to the Litigation Trust in the Plan and Litigation Trust Agreement.  The Litigation Trustee shall be empowered to take all actions and exercise such powers as may be vested in the Litigation Trust under the Litigation Trust Agreement and the Plan, or as are deemed by the Litigation Trustee to be necessary and proper to implement the provisions of the Plan and Litigation Trust Agreement.

SC1:5068161.7

## O. D&O Policies

89. As of the Effective Date, the Debtors shall be deemed to have assumed all of the Debtors' D&O Policies pursuant to sections 105 and 365(a) of the Bankruptcy Code, and coverage for defense and indemnity under any of the D&O Policies shall remain available within the definition of "Insured" in any of the D&O Policies subject to the terms and conditions of the D&O Policies. Entry of this Confirmation Order will constitute the Court's approval of the Debtors' assumption of each D&O Policy. Notwithstanding anything to the contrary contained in the Plan, and except as otherwise may be provided in an order of the Court, Confirmation of the Plan will not discharge, impair or otherwise modify any obligations assumed by the assumption of the D&O Policies, and each such obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed. For the avoidance of doubt, the D&O Policies (i) are prefunded and will not require any additional premiums on or after the Effective Date and (ii) provide coverage for those insureds currently covered by such policies for the remaining term of such policies and runoff or tail coverage after the Effective Date to the fullest extent permitted by such policies.

## P. Discharge of the Debtors

90. As set forth in Section 10.3 of the Plan, pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, and except as otherwise provided in the Plan or this Confirmation Order, the treatment of Claims and Equity Interests under the Plan shall be in full and final satisfaction, settlement, release, discharge, and termination, as of the Effective Date, of all Claims of any nature whatsoever, whether known or unknown, against, and Equity Interests in, the Debtors, any property of the Estates, the Plan Administrator or any property of the Wind Down Estates, including all Claims of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim or

Equity Interest based upon such Claim, debt, right or Equity Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Equity Interest based upon such Claim, liability, obligation or Equity Interest is Allowed pursuant to section 502 of the Bankruptcy Code or (c) the Holder of such a Claim, liability, obligation or Equity Interest has accepted the Plan. Except as otherwise provided in the Plan, any default by the Debtors or their Affiliates with respect to any Claim that existed immediately prior to or on account of the filing of these Chapter 11 Cases shall be deemed cured on the Effective Date.

91. Except as otherwise provided in the Plan, this Confirmation Order or such other order of this Court that may be applicable, all Persons and Entities shall be precluded from asserting against the Debtors, their successors or assigns, including the Plan Administrator, the Litigation Trustee, their agents and employees, or their respective assets, properties or interests in property, any Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not the facts or legal bases therefor were known or existed prior to the Effective Date regardless of whether a Proof of Claim or Equity Interest was filed.

**Q. Release of Liens**

92. Except as otherwise provided in this Confirmation Order, in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged, and all of the rights, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Wind Down Estates and their successors and assigns; *provided* that nothing in this release shall affect Holders of Allowed Senior M&M Liens from receiving Distributions from the M&M Lien Reserve.

SC1:5068161.7

**R.    Releases, Exculpations, Injunction and Related Provisions**

93.    Sections 10.5 through 10.12 of the Plan are hereby approved and authorized.

94.    Nothing in this Plan or Confirmation Order shall affect any release granted under any prior order of this Court, all of which remain in full force and effect in accordance with their respective terms.

**S.    Subordinated Claims**

95.    The allowance, classification and treatment of all Allowed Claims and Equity Interests and the respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to reclassify any Allowed Claim or Equity Interest in accordance with any contractual, legal or equitable subordination relating thereto, unless otherwise provided in a settlement agreement concerning such Allowed Claim or Equity Interest.

**T.    Preservation of Causes of Action**

96.    Section 5.9 of the Plan is hereby approved.  On the Effective Date, the Preserved Potential Claims shall vest in the Litigation Trust, and the Litigation Trustee may pursue the Preserved Potential Claims, as appropriate, in accordance with the best interests of the beneficiaries of the Litigation Trust.  A nonexclusive schedule of Preserved Potential Claims is attached as Exhibit 3 to the Plan Supplement (the "Preserved Potential Claims Schedule").  In accordance with and subject to any applicable law, the inclusion or failure to include any Preserved Potential Claim on the Preserved Potential Claims Schedule shall not be deemed an

SC1:5068161.7

admission, denial or waiver of any claims, demands, rights or causes of action that may otherwise constitute a Preserved Potential Claim. The Litigation Trust shall be the successor-in-interest to the Debtors and the Debtors' rights, title, and interests in any Preserved Potential Claims; *provided*, *however*, that the Debtors' rights, title and interests in the Preserved Potential Claims may not be transferred or assigned by the Litigation Trust to any party. The Litigation Trust shall have standing to pursue the Preserved Potential Claims, and the Litigation Trustee shall have the right to commence, prosecute or settle such Preserved Potential Claims in a manner consistent with the terms of the Plan and Litigation Trust Agreement. In pursuing the Preserved Potential Claims, the Litigation Trust shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code and shall succeed to the Debtors' rights with respect to the time periods in which a Cause of Action may be brought under section 546 of the Bankruptcy Code.

## U.  Vendor Actions

97.  The Holders of RBL Secured Claims hold an Allowed Adequate Protection Claim pursuant to the Final DIP Order in an amount in excess of the potential net value to the Estates of all Vendor Actions. As part of the settlement and compromise of the Committee Adversary Proceeding embodied in the Plan and approved by this Confirmation Order, the Holders of the RBL Secured Claims have agreed to forego recovery relating to Vendor Actions as set forth in the Plan and the Litigation Trust Agreement. Specifically, the Litigation Trust Agreement (i) provides that the RBL Agent has the sole authority to direct the Litigation Trustee with respect to the Vendor Actions and (ii) includes an irrevocable direction from the RBL Agent on behalf of the Holders of RBL Secured Claims to the Litigation Trustee not to pursue recovery on any of the Vendor Actions where the applicable vendor or trade creditor (a) has not voted to reject the Plan and (b) has refrained from filing or otherwise

SC1:5068161.7

asserting with the Court a substantive objection (a defined in the Plan) to the Plan that was not consensually withdrawn by the commencement of the Confirmation Hearing. This agreement regarding Vendor Actions is approved in all respects, and the direction provided by the RBL Agent on behalf of the Holders of the RBL Secured Claims regarding Vendor Actions in the Litigation Trust Agreement shall be irrevocable and shall bind the Litigation Trustee going forward with respect to Vendor Actions.

## V. Authority of the Plan Administrator and Litigation Trustee to Prosecute and Settle Actions

98.     Subject to Section 5.9 of the Plan and the terms of the Plan Administration Agreement and Litigation Trust Agreement, after the Effective Date, only the Plan Administrator or the Litigation Trustee, as applicable, shall have the authority to maintain, prosecute, settle, dismiss, abandon or otherwise dispose of any Causes of Action, and, subject to the terms of the Plan Administration Agreement or Litigation Trust Agreement, the Plan Administrator and Litigation Trustee, as applicable may enter into and consummate settlements and compromises of Causes of Actions without notice to or approval by the Bankruptcy Court.

## W. Professional Fee Claims

99.     The Debtors shall establish and fund on or prior to the Effective Date the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Escrow Account shall be maintained in trust for the Professionals. Except as provided in the last sentence of this paragraph, such funds shall not be considered property of the Wind Down Estates. The Plan Administrator shall pay Professional Claims in Cash as soon as reasonably practicable after such Claims are Allowed by Final Order of the Bankruptcy Court. When all Allowed Professional Claims have been paid in full, amounts remaining in the Professional Fee Escrow Account, if any, shall revert to the Wind Down Estate.

SC1:5068161.7

100.     Good faith estimates of Professional Claims provided by professionals pursuant to Section 3.4.3 of the Plan for purposes of the Professional Fee Escrow Account shall not be considered an admission or limitation with respect to the fees and expenses of such Professionals.  If a Professional did not provide such an estimate at least 10 days prior to the Confirmation Hearing, the Debtors are authorized to estimate, in their reasonable discretion, the Professional Claims of such Professional.

101.     Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Plan Administrator, as the case may be, shall, in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional or other fees and expenses related to implementation and Consummation of the Plan incurred by the Debtors, the Plan Administrator, or the Committee, as the case may be.  Except as otherwise specifically provided in the Plan, upon the Effective Date, any requirement that Professionals comply with section 327, 328, 329, 330, 331 or 1103 of the Bankruptcy Code or the Professional Fee Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors, the Plan Administrator, or, solely with respect to the matters set forth in Section 13.9 of the Plan, the Committee, may employ and pay any Professional in the ordinary course of business.

X.     **Fees Payable Under the Unsecured Notes Indenture**

102.     The Plan Administrator shall pay in full in Cash all reasonable and documented postpetition fees, expenses and reimbursements up to $200,000 of the trustee for the Unsecured Notes Indenture (including all reasonable and documented fees and expenses of one counsel) to the extent provided for under the Unsecured Notes Indenture.

Y.     **Statutory Fees Payable Pursuant to 28 U.S.C. § 1930**

103.     The Debtors or the Plan Administrator, as applicable, shall pay all U.S.

-35-

Trustee Fees for each quarter (including any fraction thereof) until these Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

## Z. Filing Deadlines

104. Any Holder of a General Administrative Claim who is not excepted, pursuant to Section 3.1 of the Plan, from the requirements to file and serve a request for payment of such General Administrative Claim on or prior to the Administrative Claim Bar Date will be forever barred, estopped and enjoined from asserting such General Administrative Claim against the Debtors or the Plan Administrator or their respective property and from participating in any Distribution in the Debtors' cases on account of such General Administrative Claim, and such General Administrative Claim shall be deemed discharged as of the Effective Date. The Administrative Claim Bar Date shall be 35 days after the entry of this Confirmation Order.

## AA. Exemption from Certain Transfer Taxes and Recording Fees

105. Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any transfers from the Debtors to the Wind Down Estates or to any other Person, pursuant to, in contemplation of, or in connection with the Plan (including any transfer pursuant to: (a) the distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (b) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sales and use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall, and shall be

directed to, forgo the collection of any such tax, recordation fee or government assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or government assessment. The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

**BB. Retention of Jurisdiction**

106. Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, this Court shall retain exclusive jurisdiction over all matters arising out of, or related to, these Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction over those matters set forth in Section 12.1 of the Plan.

**CC. Other Essential Documents and Agreements**

107. The Plan Administration Agreement, the Litigation Trust Agreement and any other agreements, instruments, certificates or documents related thereto and the transactions contemplated by the foregoing are approved and, upon execution and delivery of the agreements and documents relating thereto by the applicable parties, the Plan Administration Agreement, Litigation Trust Agreement and any other agreements, instruments, certificates or documents related thereto shall be in full force and effect and valid, binding and enforceable in accordance with their terms without the need for any further notice to or action, order or approval of this Court, or other act or action under applicable law, regulation, order or rule. The Debtors and, after the Effective Date, the Plan Administrator or the Litigation Trustee, as applicable, are authorized, without further approval of this Court or any other party, to execute and deliver all agreements, documents, instruments, securities and certificates relating to such agreements and perform their obligations thereunder, including paying all fees due thereunder or in connection therewith.

## DD.    Effectiveness of All Actions

108.    Except as set forth in the Plan, all actions authorized to be taken by the Plan or this Confirmation Order shall be effective on, prior to, or after the Effective Date pursuant to the terms of the Plan or this Confirmation Order, without further application to, or order of this Court.

## EE.    Authorization to Take Actions to Implement and Consummate the Plan

109.    Pursuant to section 1142(b) of the Bankruptcy Code, each of the Debtors, the Plan Administrator and the Litigation Trustee hereby are authorized and empowered to take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, the documents contained in the Plan Supplement, the Plan Administration Agreement, Litigation Trust Agreement and any other Plan related documents, without the need for any approvals, authorizations, actions or consents except for those expressly required pursuant hereto, and all documents, instruments, securities and agreements authorized thereunder and related thereto and all annexes, exhibits and schedules appended thereto, and the obligations thereunder shall constitute legal, valid, binding and authorized obligations of each of the respective parties thereto, enforceable in accordance with their terms without the need for any stockholder or board of directors' approval.

110.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other U.S. governmental authority with respect to the implementation or consummation of the Plan, the Plan Supplement and any documents, instruments, agreements related thereto, any amendments or modifications thereto prior to the Effective Date and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Plan Administration Agreement, the

Litigation Trust Agreement and any documents, instruments, securities, agreements related thereto and any amendments or modifications thereto entered into prior to the Effective Date.

## FF.    Intercompany Claims, Interests and Account Settlement

111.    Notwithstanding anything herein to the contrary, on the Effective Date or as soon thereafter as is reasonably practicable all Intercompany Claims and Intercompany Interests will be canceled and discharged in full, and the Holders thereof shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such portion under the Plan.  In no event shall Intercompany Claims be allowed as General Unsecured Claims or entitled to any Distribution under the Plan.

## GG.    Fees and Expenses of the Distribution Agent

112.    The Plan Administrator shall pay to the Distribution Agents all of their reasonable and documented fees and expenses without the need for any approvals, authorizations, actions or consents of the Bankruptcy Court or otherwise.  The Distribution Agents shall submit detailed invoices to the Plan Administrator for all fees and expenses for which the Distribution Agents seek reimbursement, and the Plan Administrator shall pay those amounts that it, in its sole discretion, deems reasonable, and shall object in writing to those fees and expenses, if any, that the Plan Administrator deems to be unreasonable.  In the event that the Plan Administrator objects to all or any portion of the amounts requested to be reimbursed in a Distribution Agent's invoice, the Plan Administrator or the Litigation Trustee, as applicable, and such Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses.  In the event that the Plan Administrator and a Distribution Agent are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

SC1:5068161.7

## HH.    Dissolution of the Committee

113.    After the Effective Date, the Committee shall be dissolved in accordance with the provisions of Section 13.9 of the Plan.  Upon the dissolution of the Committee pursuant to Section 13.9 of the Plan:  (i) the members of the Committee shall be released and discharged from all rights and duties from, or related to, these Chapter 11 Cases; and (ii) the Professionals retained by the Committee will not be entitled to assert any Professional Claim for any services rendered or expenses incurred as Professionals for the Committee, except to the extent necessary to prepare, file and, if necessary, litigate final applications for compensation.

## II.    Modifications or Amendments

114.    Subject to the limitations contained in the Plan, the Debtors or the Plan Administrator and the Litigation Trustee collectively, as applicable, are authorized to, after the entry of this Confirmation Order, upon order of this Court, (a) amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or (b) remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  Entry of this Confirmation Order shall mean that all modifications and amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code, and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

## JJ.    Effect of Conflict between Plan and Confirmation Order

115.    If there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

## KK.    Reservation of Rights

116.    Except as expressly set forth in the Plan, the Plan shall have no force or effect unless and until this Court enters this Confirmation Order.  Neither the filing of the Plan,

any statement or provision contained therein, nor the taking of any action by a Debtor or any other Entity with respect to the Plan, the Disclosure Statement or any document contained in the Plan Supplement shall be or shall be deemed, prior to the Effective Date, to be an admission or waiver of any rights of: (a) any Debtor with respect to the Holders or other Entity; or (b) any Holder or other Entity.

117.    Nothing in the Plan, this Confirmation Order or related documents shall discharge, release, impair, enjoin, or otherwise preclude or diminish any liability to the United States of any non-debtor.

118.    Nothing in the Plan or this Confirmation Order determines the validity, priority or extent of the M&M Liens or the allowance of the M&M Lien Claims.

119.    Nothing in the Plan or this Confirmation Order shall be deemed to (i) limit or otherwise construe the scope of the relief afforded to Holders of M&M Lien Claims by 42 O.S. § 144.2 or (ii) determine the amounts owed to Holders of M&M Lien Claims under 42 O.S. § 144.2. All rights with respect to amounts owed to Holders of M&M Lien Claims under 42 O.S. § 144.2 or otherwise are reserved.

120.    For those reasons set forth in this Confirmation Order, Blue Mountain Exploration, LLC's ("Blue Mountain") objection is overruled. The Debtors determined in their business judgment that the Blue Mountain Licensing Agreement should be rejected through the Plan following consultation with Contango. Blue Mountain elects to exercise rights under section 365(n) of the Bankruptcy Code. All parties' rights with respect to section 365(n) are retained and unaffected by this Confirmation Order.

## LL.    Notice of Entry of the Confirmation Order

121.    In accordance with Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), within fifteen (15) Business Days of the date of entry of this Confirmation Order, the Debtors

shall serve a notice of Confirmation to all parties served with the Confirmation Hearing Notice in substantially the form of the notice annexed hereto as <u>Exhibit B</u>, which form is hereby approved, to be delivered to such parties by first-class mail, postage prepaid, or by electronic mail as authorized in the Solicitation Procedures Order; *provided* that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors served the notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.

122.   Mailing of the notice of entry of this Confirmation Order in the time and manner set forth in the previous paragraph shall be good and sufficient notice under the particular circumstances in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice shall be necessary.

**MM.   Injunctions and Automatic Stay**

123.   Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in these Chapter 11 Cases and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

124.   This Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, Equity Interests, Causes of Action, obligations, suits, judgments, damages, demands, debts, rights or liabilities released or discharged pursuant to the Plan.

SC1:5068161.7

**NN.    Nonseverability of Plan Provisions upon Confirmation**

125.    Each term and provision of the Plan, as it may have been altered or interpreted herein, is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (c) nonseverable and mutually dependent.

**OO.    Authorization to Consummate**

126.    The Debtors are authorized to consummate the Plan on any Business Day selected by the Debtors after the entry of this Confirmation Order, subject to satisfaction or waiver of the conditions to the Effective Date set forth in Section 9.1 of the Plan.

**PP.    Final Order**

127.    This Confirmation Order is intended to be a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

IT IS SO ORDERED.

### ###

Approved for Entry:


*/s/ John D. Dale*
John D. Dale, OBA No. 19787
GABLEGOTWALS
1100 ONEOK Plaza
100 West 5th Street
Tulsa, Oklahoma 74103-4217
Telephone: (918) 595-4800
Fax: (918) 595-4990
Email: jdale@gablelaw.com


-and-

*/s/ Craig M. Regens*
Craig M. Regens, OBA No. 22894
GABLEGOTWALS
One Leadership Square
211 North Robinson
Oklahoma City, Oklahoma  73102
Telephone:   (405) 568-3313
Facsimile:    (405) 235-2875
cregens@gablelaw.com


-and-

Andrew G. Dietderich, NY Bar 2850584
Brian D. Glueckstein, NY Bar 4227005
Alexa J. Kranzley, NY Bar 4707386
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:     (212) 558-4000
Facsimile:     (212) 558-3588
dietdericha@sullcrom.com
gluecksteinb@sullcrom.com
kranzleya@sullcrom.com


*Co-Counsel to the Debtors*

SC1:5068161.7

## Exhibit A

**Plan**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

—————————————————————— x

In re                                                        :

                                                             :        Chapter 11

WHITE STAR PETROLEUM HOLDINGS, LLC,        :        Case No. 19-12521-JDL
*et al.*,[1]                                                  :

                                                             :        Jointly Administered

                          Debtors.        :

—————————————————————— x

## AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF WHITE STAR
## PETROLEUM HOLDINGS, LLC AND ITS DEBTOR AFFILIATES

Andrew G. Dietderich
Brian D. Glueckstein
Alexa J. Kranzley
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:   (212) 558-4000

Counsel to the Debtors and
Debtors-in-Possession

Dated: March 31, 2020

---

[1]    The Debtors in these chapter 11 cases, and the last four digits of their U.S. taxpayer
identification numbers are: White Star Petroleum Holdings, LLC (0575) ("WSTR
Holdings"), White Star Petroleum, LLC (0977) ("WSTR"), White Star Petroleum II, LLC
(4347) ("WSTR II"), White Star Petroleum Operating, LLC (5387) ("WSTR Operating") and
WSP Finance Corporation (9152) ("WSP Finance" and together with WSTR Holdings,
WSTR, WSTR II and WSTR Operating, the "Debtors").  The Debtors' corporate
headquarters is located at 301 N.W. 63rd Street, Suite 600, Oklahoma City, OK 73116.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

1.  INTRODUCTION ..................................................................................................1

2.  DEFINITIONS AND RULES OF INTERPRETATION ......................................2
    2.1.  Defined Terms .......................................................................... 2
    2.2.  Rules of Interpretation .............................................................. 15
    2.3.  Governing Law ........................................................................ 16
    2.4.  Computation of Time ............................................................... 16

3.  ADMINISTRATIVE CLAIMS ..........................................................................17
    3.1.  Administrative Claim Bar Date ................................................ 17
    3.2.  General Administrative Claims................................................. 17
    3.3.  DIP Claims .............................................................................. 18
    3.4.  Professional Claims ................................................................. 18
    3.5.  Fees Payable Under Unsecured Notes Indenture...................... 19
    3.6.  Statutory Fees Payable Pursuant to 28 U.S.C. § 1930 ............ 19

4.  CLASSIFICATION, TREATMENT AND VOTING OF CLAIMS AND
    EQUITY INTERESTS.........................................................................................20
    4.1.  Classification of Claims and Equity Interests .......................... 20
    4.2.  Treatment of Claims and Equity Interests ............................... 20
    4.3.  Intercompany Claims and Interests.......................................... 23
    4.4.  Special Provision Governing Unimpaired Claims .................... 23
    4.5.  Confirmation Pursuant to Sections 1129(a) and 1129(b) of the Bankruptcy
          Code ........................................................................................ 23

5.  IMPLEMENTATION OF THE PLAN .............................................................24
    5.1.  Operations Between the Confirmation Date and Effective Date ........................ 24
    5.2.  Settlement of Committee Adversary Proceeding...................... 24
    5.3.  Wind Down Estates.................................................................. 24
    5.4.  Litigation Trust ....................................................................... 24
    5.5.  Vesting of Assets ..................................................................... 26
    5.6.  D&O Policies. .......................................................................... 27
    5.7.  Cancellation of Existing Agreements, Notes and Equity Interests ...................... 27
    5.8.  Section 1146 Exemption from Certain Transfer Taxes and Recording Fees........ 27
    5.9.  Preservation of Causes of Action............................................. 28
    5.10. Effectuating Documents and Further Transactions................... 28

6.  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..........29
    6.1.  Rejection of Executory Contracts and Unexpired Leases......... 29
    6.2.  Claims Against the Debtors Upon Rejection ............................ 29

6.3.    Modification, Amendments, Supplements, Restatements or Other Agreements ......................................................................................................... 29

6.4.    Reservation of Rights ............................................................................................ 30

7.      PROVISIONS GOVERNING DISTRIBUTIONS ...........................................................31

7.1.    Distributions on the Initial Distribution Date ..................................................... 31

7.2.    Distributions on Subsequent Distribution Dates ................................................ 31

7.3.    Record Date and Delivery of Distributions ....................................................... 32

7.4.    Distribution Agents .............................................................................................. 33

7.5.    Fractional and *De Minimis* Distributions ............................................................ 34

7.6.    Undeliverable Distributions ................................................................................. 34

7.7.    Reversion .............................................................................................................. 34

7.8.    Surrender of Canceled Instruments or Securities ................................................ 35

7.9.    Compliance with Tax Requirements and Allocations to Principal and Interest ................................................................................................................. 35

7.10.   Setoffs .................................................................................................................. 35

7.11.   No Postpetition Interest on Claims ..................................................................... 36

7.12.   No Payment Over the Full Amount ..................................................................... 36

8.      CLAIMS ADMINISTRATION PROCEDURES ............................................................37

8.1.    Objections to Claims ........................................................................................... 37

8.2.    Estimation of Claims ........................................................................................... 37

8.3.    Expungement and Disallowance of Claims ........................................................ 37

8.4.    Amendments to Proofs of Claim ......................................................................... 38

8.5.    No Distributions Pending Allowance .................................................................. 38

8.6.    Distributions After Allowance ............................................................................ 38

8.7.    Administration Responsibilities .......................................................................... 38

8.8.    Unsecured Claim Pool Reserve ........................................................................... 39

8.9.    M&M Lien Reserve ............................................................................................. 40

9.      CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN .........................41

9.1.    Conditions Precedent to the Effective Date ........................................................ 41

9.2.    Waiver of Conditions ........................................................................................... 41

9.3.    Simultaneous Transactions .................................................................................. 41

9.4.    Effect of Non-Occurrence of the Effective Date ................................................ 41

10.    SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS ..............43

10.1.   Compromise and Settlement ................................................................................ 43

10.2.   Subordinated Claims ............................................................................................ 43

10.3.   Discharge of Claims and Termination of Equity Interests .................................. 43

10.4.   Release of Liens ................................................................................................... 43

10.5.   **Debtor Release** .................................................................................................... 44

10.6.   **Voluntary Release by Holders of Claims and Equity Interests** ..................... 44

10.7.   **Scope of Releases** .............................................................................................. 45

10.8.   **Exculpation** ....................................................................................................... 45

| 10.9. | **Injunction** | 46 |
|---|---|---|
| 10.10. | **Limitations on Exculpations and Releases** | 46 |
| 10.11. | **Limitations on Recovery with Respect to Prepetition D&O Actions** | 46 |
| 10.12. | **Reservation of Rights** | 47 |

| 11. | MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN | 48 |
|---|---|---|
| 11.1. | Modification of Plan | 48 |
| 11.2. | Effect of Confirmation on Modification | 48 |
| 11.3. | Revocation of Plan | 48 |

| 12. | RETENTION OF JURISDICTION | 49 |
|---|---|---|
| 12.1. | Retention of Jurisdiction | 49 |

| 13. | MISCELLANEOUS PROVISIONS | 52 |
|---|---|---|
| 13.1. | Immediate Binding Effect | 52 |
| 13.2. | Additional Documents | 52 |
| 13.3. | Reservation of Rights | 52 |
| 13.4. | Successors and Assigns | 52 |
| 13.5. | Term of Injunction or Stays | 52 |
| 13.6. | Entire Agreement | 53 |
| 13.7. | Exhibits | 53 |
| 13.8. | Nonseverability of Plan Provisions Upon Confirmation | 53 |
| 13.9. | Dissolution of Committee | 53 |
| 13.10. | Closing of Chapter 11 Cases | 54 |
| 13.11. | Conflicts | 54 |
| 13.12. | Further Assurances | 54 |
| 13.13. | No Stay of Confirmation Order | 54 |
| 13.14. | Waiver or Estoppel | 54 |
| 13.15. | Post-Effective Date Service | 54 |
| 13.16. | Notices | 54 |

SC1:5188533.4

1. <u>**INTRODUCTION**</u>

      White Star Petroleum Holdings, LLC ("*Holdings*") and its debtor affiliates, as debtors-in-possession in the above-captioned Chapter 11 Cases (together with Holdings, the "*Debtors*"), propose the following joint plan of liquidation (including the Plan Supplement and all other exhibits and schedules thereto, the "*Plan*") pursuant to section 1121(a) of the Bankruptcy Code. These Chapter 11 Cases are being jointly administered pursuant to an order of the Bankruptcy Court dated May 29, 2019. Each Debtor is a proponent of the Plan for purposes of section 1129 of the Bankruptcy Code.

## 2. DEFINITIONS AND RULES OF INTERPRETATION

### 2.1. Defined Terms

Except as otherwise provided herein, each capitalized term used in this Plan shall have the meaning set forth below.

2.1.1 "*503(b)(9) Claim*" means a Claim arising under section 503(b)(9) of the Bankruptcy Code for which a Proof of Claim was filed on or before the General Claims Bar Date.

2.1.2 "*Adequate Protection Claim*" means the Claim secured by the Adequate Protection Liens in an amount equal to the diminution in the value of the collateral securing the RBL Secured Claim during the Chapter 11 Cases as a result of (a) the provisions of the Final DIP Order granting priming liens on the Prepetition Collateral (as defined in the Final DIP Order) to the DIP Agent for the benefit of the DIP Parties; (b) the authorization of the use of Cash Collateral (as defined in the Final DIP Order) and other Prepetition Collateral; (c) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code; and/or (d) otherwise, pursuant to sections 361(a), 363(c) and 364(d)(1) of the Bankruptcy Code, which Claim the RBL Agent asserts to be not less than $43 million.

2.1.3 "*Adequate Protection Liens*" means the valid, enforceable, unavoidable and fully perfected replacement liens and security interests granted to the RBL Parties in the Final DIP Order.

2.1.4 "*Administrative Claim*" means any Claim arising under sections 503(b) or 507(b) of the Bankruptcy Code.

2.1.5 "*Administrative Claim Bar Date*" means: (a) 4:00 p.m. (Central Time) on the 35th day after the Effective Date or (b) such other date established by order of the Bankruptcy Court by which Proofs of Claim in respect of Other Administrative Claims must be filed.

2.1.6 "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

2.1.7 "*Agents*" means the DIP Agent and the RBL Agent.

2.1.8 "*Allowed*" means, with respect to any Claim, that the amount, priority, and/or classification of such Claim has been (a) allowed by this Plan or the Confirmation Order, or by Final Order of the Bankruptcy Court; (b) allowed or stipulated in writing (i) prior to the Effective Date, by the Debtors in accordance with authority granted by an order of the Bankruptcy Court or (ii) on or after the Effective Date, by the Plan Administrator; (c) listed in the Schedules as not disputed, not contingent and not unliquidated, in each case, with respect to amount, secured status or priority and (i) no Proof of Claim in an amount greater than the amount set forth in the Schedules has been filed; (ii) no objection to allowance, priority or classification, request for estimation, motion to deem the Schedules amended or other challenge has been filed prior to the applicable deadlines set forth in the Plan, the Bankruptcy Code, the Bankruptcy

- 2 -

Rules or as determined by the Bankruptcy Court and (iii) such Claim is not otherwise subject to disallowance under section 502(d) or bifurcation under section 506(a) of the Bankruptcy Code; (d) evidenced by a valid and timely filed Proof of Claim and (i) no objection to allowance, priority or classification, request for estimation, or other challenge has been filed prior to the applicable deadlines set forth in the Plan, the Bankruptcy Code, the Bankruptcy Rules or as determined by the Bankruptcy Court; and (ii) such Claim is not otherwise subject to disallowance under section 502(d) or bifurcation under section 506(a) of the Bankruptcy Code; (e) in the case of an Other Administrative Claim, subject to a request for payment timely filed and served in accordance with Article 3.1 herein, and no objection to such Claim has been timely filed and served pursuant to Article 3 herein; or (f) in the case of any Professional Claim, allowed by an order of the Bankruptcy Court.

2.1.9 "*Avoidance Actions*" means any and all actual or potential claims and causes of action to avoid and recover a transfer of property or an obligation incurred by any of the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b) and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law.

2.1.10 "*Ballots*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the Solicitation Procedures Order, and which must be actually received on or before the Voting Deadline.

2.1.11 "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*.

2.1.12 "*Bankruptcy Court*" or "*Court*" means the United States Bankruptcy Court for the Western District of Oklahoma; *provided* that when describing events occurring in the Chapter 11 Cases prior to the transfer of venue of such cases to the United States Bankruptcy Court for the Western District of Oklahoma, such terms may refer to the United States Bankruptcy Court for the District of Delaware.

2.1.13 "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to these Chapter 11 Cases, and the general, local and chambers rules of the Bankruptcy Court.

2.1.14 "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

2.1.15 "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

2.1.16 "*Cause of Action*" means any action, claim, cause of action, controversy, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or

SC1:5188533.4

unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law. Causes of Action also include: (a) any right of setoff, counterclaim or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or interests; (c) any claim pursuant to section 362 of the Bankruptcy Code; (d) any Avoidance Action; (e) any claim or defense, including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; (f) any state law fraudulent transfer claim and (g) any claim against persons or Entities that are not released under the Plan, including such Entity's directors, officers, employees, agents, Affiliates, parents, subsidiaries, predecessors, successors, heirs, executors and assigns, attorneys, financial advisors, restructuring advisors, investment bankers, accountants and other professionals or representatives when acting in any such capacities.

2.1.17    "*Certificate*" means any instrument evidencing a Claim or an Equity Interest.

2.1.18    "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the chapter 11 case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all Debtors, the jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

2.1.19    "*Claim*" means any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

2.1.20    "*Claims Bar Date*" means (a) the General Claims Bar Date; (b) the Rejected Contract Claims Bar Date; (c) the Governmental Claims Bar Date or (d) such other date established by order of the Bankruptcy Court by which Proofs of Claim must have been filed.

2.1.21    "*Claims Objection Bar Date*" means: (a) the date that is the later of (i) 180 days after the Effective Date or (ii) as to Proofs of Claim filed after the applicable Claims Bar Date, the 60th day after a Final Order is entered by the Bankruptcy Court deeming the late-filed Proof of Claim to be treated as timely filed or (b) such later date as may be established by order of the Bankruptcy Court upon a motion by the Plan Administrator, with notice only to those parties entitled to receive notice pursuant to Bankruptcy Rule 2002.

2.1.22    "*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent.

2.1.23    "*Class*" means a class of Claims or Equity Interests as set forth in Article 4 herein pursuant to section 1122(a) of the Bankruptcy Code.

2.1.24    "*Committee*" means the official committee of unsecured creditors of the Debtors appointed in the Chapter 11 Cases on June 10, 2019 pursuant to section 1102 of the Bankruptcy Code, as may be reconstituted from time to time.

2.1.25    "*Committee Adversary Proceeding*" means the adversary proceeding captioned *The Official Committee of Unsecured Creditors* v. *MUFG Union Bank*, Adv. Pro. No. 19-1088-JDL and all claims, objections and Causes of Action asserted therein.

- 4 -

2.1.26 "*Confirmation*" means the entry of the Confirmation Order on the docket of these Chapter 11 Cases.

2.1.27 "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of these Chapter 11 Cases.

2.1.28 "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

2.1.29 "*Confirmation Order*" means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

2.1.30 "*Consummation*" means the occurrence of the Effective Date.

2.1.31 "*D&O Policy*" means any insurance policy, and all agreements, documents or instruments relating thereto, issued to any of the Debtors covering potential liability for current or former directors, members, trustees and officers of the Debtors.

2.1.32 "*D&O Insurance Coverage*" means payment from any D&O Policy of any and all covered costs and expenses reimbursable to or incurred by the covered parties in connection with the defense of any Prepetition D&O Action.

2.1.33 "*D&O Limitations*" shall have the meaning set forth in Article 10.11 of the Plan.

2.1.34 "*Debtors*" has the meaning set forth in the Introduction hereto.

2.1.35 "*DIP Agent*" means MUFG Union Bank, N.A. in its capacity as administrative agent and collateral agent under the DIP Credit Agreement.

2.1.36 "*DIP Claim*" means a Claim arising out of a loan or loans to the Debtors under the DIP Credit Agreement, including claims arising from letters of credit issued thereunder.

2.1.37 "*DIP Credit Agreement*" means that certain Debtor-In-Possession Credit Agreement by and among the Debtors, the DIP Agent and the lenders party thereto, dated as of May 29, 2019, as such agreement may be amended or modified from time to time.

2.1.38 "*DIP Loan Documents*" means the DIP Credit Agreement and all other loan and security documents relating thereto, as may be amended, modified or replaced from time to time.

2.1.39 "*DIP Parties*" means the DIP Agent and the banks, financial institutions and other lenders party to the DIP Credit Agreement from time to time.

2.1.40 "*Disclosure Statement*" means the Disclosure Statement for the Plan, as approved by the Bankruptcy Court pursuant to the Solicitation Procedures Order, including all exhibits and schedules thereto and references therein that relate to the Plan.

2.1.41 "*Disputed Claim*" means any Claim that has not been Allowed.

2.1.42 "*Distribution*" means a distribution of property pursuant to the Plan, to take place as provided for herein, and "*Distribute*" shall have a correlative meaning.

2.1.43 "*Distribution Agent*" means any Entity or Entities chosen by (i) the Litigation Trustee with respect to Allowed General Unsecured Claims and/or (ii) the Plan Administrator with respect to all other Claims, in each case may include the Notice and Claims Agent.

2.1.44 "*Distribution Date*" means the Initial Distribution Date and each Subsequent Distribution Date.

2.1.45 "*Distributions Record Date*" means, for the purpose of making Distributions hereunder, the Confirmation Date.

2.1.46 "*Effective Date*" means, following the Confirmation Date, 12:01 a.m. prevailing Eastern Time on a Business Day selected by the Debtors, on which all conditions to the occurrence of the Effective Date set forth in Articles 9.1 and 9.2 herein are satisfied or waived.

2.1.47 "*Election Form*" means the election form regarding the Voluntary Release by Holders of Claims and Equity Interests provided to Holders of Claims or Equity Interests who are not entitled to vote on the Plan, and which must be actually received on or before the Voting Deadline.

2.1.48 "*Enlink Claim*" means a Claim arising out of the Enlink Credit Agreement representing principal and accrued and unpaid interest at the non-default contractual rate up to and including the Holdings Petition Date.

2.1.49 "*Enlink Credit Agreement*" means that certain Term Loan Credit Agreement, dated as of May 9, 2018 among WSTR, Holdings and EnLink Oklahoma Gas Processing, LP, as such agreement may be amended or modified from time to time.

2.1.50 "*Entity*" incorporates the meaning set forth in section 101(15) of the Bankruptcy Code.

2.1.51 "*Equity Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code), including any issued or unissued share of common stock, preferred stock, or other instrument evidencing an ownership interest in a Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest in a Debtor that existed immediately prior to the Effective Date; *provided* that Equity Interest does not include any Intercompany Interest.

2.1.52 "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code and/or as established by order of the Bankruptcy Court.

2.1.53    "*Exchange Rate*" means the closing exchange rate on February 13, 2019, as published by *The Wall Street Journal*.

2.1.54    "*Exculpated Parties*" means (a) the Debtors; (b) the Committee and its members, in their capacities as such; and (c) with respect to each Entity named in (a) and (b), such Entity's managers, members, directors, officers, employees, consultants, agents, predecessors, successors, heirs, executors and assigns, attorneys, financial advisors, restructuring advisors, investment bankers, accountants and other professionals or representatives when acting in any such capacities.

2.1.55    "*Executory Contract*" means a contract that a Debtor may assume or reject under section 365 or 1123 of the Bankruptcy Code.

2.1.56    "*Final DIP Order*" means the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 , 364, 503, 506 and 507, (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief*, entered by the Bankruptcy Court on July 23, 2019 [Doc. 328].

2.1.57    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, seek *certiorari* or move for a new trial, re-argument or rehearing has expired and no appeal, petition for *certiorari* or motion for a new trial, re-argument or rehearing has been timely filed, or as to which any appeal that has been taken, any petition for *certiorari*, or motion for a new trial, review, re-argument, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which *certiorari* was sought; *provided* that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 9024, may be filed relating to an order shall not by itself cause such order to not be a Final Order.

2.1.58    "*General Administrative Claim*" means an Administrative Claim other than a DIP Claim or a Professional Claim.

2.1.59    "*General Claims Bar Date*" means 4:00 p.m. (Central Time) on August 23, 2019.

2.1.60    "*General Unsecured Claim*" means any Claim that is not an (a) Administrative Claim, (b) Other Priority Claim, (c) Other Secured Claim, (d) Equity Interest, or (e) Intercompany Claim, but including any RBL Deficiency Claim, Junior M&M Lien Claim and Enlink Claim.

2.1.61    "*Governmental Claims Bar Date*" means 4:00 p.m. (Central Time) on November 24, 2019.

2.1.62    "*Holder*" means an Entity holding a Claim against or an Equity Interest in any of the Debtors.

2.1.63 "*Holdings*" has the meaning set forth in the Introduction hereto.

2.1.64 "*Impaired*" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

2.1.65 "*Initial Distribution Date*" means the Business Day that is as soon as practicable after the Effective Date when Distributions under the Plan shall commence, which date shall be no later than 20 Business Days after the Effective Date unless extended by the Bankruptcy Court for cause shown.

2.1.66 "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

2.1.67 "*Intercompany Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code), including any issued or unissued share of common stock, preferred stock, or other instrument, evidencing an ownership interest in a Debtor (other than Holdings) or a subsidiary held by another Debtor.

2.1.68 "*Junior M&M Lien*" means any statutory Lien (including mechanics' and materialmen's liens and mineral liens) that has been properly perfected under applicable law and is not a Senior M&M Lien.

2.1.69 "*Junior M&M Lien Claims*" means any Claim, after reduction for any pro rata amounts the Holder of such Claim recovers from trust fund proceeds of the applicable well securing such Junior M&M Lien Claim as judicially determined pursuant to 42 O.S. § 144.2, secured by a Junior M&M Lien.

2.1.70 "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

2.1.71 "*Litigation Trust*" means the Litigation Trust created pursuant to the Plan and the Litigation Trust Agreement.

2.1.72 "*Litigation Trust Agreement*" means the agreement among the Litigation Trustee, the Debtors and the Committee establishing the Litigation Trust that shall be created pursuant to the Plan, dated as of the Effective Date, in form and substance reasonably acceptable to the Litigation Trustee, the Debtors, the Committee and the RBL Agent, and to be filed as part of the Plan Supplement.

2.1.73 "*Litigation Trust Assets*" means the Litigation Trust Funding Amount, the Preserved Potential Claims and any proceeds thereof.

2.1.74 "*Litigation Trust Distributable Cash*" means any Litigation Trust Assets reduced to Cash, net of all expenses and costs of operating the Litigation Trust, other than the Unsecured Claim Pool.

2.1.75 "*Litigation Trust Funding Amount*" means the $1,250,000 funded to the Litigation Trust on the Effective Date.

2.1.76    "*Litigation Trust Reimbursement Amount*" shall have the meaning set forth in Article 5.4.3 of the Plan.

2.1.77    "*Litigation Trust Reserve Amount*" means $850,000 of the Litigation Trust Funding Amount.

2.1.78    "*Litigation Trustee*" means such Person as designated in the Plan Supplement by the Committee with the consent of the Debtors and the RBL Agent, such consent not to be unreasonably withheld, and any successor to such Person.

2.1.79    "*M&M Lien*" means any Senior M&M Lien or Junior M&M Lien.

2.1.80    "*M&M Lien Claim*" means any Claim, after reduction for any pro rata amounts the Holder of such Claim recovers from trust fund proceeds of the applicable well securing such M&M Lien Claim as judicially determined pursuant to 42 O.S. § 144.2, secured by an M&M Lien asserted prior to the General Claims Bar Date.

2.1.81    "*M&M Lien Proceedings*" means the adversary proceeding captioned *White Star Petroleum, LLC et al.* v. *MUFG Union Bank, N.A. et al.*, Adv. Pro. No. 19-01115-JDL, as well as all procedures, claims, objections and causes of action asserted therein.

2.1.82    "*M&M Lien Reserve*" means the reserve established pursuant to the Sale Order funded with an amount of Cash equal to the amount set forth in the M&M Lien Reserve Schedule.

2.1.83    "*M&M Lien Reserve Amount*" means, at any time, an amount equal to the sum of (a) for each Allowed Senior M&M Lien Claim, the amount of such Allowed Senior M&M Lien Claim which has not been paid or otherwise satisfied in accordance with Article 4.2.2 herein; (b) for each M&M Lien Claim that has not been Allowed or been deemed not Allowed, the amount set forth for such M&M Lien Claim in the M&M Lien Reserve Schedule and (c) for each M&M Lien Claim that has been Allowed or been deemed not Allowed, any pro rata amounts of trust funds, if any, of the applicable well securing such M&M Lien Claim pursuant to 42 O.S. § 144.2.  For the avoidance of doubt, except as provided for in (c), the M&M Lien Reserve Amount shall not include any amounts for Allowed Junior M&M Lien Claims or any M&M Lien Claim that has been deemed invalid and/or deemed not Allowed except as may be provided by order of the Court.

2.1.84    "*M&M Lien Reserve Residual*" means the amount of Cash held in the M&M Lien Reserve greater than the M&M Lien Reserve Amount.

2.1.85    "*M&M Lien Reserve Schedule*" means the revised M&M Lien schedule set forth in the *Notice of Further Revised M&M Lien Reserve* [Doc. 879].

2.1.86    "*Net Recoveries*" means gross proceeds, if any, recovered in connection with any settlement, judgment or other resolution of a Preserved Potential Claim, net of any legal fees and expenses incurred in connection with obtaining such settlement, judgment or other resolution, including any contingency fees.

- 9 -

2.1.87    "*Notice and Claims Agent*" means Kurtzman Carson Consultants LLC, located at 222 North Pacific Coast Highway, Suite 300, El Segundo, California 90245, retained and approved by the Bankruptcy Court as the Debtors' notice and claims agent.

2.1.88    "*Ordinary Course Administrative Claim*" means a General Administrative Claim that is a monetary obligation for goods or services incurred by the Debtors in the ordinary course of the Debtors' business.

2.1.89    "*Other Administrative Claim*" means any Administrative Claim that is not a 503(b)(9) Claim, DIP Claim, Professional Claim, Ordinary Course Administrative Claim or Claim for U.S. Trustee Fees.

2.1.90    "*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim.

2.1.91    "*Other Secured Claim*" means any Secured Claim other than an RBL Secured Claim, Enlink Claim or Junior M&M Lien Claim.

2.1.92    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

2.1.93    "*Petition Date*" means (a) for White Star Petroleum Holdings, LLC, May 24, 2019 and (b) for all other Debtors, May 28, 2019.

2.1.94    "*Plan*" has the meaning set forth in the Introduction hereto.

2.1.95    "*Plan Administrator*" means such Person as may be designated in the Plan Supplement by the RBL Agent with the consent of the Debtors and the Committee, such consent not to be unreasonably withheld, and any successor to such Person.

2.1.96    "*Plan Administration Agreement*" means the agreement among the Plan Administrator, the Debtors and the RBL Agent, in form reasonably acceptable to the Committee, regarding the administration of the Wind Down Estate, dated as of the Effective Date, and to be filed as part of the Plan Supplement.

2.1.97    "*Plan Assets*" means all property of each Estate and any property acquired by any Debtor under the Plan excluding the Litigation Trust Assets.

2.1.98    "*Plan Supplement*" means the initial compilation of documents and forms of documents, schedules and exhibits to the Plan, to be filed and available on the Notice and Claims Agent's website, www.kccllc.net/WhiteStar, no later than seven days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court, and additional documents filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

2.1.99    "*Prepetition*" means, with respect to each Debtor, prior to the Petition Date for such Debtor.

- 10 -

2.1.100    "*Prepetition D&O Actions*" means Causes of Action against the Debtors' current or former directors or officers, solely in their official capacity as such, (i) arising prior to April 30, 2019, or (ii) arising prior to the Petition Date and based upon any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

2.1.101    "*Preserved Potential Claims*" means without duplication, the Avoidance Actions (other than those transferred pursuant to the Sale and those against a Released Party), the Prepetition D&O Actions and any Cause of Action on the Preserved Potential Claims Schedule.

2.1.102    "*Preserved Potential Claims Schedule*" means the schedule of Preserved Potential Claims prepared jointly by the Debtors and the Committee and filed with the Plan Supplement that may not be amended or supplemented without the consent of the Debtors and the Committee.

2.1.103    "*Pro Rata*" means, with respect to an Allowed Claim, the percentage represented by a fraction (a) the numerator of which shall be an amount equal to such Claim and (b) the denominator of which shall be an amount equal to the aggregate amount of Allowed and estimated Claims in the same Class as such Claim, except in cases where Pro Rata is used in reference to multiple Classes, in which case Pro Rata means the proportion that such Holder's Claim in a particular Class bears to the aggregate amount of all Allowed and estimated Claims in such multiple Classes.

2.1.104    "*Professional*" means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with section 327, 328, 363 and/or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date pursuant to section 327, 328, 329, 330, 331 or 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

2.1.105    "*Professional Claim*" means an Administrative Claim for the compensation of a Professional and the reimbursement of expenses incurred by such Professional through and including the Confirmation Date.

2.1.106    "*Professional Fee Escrow Account*" means an account maintained at MUFG Union Bank, N.A. to be funded by the Debtors upon the Effective Date in an amount equal to the Professional Fee Reserve Amount.

2.1.107    "*Professional Fee Order*" means the *Order Establishing Procedures for Compensation and Reimbursement of Expenses of Professionals* entered by the Bankruptcy Court on August 9, 2019 [Doc. 359].

2.1.108    "*Professional Fee Reserve Amount*" means the aggregate amount of unpaid Professional Claims for all Professionals through and including the Confirmation Date as estimated, in the Debtors' reasonable discretion, with the consent of the RBL Agent, such consent not to be unreasonably withheld, and in accordance with Article 3.4.3 herein.

2.1.109  "*Proof of Claim*" means a proof of Claim filed against any of the Debtors in these Chapter 11 Cases.

2.1.110  "*Purchaser*" means the entity or entities acquiring substantially all of the assets of the Debtors through the transactions and agreements approved by the Sale Order.

2.1.111  "*RBL Agent*" means MUFG Union Bank, N.A. in its capacity as administrative agent and collateral agent under the RBL Credit Agreement.

2.1.112  "*RBL Credit Agreement*" means that certain Revolving Credit Agreement, dated as of June 30, 2016 (as amended by that certain Amendment Agreement dated as of January 24, 2017, that certain Second Amendment dated as of March 16, 2017, that certain Third Amendment of Revolving Credit Agreement and First Amendment to Collateral Agreement dated as of April 30, 2018, and that certain Fourth Amendment of Revolving Credit Agreement dated as of November 16, 2018, that certain Fifth Amendment of Revolving Credit Agreement dated as of January 31, 2019, that certain Sixth Amendment of Revolving Credit Agreement dated as of February 27, 2019), among WSTR, Holdings, the lenders parties thereto and MUFG Union Bank, N.A., as administrative agent and collateral agent.

2.1.113  "*RBL Deficiency Claim*" means the RBL Secured Claim minus the RBL Secured Claim Distribution.  The RBL Deficiency Claim is expected to be no less than $210,000,000.

2.1.114  "*RBL Initial Claim Pool*" means on the Initial Distribution Date, the Debtors' Cash proceeds on hand, other than (a) Cash in the M&M Lien Reserve, (b) the Litigation Trust Funding Amount, (c) Cash in the Professional Fee Escrow Account and (d) Cash reserved or applied by the Plan Administrator in accordance with the Plan Administration Agreement, including amounts to pay expenses and costs of administering the Wind Down Estates.

2.1.115  "*RBL Parties*" means the RBL Agent and the banks, financial institutions and other lenders party to the RBL Credit Agreement from time to time.

2.1.116  "*RBL Secured Claim*" means the partially secured Claim arising out of a loan or loans to the Debtors under the RBL Credit Agreement, including claims arising from letters of credit issued thereunder and including the Adequate Protection Claim, to the extent of the value of the entirety of the Debtor's interest in the Estates' property, which Claim is supported by valid, perfected and enforceable liens (including the agreed Adequate Protection Lien), not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, or a Claim for which a Holder asserts a setoff under section 553 of the Bankruptcy Code; *provided*, *however*, that nothing in this definition shall impact the priority of the RBL Secured Claim or the M&M Lien Claims.

2.1.117  "*RBL Secured Claim Distribution*" means all Cash proceeds received by the RBL Parties on account of the RBL Secured Claim, including, without limitation, from (a) the RBL Initial Claim Pool, (b) the M&M Lien Reserve Residual, (c) the Wind Down Cash Proceeds and (d) residual, if any, from the Professional Fee Escrow Account.

- 12 -

2.1.118   "*Rejected Contract Claims Bar Date*" means 4:00 p.m. (Central Time) on the 35th day after the Effective Date.

2.1.119   "*Released Parties*" means (a) the Exculpated Parties, (b) the DIP Agent, (c) the RBL Parties in their capacities as such, (d) the Purchaser and (e) each of their respective current and former directors, officers, employees, consultants, agents, Affiliates, parents, subsidiaries, members, managers, predecessors, successors, heirs, executors and assigns, attorneys, financial advisors, restructuring advisors, investment bankers, accountants and other professionals or representatives when acting in any such capacities.

2.1.120   "*Releasing Parties*" means (a) the DIP Parties, (b) the Committee, (c) RBL Parties in their capacities as such and (d) each Holder of a Claim or an Equity Interest that was provided a Ballot or an Election Form and does not opt out of the Voluntary Release by Holders of Claims and Equity Interests in compliance with the instructions set forth in the Solicitation Materials.  For the avoidance of doubt, Holders who were not provided a Ballot or an Election Form and are not listed in clauses (a)–(d) above are not Releasing Parties.

2.1.121   "*Sale*" means the sale approved by the Sale Order pursuant to which the Debtors are selling substantially all of their assets.

2.1.122   "*Sale Order*" means the *Order Authorizing (A) the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith*, entered by the Bankruptcy Court on September 30, 2019 [Doc. 657].

2.1.123   "*Schedules*" means the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs filed by the Debtors in these Chapter 11 Cases, each as may be amended from time to time.

2.1.124   "*Secured Claim*" means a Claim (a) secured by a Lien on property in which an Estate has an interest, to the extent such Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code and to the extent of the value of its Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed as such pursuant to the Plan.

2.1.125   "*Securities Act*" means the United States Securities Act of 1933, as amended.

2.1.126   "*Security*" means a security as defined in section 2(a)(1) of the Securities Act.

2.1.127   "*Senior M&M Lien*" means any M&M Lien or any portion thereof that is valid, has been properly perfected under applicable law and has been judicially determined in the M&M Lien Proceedings to have priority, in whole or in part, over the liens securing the RBL Secured Claims.

2.1.128 "*Senior M&M Lien Claim*" means any Claim, after reduction for any pro rata amounts the Holder of such Claim recovers from trust fund proceeds of the applicable well securing such Senior M&M Lien Claim as judicially determined pursuant to 42 O.S. § 144.2, secured by a Senior M&M Lien.

2.1.129 "*Solicitation Materials*" means the solicitation package, including Ballots, authorized pursuant to the Solicitation Procedures Order.

2.1.130 "*Solicitation Procedures Order*" means the order (i) approving the Disclosure Statement; (ii) establishing a voting record date for the Plan; (iii) approving solicitation packages and procedures for the distribution thereof; (iv) approving the forms of Ballots; (v) establishing procedures for voting on the Plan and (vi) establishing notice and objection procedures for the confirmation of the Plan, entered by the Bankruptcy Court on February 14, 2020 [Doc. 1016], together with any supplemental order(s) that may be entered by the Bankruptcy Court in connection therewith.

2.1.131 "*Subsequent Distribution Date*" means a date after the Initial Distribution Date selected by the Plan Administrator for Distributions in accordance with Article 7.2.1 herein.

2.1.132 "*Unclaimed Distribution*" means any Distribution under the Plan on account of an Allowed Claim to a Holder that has not: (a) accepted a particular Distribution or, in the case of a Distribution made by check, negotiated such check; (b) given written notice to the Distribution Agent of an intent to accept a particular Distribution; (c) responded in writing to the request of the Distribution Agent for information necessary to facilitate a particular Distribution or (d) taken any other action necessary to facilitate such Distribution.

2.1.133 "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

2.1.134 "*Unimpaired*" means any Claim or Equity Interest that is not Impaired.

2.1.135 "*Unsecured Claim Pool*" means the $400,000 of the Litigation Trust Funding Amount that is not used to fund the Litigation Trust Reserve Amount; plus the Litigation Trust Reimbursement Amount and any portion of the residual Litigation Trust Reserve Amount that is contributed pursuant to Article 5.4.3 herein.

2.1.136 "*Unsecured Claim Pool Reserve*" means the reserve for distributions on account of Disputed Claims and Junior M&M Lien Claims to be created from Litigation Trust Distributable Cash and maintained by the Litigation Trustee in a segregated account pursuant to Article 7.3.3 herein.

2.1.137 "*Unsecured Notes Indenture*" means the indenture for the Unsecured Notes due September 15, 2022.

2.1.138 "*U.S. Trustee*" means the United States Trustee for Region 20.

- 14 -

2.1.139   "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

2.1.140   "*Vendor Actions*" means all Preserved Potential Claims constituting claims pursuant to section 547 of the Bankruptcy Code against the Debtors' vendors and trade creditors.

2.1.141   "*Voluntary Release by Holders of Claims and Equity Interests*" means the release by Holders of Claims and Equity Interests as set forth in Article 10.6 herein.

2.1.142   "*Voting*" means the process by which a Holder of a Claim may vote to accept or reject the Plan, pursuant to the conditions in Article 4 herein.

2.1.143   "*Voting Deadline*" means 8:00 p.m. (Central Time) on March 26, 2020, by which time all Ballots must be actually received by the Notice and Claims Agent.

2.1.144   "*Wind Down Cash Proceeds*" means all Cash proceeds from the disposition or other monetization of Plan Assets available for distribution by the Plan Administrator, other than (a) Cash in the M&M Lien Reserve and (b) Cash reserved or applied by the Plan Administrator (i) to make Distributions under the Plan to Holders of Administrative Claims, Other Priority Claims or Other Secured Claims or (ii) to pay expenses and costs of administering the Wind Down Estates.

2.1.145   "*Wind Down Estate*" means the Estates of each Debtor after the Effective Date of the Plan.

2.1.146   "*WSTR LLC Agreement*" means fourth amended and restated limited liability company agreement of Holdings, dated as of March 14, 2017, as may be amended, restated, modified or supplemented from time to time in accordance with the terms thereof.

2.2.   Rules of Interpretation

For the purposes of this Plan:  (a) any reference herein to the word "including" or word of similar import shall be read to mean "including without limitation"; (b) unless otherwise specified, all references herein to "Articles" are references to Articles herein, hereof or hereto; (c) unless otherwise specified, the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than a particular portion of the Plan; (d) captions and headings to Articles are inserted for the convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (e) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (f) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (g) all references to docket numbers of documents filed in these Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (h) all references to statutes, regulations, orders, rules of courts and the like shall mean as amended from time to time, and as applicable to these Chapter 11 Cases, unless otherwise stated; (i) any reference herein to a contract, agreement, lease, plan, policy, document or instrument being in a particular form or on particular terms and conditions means that the same shall be substantially in that form or substantially on those terms and conditions; (j) any reference herein to a contract, agreement, lease, plan, policy, document or

- 15 -

instrument or schedule or exhibit thereto, whether or not filed, shall mean the same as amended, restated, modified or supplemented from time to time in accordance with the terms hereof or thereof; (k) any immaterial effectuating provisions may be interpreted by the Debtors, the Plan Administrator and the Litigation Trustee in such a manner that is consistent with the overall purpose and intent of the Plan, all without further Bankruptcy Court order; (l) any reference to an Entity as a Holder of a Claim or Equity Interest includes that Entity's successors and permitted assigns; (m) except as otherwise expressly provided in this Plan, where this Plan contemplates that any Debtor, the Plan Administrator or the Litigation Trustee shall take any action, incur any obligation, issue any security or adopt, assume, execute or deliver any contract, agreement, lease, plan, policy, document or instrument on or prior to the Effective Date, the same shall be duly and validly authorized by the Plan and effective against and binding upon such Debtor, the Plan Administrator and/or the Litigation Trustee, as applicable, on and after the Effective Date without further notice to, order of or other approval by the Bankruptcy Court, action under applicable law, regulation, order or rule, or the vote, consent, authorization or approval of the board of directors of any Debtor or any other Entity and (n) except as otherwise provided in the Plan, anything required to be done by the Debtors, the Plan Administrator or the Litigation Trustee, as applicable, on the Effective Date may be done on the Effective Date or as soon as reasonably practicable thereafter.

### 2.3. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflicts of laws, shall govern the construction and implementation of the Plan and any agreement, document or instrument executed or entered into in connection with the Plan.

### 2.4. Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein, and all dates and times shall be determined based on prevailing time in Oklahoma City, Oklahoma.

- 16 -

3.     **ADMINISTRATIVE CLAIMS**

        In accordance with section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims and Professional Claims, payment of which is provided for below.

    3.1.    Administrative Claim Bar Date

        Any request for payment of an Administrative Claim must be filed and served on the Plan Administrator pursuant to the procedures specified in the notice of entry of the Confirmation Order and the Confirmation Order on or prior to the Administrative Claim Bar Date; *provided* that no request for payment is required to be filed and served pursuant to this Article 3.1 with respect to any:

        (a)    Administrative Claim that is Allowed as of the Administrative Claim Bar Date;

        (b)    503(b)(9) Claim;

        (c)    Ordinary Course Administrative Claim;

        (d)    DIP Claim;

        (e)    Professional Claim or

        (f)    Claim for U.S. Trustee Fees.

        Any Holder of an Administrative Claim who is required to, but does not, file and serve a request for payment of such Administrative Claim pursuant to the procedures specified in the Confirmation Order on or prior to the Administrative Claim Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claim against the Plan Administrator or its property, and such Administrative Claim shall be deemed discharged as of the Effective Date.

        Any objection to a request for payment of a Administrative Claim that is required to be filed and served pursuant to this Article 3.1 must be filed and served on the Plan Administrator and the requesting party creditor (a) no later than 90 days after the Administrative Claim Bar Date or (b) by such later date as may be established by order of the Bankruptcy Court upon a motion by the Plan Administrator, with notice only to those parties entitled to receive notice pursuant to Bankruptcy Rule 2002.

    3.2.    General Administrative Claims

        Except to the extent that a Holder of an Allowed General Administrative Claim agrees to less favorable treatment, the Holder of each Allowed General Administrative Claim shall receive Cash in an amount equal to the full unpaid amount of such Allowed General Administrative Claim on or as reasonably practicable after the later of (a) the Effective Date, (b) the date on which such Claim is Allowed or (c) with respect to Ordinary Course

- 17 -

Administrative Claims, the date such amount is due in accordance with applicable non-bankruptcy law and the terms and conditions of any applicable agreement or instrument.

3.3. **DIP Claims**

      3.3.1    **DIP Claims**.  DIP Claims shall be Allowed in the full amount due and owing under the DIP Credit Agreement.  Except to the extent that a Holder of an Allowed DIP Claim agrees to a less favorable treatment, the Holder of each Allowed DIP Claim shall receive Cash equal to the full amount of its Allowed DIP Claim in full and final satisfaction of such Claim; *provided* that:

      (a)    any indemnification, expense reimbursement or other obligation of a Debtor that is contingent as of the Effective Date shall survive the Effective Date and be paid by the Plan Administrator as and when due under the DIP Credit Agreement and

      (b)    at the election of the Debtors, and with the consent of the DIP Agent and DIP Parties, any outstanding letter of credit or other cash management products may be fully cash-collateralized.

      All Liens and security interests granted pursuant to the DIP Loan Documents, whether in the Chapter 11 Cases or otherwise, shall be terminated in accordance with the payoff letter for the DIP Loan Documents upon satisfaction of the terms and conditions set forth in the payoff letter, whereupon such liens and security interests shall be of no further force or effect.

3.4. **Professional Claims**

      3.4.1    **Final Fee Applications**.  All final requests for payment of Professional Claims shall be filed and served no later than 60 days after the Effective Date, in the manner set forth in the Professional Fee Order.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims.

      3.4.2    **Professional Fee Escrow Amount**.  The Debtors shall establish and fund the Professional Fee Escrow Account on or prior to the Effective Date.  The Professional Fee Escrow Account shall be maintained in trust for the Professionals.  Except as provided in the last sentence of this paragraph, such funds shall not be considered property of the Wind Down Estates.  The Plan Administrator shall pay Professional Claims in Cash as soon as reasonably practicable after such Claims are Allowed by Final Order of the Bankruptcy Court.

      3.4.3    **Professional Fee Reserve Amount**.  Professionals shall provide good faith estimates of their Professional Claims for purposes of the Professional Fee Escrow Account and shall deliver such estimates to the Debtors no later than 10 days prior to the Confirmation Hearing; *provided* that such estimates shall not be considered an admission or limitation with respect to the fees and expenses of such Professionals.  If a Professional does not provide such an estimate, the Debtors may estimate, in their reasonable discretion, the Professional Claims of such Professional.

3.4.4    <u>Post-Effective Date Fees and Expenses</u>.  Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Plan Administrator, as the case may be, shall, in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional or other fees and expenses related to implementation and Consummation of the Plan incurred by the Debtors, the Plan Administrator, or the Committee, as the case may be. Except as otherwise specifically provided in the Plan, upon the Effective Date, any requirement that Professionals comply with section 327, 328, 329, 330, 331 or 1103 of the Bankruptcy Code or the Professional Fee Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors, the Plan Administrator, or, solely with respect to the matters set forth in Article 13.9 herein, the Committee, may employ and pay any Professional in the ordinary course of business.

3.5.    <u>Fees Payable Under Unsecured Notes Indenture</u>.

The Plan Administrator shall pay in full in Cash all reasonable and documented postpetition fees, expenses and reimbursements up to $200,000 of the trustee for the Unsecured Notes Indenture (including all reasonable and documented fees and expenses of one counsel) to the extent provided for under the Unsecured Notes Indenture.

3.6.    <u>Statutory Fees Payable Pursuant to 28 U.S.C. § 1930</u>

The Plan Administrator shall pay all U.S. Trustee Fees for each quarter (including any fraction thereof) until these Chapter 11 Cases are converted, dismissed or closed, whichever occurs first.

SC1:5188533.4

4. **CLASSIFICATION, TREATMENT AND VOTING OF CLAIMS AND EQUITY INTERESTS**

    4.1.    Classification of Claims and Equity Interests

        All Claims and Equity Interests except for Administrative Claims and Professional Claims are classified in the Classes set forth in this Article 4. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest qualifies within the description of such other Classes. A Claim or Equity Interest also is classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is Allowed as a Claim or Equity Interest in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date.

        4.1.1    Deemed Substantive Consolidation. The Plan shall serve as a motion by the Debtors seeking entry of a Bankruptcy Court order deeming the substantive consolidation of the Debtors' Estates into a single Estate for certain limited purposes related to the Plan, including Voting, Confirmation and Distribution (but for the avoidance of doubt, without altering the separate Petition Dates for certain Debtors). As a result of the deemed substantive consolidation of the Estates, each Class of Claims and Equity Interests will be treated as against a single consolidated Estate without regard to the separate legal existence of the Debtors. The Plan will not result in the merger or otherwise affect the separate legal existence of each Debtor, other than with respect to voting and distribution rights under the Plan.

        4.1.2    Summary of Classification and Treatment. The classification of Claims and Equity Interests pursuant to the Plan is as follows:

| Class | Claims and Equity Interests | Status | Voting Rights |
|-------|------------------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | RBL Secured Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Equity Interests in Holdings | Impaired | Deemed to Reject |

    4.2.    Treatment of Claims and Equity Interests

        4.2.1    Class 1 – Other Priority Claims

        (a)    *Classification*: Class 1 consists of all Other Priority Claims.

        (b)    *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed Other Priority Claim, each Holder of such Allowed

- 20 -

Other Priority Claim shall be paid in full in Cash on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date on which such Other Priority Claim becomes Allowed and (iii) such other date as may be ordered by the Bankruptcy Court.

(c) *Voting*: Claims in Class 1 are Unimpaired. Each Holder of an Other Priority Claim is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. No Holder of Other Priority Claims is entitled to vote to accept or reject the Plan.

### 4.2.2 Class 2 – Other Secured Claims

(a) *Classification*: Class 2 consists of Other Secured Claims.

(b) *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive one of the following treatments, in the sole discretion of the Plan Administrator: (i) payment in full in Cash; (ii) delivery of the collateral securing such Allowed Other Secured Claim or (iii) treatment of such Allowed Other Secured Claim in any other manner that renders the Claim Unimpaired.

(c) *Voting*: Claims in Class 2 are Unimpaired. Each Holder of an Other Secured Claim is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. No Holder of an Other Secured Claim is entitled to vote to accept or reject the Plan.

### 4.2.3 Class 3 – RBL Secured Claims

(a) *Classification*: Class 3 consists of all RBL Secured Claims.

(b) *Allowance*: The RBL Secured Claims shall be Allowed in an aggregate amount equal to $280,221,539.08, representing principal and accrued and unpaid interest at the non-default contractual rate up to and including the Holdings Petition Date.

(c) *Treatment*: Except to the extent that a Holder of an Allowed RBL Secured Claim agrees to a less favorable treatment, and in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed RBL Secured Claim, each Holder of an Allowed RBL Secured Claim shall receive its Pro Rata share of the RBL Secured Claim Distribution, until such time as such Holder

- 21 -

has received Cash distributions equal to the Allowed amount of such Allowed RBL Secured Claim.

(d) *Voting*: Claims in Class 3 are Impaired and each Holder of an RBL Secured Claim is entitled to vote to accept or reject the Plan.

4.2.4 Class 4 – General Unsecured Claims

(a) *Classification*: Class 4 consists of all General Unsecured Claims.

(b) *Treatment*: Except to the extent that a Holder of a General Unsecured Claim agrees to a less favorable treatment, and in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed General Unsecured Claim:

(i) each Holder of an Allowed General Unsecured Claim, other than a Holder of an RBL Deficiency Claim, shall receive its Pro Rata share of the Unsecured Claim Pool; and

(ii) if Litigation Trust Distributable Cash is available for Distribution, each Holder of an Allowed General Unsecured Claim, other than a Holder of an RBL Deficiency Claim, shall receive its Pro Rata share of 50% of Litigation Trust Distributable Cash and each Holder of an RBL Deficiency Claim shall receive its Pro Rata share of 50% of Litigation Trust Distributable Cash.

(c) *Voting*: Claims in Class 4 are Impaired and each Holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

4.2.5 Class 5 – Equity Interests in Holdings

(a) *Classification*: Class 5 consists of all Equity Interests in Holdings.

(b) *Treatment*: No Holder of an Equity Interest in Holdings shall receive any Distributions on account of its Equity Interest. On and after the Effective Date, all Equity Interests in Holdings shall be canceled and shall be of no further force and effect, whether surrendered for cancelation or otherwise.

(c) *Voting*: Claims in Class 5 are Impaired. Each Holder of an Equity Interest in Holdings is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. No Holder of an Equity Interest in Holdings is entitled to vote to accept or reject the Plan.

- 22 -

4.3.     <u>Intercompany Claims and Interests</u>

Notwithstanding anything herein to the contrary, on the Effective Date or as soon thereafter as is reasonably practicable all Intercompany Claims and Intercompany Interests will be canceled and discharged in full, and the Holders thereof shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such portion under the Plan. In no event shall Intercompany Claims be allowed as General Unsecured Claims or entitled to any Distribution under the Plan.

4.4.     <u>Special Provision Governing Unimpaired Claims</u>

Except as otherwise provided herein, the Plan shall not affect the Debtors' or the Plan Administrator's rights in respect of any Unimpaired Claims, including legal and equitable defenses or setoff or recoupment rights with respect thereto.

4.5.     <u>Confirmation Pursuant to Sections 1129(a) and 1129(b) of the Bankruptcy Code</u>

For purposes of Confirmation, section 1129(a)(10) of the Bankruptcy Code shall be satisfied if any one of Classes 3 or 4 accepts the Plan.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class or Classes of Claims.

SC1:5188533.4

## 5. **IMPLEMENTATION OF THE PLAN**

### 5.1. Operations Between the Confirmation Date and Effective Date

During the period from the Confirmation Date through and until the Effective Date, the Debtors may continue to operate their businesses as debtors-in-possession, subject to all applicable orders of the Bankruptcy Court.

### 5.2. Settlement of Committee Adversary Proceeding

Other than as specifically set forth herein, the Plan shall be deemed a motion to approve the good-faith compromise and settlement of the Committee Adversary Proceeding pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such compromise and settlement is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.

On the Effective Date, the transactions contemplated by the Plan, including the Distributions to Holders of Allowed General Unsecured Claims, the acknowledgement of the adequate protection claim of the Holders of the RBL Secured Claims and the direction to the Litigation Trustee not to pursue certain Preserved Potential Claims pursuant to Article 5.4.6 herein, shall be in full and final settlement of the Committee Adversary Proceeding, and the Committee Adversary Proceeding shall be deemed dismissed with prejudice. The Committee and the RBL Agent shall file a joint notice of dismissal with the Bankruptcy Court.

### 5.3. Wind Down Estates

The purpose of the Wind Down Estates is to monetize and distribute the Plan Assets with no objective to continue or engage in the conduct of a trade or business. The Plan Administrator shall be vested with all powers and authority set forth in this Plan, shall be deemed to have been appointed as the Debtors' Estates' representative pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and shall have the duties of a trustee set forth in sections 704(a)(1), 704(a)(2) and 704(a)(5) of the Bankruptcy Code.

### 5.4. Litigation Trust

5.4.1 Establishment of Litigation Trust. On or before the Effective Date, the Debtors, on their own behalf and on behalf of the beneficiaries, the Committee and the Litigation Trustee shall execute the Litigation Trust Agreement and take all necessary steps to establish the Litigation Trust. The Litigation Trust shall be established for the primary purpose of receiving the Litigation Trust Assets and maximizing the net present value of Distributions to Holders of Allowed General Unsecured Claims, with no objective to continue or engage in the conduct of a trade or business. The Litigation Trustee shall be a disinterested fiduciary with duties solely to the Holders of Allowed General Unsecured Claims. The establishment of the Litigation Trust is not a determination that any Preserved Potential Claims are colorable or valuable. The Litigation Trustee shall have no duty to bring any litigation and may decline to pursue any litigation as and to the extent it

- 24 -

determines is in the best interests of the Holders of Allowed General Unsecured Claims. The Litigation Trustee shall have the authority to retain any advisors for the purpose of carrying out its duties under the Litigation Trust Agreement, and shall be vested with all powers and authorities set forth in this Plan and the Litigation Trust Agreement.

       5.4.2     Funding of Litigation Trust. On the Effective Date, the Litigation Trust shall be funded with the Litigation Trust Funding Amount.

       5.4.3     Litigation Trust Reserve Amount and Litigation Trust Reimbursement Amount.

          (a)     On the Effective Date, the Litigation Trust shall create a reserve account that shall be funded with the Litigation Trust Reserve Amount. The initial reasonable costs and expenses of the Litigation Trust shall be funded out of the Litigation Trust Reserve Amount, excluding any contingency fees of counsel which shall be funded out of the proceeds of any Preserved Potential Claims for which the contingency fees are earned. Net Recoveries on Preserved Potential Claims in an amount equal to the Litigation Trust Reserve Amount (the "*Litigation Trust Reimbursement Amount*") shall be contributed to the Unsecured Claim Pool from the first Net Recoveries.

          (b)     To the extent that any portion of the Litigation Trust Reserve Amount remains, upon dissolution of the Litigation Trust, any such excess funds shall be treated as follows: (i) to the extent that such funds have been reimbursed to the Unsecured Claim Pool by application of the Litigation Trust Reimbursement Amount, such funds shall be treated as Litigation Trust Distributable Cash; and (ii) to the extent that such funds have not been reimbursed to the Unsecured Claim Pool by application of the Litigation Trust Reimbursement Amount, such funds shall be treated as part of the Unsecured Claim Pool.

       5.4.4     Taxation of Litigation Trust. The Litigation Trust will be designed and intended to meet the criteria set out in Rev. Procedure 94-45 for qualifying as a grantor trust for United States tax purposes. Accordingly, both the Litigation Trustee and relevant Holders shall, for United States tax purposes, treat Holders of the Allowed General Unsecured Claims as receiving all of the assets of the Litigation Trust on the Effective Date in exchange for their Allowed General Unsecured Claims and thereafter (a) earning all items of interest or other income earned by the Litigation Trust and (b) incurring any expenses or losses incurred by the Litigation Trust. The Litigation Trustee shall file grantor trust tax returns for the Litigation Trust in accordance with the above and send Holders of Allowed General Unsecured Claims appropriate statements regarding their allocable shares of the income, expense or loss referenced above.

- 25 -

5.4.5    Books and Records.  The Litigation Trust shall have access to the Debtors' books and records for the purpose of investigating and pursuing the Preserved Potential Claims.  The Confirmation Order shall provide that, on the Effective Date, all of the Debtors' privileges and work product, including but not limited to, any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral) related to the Preserved Potential Claims that vest in the Litigation Trust, shall be vested in the Litigation Trust, which will have exclusive authority to waive or not to waive the Debtors' privileges in its sole discretion.  Notwithstanding the foregoing and for the avoidance of doubt, the privileges transferred to the Litigation Trust do not include any privileges of the current and former individual directors or officers of the Debtors, and all of the rights of such directors and officers with respect to such privileged materials, including any materials that may be subject to joint privilege with the Debtors, are hereby preserved.

5.4.6    Vendor Actions.  As part of the settlement of the Committee Adversary Proceeding, and solely to the extent that such settlement is approved by the Bankruptcy Court pursuant to this Plan, the Committee and the RBL Agent have agreed that the Holders of RBL Secured Claims hold an Allowed adequate protection claim pursuant to the Final DIP Order in an amount in excess of the potential net value to the Estates of all Vendor Actions, and the Holders of RBL Secured Claims have agreed to forego recovery relating to Vendor Actions. The Litigation Trust Agreement shall therefore (i) provide that the RBL Agent has the sole authority to direct the Litigation Trustee not to pursue a particular Vendor Action, and (ii) include an irrevocable direction from the RBL Agent on behalf of the Holders of RBL Secured Claims to the Litigation Trustee not to pursue recovery on any of the Vendor Actions where the applicable vendor or trade creditor (a) does not vote to reject the Plan and (b) refrains from filing or otherwise asserting with the Court a substantive objection to the Plan that is not consensually withdrawn by no later than the commencement of the Confirmation Hearing; *provided*, *however*, that any objection filed that relates solely to the treatment of claims in Class 2 of the Plan shall not qualify as a "substantive objection" pursuant to this provision.  The Litigation Trust Agreement shall further provide that if a vendor or trade creditor files or asserts such a substantive objection as described in this Article 5.4.6, such irrevocable direction by the RBL Agent shall not apply to the objecting vendor or trade creditor.

5.5.    Vesting of Assets

5.5.1    Wind Down Estates Assets.  As of the Effective Date, all Plan Assets shall vest in the Wind Down Estates free and clear of all Liens, Claims, charges or other encumbrances or interests to the extent permitted by section 1141 of the Bankruptcy Code.

5.5.2    Litigation Trust Assets.  As of the Effective Date, the Litigation Trust Assets and the Debtors' rights, title and interests to such Litigation Trust Assets shall vest in the Litigation Trust free and clear of all Liens, Claims, charges or other encumbrances or interests to the extent permitted by section 1141 of the Bankruptcy Code; *provided, however* that the Litigation Trust Assets and the Debtors' rights, title and interests to such Litigation Trust Assets may not be transferred or assigned by the Litigation Trust to any party.

- 26 -

5.6.    D&O Policies.

As of the Effective Date, the Debtors shall be deemed to have assumed all of the Debtors' D&O Policies pursuant to sections 105 and 365(a) of the Bankruptcy Code, and coverage for defense and indemnity under any of the D&O Policies shall remain available within the definition of "Insured" in any of the D&O Policies subject to the terms and conditions of the D&O Policies.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each D&O Policy.  Notwithstanding anything to the contrary contained in the Plan, and except as otherwise may be provided in an order of the Bankruptcy Court, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations assumed by the foregoing assumption of the D&O Policies, and each such obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed.  For the avoidance of doubt, the D&O Policies (i) are prefunded and will not require any additional premiums on or after the Effective Date and (ii) provide coverage for those insureds currently covered by such policies for the remaining term of such policies and runoff or tail coverage after the Effective Date to the fullest extent permitted by such policies.

5.7.    Cancellation of Existing Agreements, Notes and Equity Interests

On the Effective Date, except as otherwise specifically provided for in the Plan, the DIP Credit Agreement, RBL Credit Agreement, Enlink Credit Agreement, Unsecured Notes Indenture and any other Certificate, Equity Interest, share, note, bond, indenture, purchase right, option, warrant, intercreditor agreement, guaranty, indemnity, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors or giving rise to any Claim or Equity Interest, shall be canceled, and the Debtors and their Affiliates shall not have any obligations thereunder and shall be released and discharged therefrom.

5.8.    Section 1146 Exemption from Certain Transfer Taxes and Recording Fees

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any transfers from the Debtors to the Wind Down Estates or to any other Person, pursuant to, in contemplation of, or in connection with the Plan (including any transfer pursuant to: (a) the distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (b) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sales and use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall, and shall be directed to, forgo the collection of any such tax, recordation fee or government assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or government assessment.  The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

5.9.    Preservation of Causes of Action

Except as otherwise provided in Article 10 herein or the other provisions of the Plan, each Cause of Action of a Debtor shall be preserved and, along with the exclusive right to enforce such Cause of Action, shall vest exclusively in the Wind Down Estates or the Litigation Trust, as applicable, as of the Effective Date. Unless a Cause of Action is expressly waived, relinquished, released or compromised in the Plan or an order of the Bankruptcy Court, the Plan Administrator or Litigation Trustee, as applicable, expressly reserves such Cause of Action for later adjudication and, accordingly, no doctrine of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), laches or other preclusion doctrine shall apply to such Cause of Action as a consequence of the Confirmation, the Plan, the vesting of such Cause of Action in the Wind Down Estates or Litigation Trust, as applicable, any order of the Bankruptcy Court or these Chapter 11 Cases. **No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as an indication that the Debtors, the Plan Administrator or the Litigation Trustee, as applicable, will not pursue such Cause of Action.**

5.10.   Effectuating Documents and Further Transactions

The Debtors, the Plan Administrator or the Litigation Trustee, as applicable, may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan. The secretary and any assistant secretary of each Debtor shall be authorized to certify or attest to any of the foregoing actions.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the shareholders, directors or members of the Debtors shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to applicable law, and without any requirement of further action by the shareholders, directors, managers or partners of the Debtors, or the need for any approvals, authorizations, actions or consents.

## 6. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 6.1. Rejection of Executory Contracts and Unexpired Leases

Except as otherwise provided herein, all Executory Contracts and Unexpired Leases will be rejected by the Plan on the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code, other than (a) Executory Contracts or Unexpired Leases previously assumed or rejected pursuant to an order of the Bankruptcy Court, (b) Executory Contracts or Unexpired Leases that are the subject of a motion to assume, or for which a notice of assumption has been filed pursuant to the assumption and assignment procedures approved by the Bankruptcy Court in connection with the Sale and (c) an Executory Contract that is a D&O Policy, in the case of (a) and (b), that is pending on the Effective Date. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejection of such Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code.

### 6.2. Claims Against the Debtors Upon Rejection

No Executory Contract or Unexpired Lease rejected by the Debtors on or prior to the Effective Date shall create any obligation or liability of the Debtors that is not a Claim. Any Proof of Claim arising from or relating to the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan must be filed with the Notice and Claims Agent before the Rejected Contract Claims Bar Date. Any Claim arising from or relating to the rejection of an Executory Contract or Unexpired Lease that is not filed with the Notice and Claims Agent by the Rejected Contracts Claims Bar Date will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or any of their property. Any Allowed Claim arising from the rejection of an Executory Contract or Unexpired Lease shall be classified as a General Unsecured Claim, and shall be treated in accordance with Article 4.2.4 herein.

### 6.3. Modification, Amendments, Supplements, Restatements or Other Agreements

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is rejected shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or are rejected or repudiated under the Plan.

Modifications, amendments, supplements and restatements to Prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the Prepetition nature of such Executory Contract or Unexpired Leases or the validity, priority or amount of any Claims that may arise in connection therewith.

6.4. <u>Reservation of Rights</u>

Nothing contained in the Plan shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease, or that any Debtor has any liability thereunder.

SC1:5188533.4

7. **PROVISIONS GOVERNING DISTRIBUTIONS**

7.1. Distributions on the Initial Distribution Date

7.1.1 Initial Distributions Generally. On the Initial Distribution Date, the Distribution Agent shall commence Distributions under the Plan on account of each Claim that is Allowed on or prior to the Effective Date, other than General Unsecured Claims.

7.1.2 Initial Distributions to RBL. On the Initial Distribution Date, the Distribution Agent shall Distribute to the Holders of RBL Secured Claims, in accordance with Article 4.2.3 herein, the funds in the RBL Initial Claim Pool.

7.1.3 Initial Distributions to General Unsecured Creditors. On the Initial Distribution Date, the Litigation Trustee shall Distribute the Unsecured Claim Pool net of the Unsecured Claim Pool Reserve to Holders of Allowed General Unsecured Claims, other than the Holders of the RBL Deficiency Claim.

7.2. Distributions on Subsequent Distribution Dates

7.2.1 Subsequent Distribution Dates. Other than with respect to Distributions to Holders of Allowed General Unsecured Claims, the Plan Administrator shall identify periodic dates after the Initial Distribution Date to be Subsequent Distribution Dates for purposes of making additional Distributions under the Plan. Each Subsequent Distribution Date shall be a Business Day, and the period between any Subsequent Distribution Date and the prior Distribution Date shall not exceed 180 days.

7.2.2 Subsequent Distributions to RBL.

(a) Distribution of Excess M&M Lien Reserve. If, on any Subsequent Distribution Date, the amount of Cash held in the M&M Lien Reserve is greater than the M&M Lien Reserve Amount, the Plan Administrator shall direct the Distribution Agent to Distribute the M&M Lien Reserve Residual to the Holders of RBL Secured Claims in accordance with Article 4.2.3 herein.

(b) Distributions of RBL Allocation of Wind Down Cash Proceeds. On any Subsequent Distribution Date, the Plan Administrator may direct the Distribution Agent to Distribute the Wind Down Cash Proceeds that the Plan Administrator, in its sole discretion, determines are Wind Down Cash Proceeds to the Holders of RBL Secured Claims in accordance with Article 4.2.3 herein.

(c) Final Distribution at Closing of the Cases. On or prior to the closing of the Chapter 11 Cases, the Plan Administrator shall Distribute all remaining Wind Down Cash Proceeds to the Holders of RBL Secured Claims in accordance with Article 4.2.3 herein.

SC1:5188533.4

7.2.3     Subsequent Distributions of Holders of Allowed General Unsecured Claims.  The Litigation Trustee may commence Distribution of subsequently available portions of the Unsecured Claim Pool to Holders of Allowed General Unsecured Claims, other than Holders of the RBL Deficiency Claim, and Litigation Trust Distributable Cash to Holders of Allowed General Unsecured Claims and Holders of RBL Deficiency Claims at any time after the Effective Date in its sole discretion.  If, the Litigation Trustee directs the Distribution Agent to Distribute Cash to Holders of Allowed General Unsecured Claims from either (a) the Unsecured Claim Pool Reserve, including because a Claim for which Distributions have been held has been finally disallowed, resolved for a lesser amount than had been reserved with respect to such claim, or determined to be a General Unsecured Claim or Other Secured Claim, as applicable, or (b) the Litigation Trust Distributable Cash, the Distribution Agent shall make an additional Distribution to each Holder of an Allowed General Unsecured Claim, other than a Holder of an RBL Deficiency Claim, in accordance with Article 4.2.4 herein.

7.2.4     Distributions to Holders of Claims Allowed After the Effective Date. Except with respect to Distributions to Holders of Allowed General Unsecured Claims, the Distribution Agent shall make Distributions to Holders of Claims Allowed after the Effective Date in accordance with the applicable provision of Article 4 herein on the first Subsequent Distribution Date after such Claim is Allowed.  Unless the Plan Administrator or the Litigation Trustee, as applicable, otherwise agrees, no partial Distribution shall be made with respect to such Claim until all disputes in connection with such Claim have been resolved by Final Order of the Bankruptcy Court.

7.3.     Record Date and Delivery of Distributions

7.3.1     Record Date for Distributions.  On the Distributions Record Date, the Claims Register shall be closed and the Distribution Agent shall be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Distributions Record Date.  If a Claim is transferred 20 or fewer days before the Distributions Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical, and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

7.3.2     Delivery of Distributions in General.  Except as otherwise provided herein, the Distribution Agent, at the direction of the Plan Administrator or the Litigation Trustee, as applicable, shall make all Distributions required under the Plan to Holders of Allowed Claims.  Except as otherwise provided herein, and notwithstanding any authority to the contrary, Distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distributions Record Date by the Distribution Agent, as appropriate: (a) to the signatory set forth on any of the Proofs of Claim filed by such Holder or other representative identified therein (or at the last known address of such Holder if no Proof of Claim is filed or if the Debtors, the Plan Administrator, the Litigation Trustee or the Distribution Agent have been notified in writing of a change of address); (b) at the address set forth in any written notice of change of address delivered to the Notice and Claims Agent or (c) at the address reflected in the Schedules if no Proof of Claim has been filed and the Notice and

- 32 -

Claims Agent has not received a written notice of a change of address. The Debtors, the Plan Administrator, the Litigation Trustee, the Distribution Agent and the Notice and Claims Agent shall not incur any liability whatsoever on account of the delivery of any Distributions under the Plan.

      7.3.3     <u>Delivery of Distributions to DIP Claims and RBL Secured Claims</u>. To the extent the DIP Claims have not been paid or otherwise satisfied prior to the Effective Date, the DIP Agent shall be deemed to be the holder of all DIP Claims and the RBL Agent shall be deemed to be the holder of all RBL Secured Claims. All Distributions on account of such claims shall be made to or on behalf of the DIP Agent or the RBL Agent, as applicable. The DIP Agent or the RBL Agent, as applicable, shall hold or direct such Distributions for the benefit of the holders of such claims. As soon as practicable following compliance with the other requirements set forth in this Article 7, the DIP Agent or the RBL Agent, as applicable, shall arrange to deliver such Distributions to, or on behalf of, the holders of such claims. Any such Distributions that are Unclaimed Distributions for a period of six months shall be deemed unclaimed property and shall vest in the Wind Down Estates in accordance with Article 7.6 herein. The Agents shall promptly report to the Plan Administrator or Distribution Agent, as applicable, any Unclaimed Distributions six months after receipt of any Distribution. For the avoidance of doubt, the Agents shall only be required to act to make Distributions in accordance with the terms of the Plan. The Plan Administrator's obligations to make Distributions to the Holders of the DIP Claims, if the DIP Claims have not been paid or otherwise satisfied prior to the Effective Date, and RBL Secured Claims in accordance with this Plan shall be deemed satisfied upon delivery of Distributions to the DIP Agent or RBL Agent, as applicable, or if the consent of an Agent is given, to the Distribution Agent on behalf of that Agent, as provided for herein.

      7.3.4     <u>Foreign Currency Exchange Rate</u>. Except as otherwise provided herein, an order of the Bankruptcy Court or as agreed to by the Holder and the Debtors or the Plan Administrator, as applicable, any Claim asserted in a currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollars at the Exchange Rate.

    7.4.     <u>Distribution Agents</u>

      The Plan Administrator and the Litigation Trustee, as applicable, shall have the authority, each in its sole discretion, to enter into agreements with one or more Distribution Agents to facilitate the Distributions required hereunder. To the extent the Plan Administrator or the Litigation Trustee determines to utilize a Distribution Agent to facilitate the Distributions, such Distribution Agent would first be required to: (a) affirm its obligation to facilitate the prompt distribution of any documents; (b) affirm its obligation to facilitate the prompt distribution of any recoveries or Distributions required under the Plan and (c) waive any right or ability to set off, deduct from or assert any Lien or other encumbrance against the Distributions required under the Plan to be distributed by such Distribution Agent.

      The Plan Administrator or the Litigation Trustee, as applicable, shall pay to the Distribution Agents all of their reasonable and documented fees and expenses without the need for any approvals, authorizations, actions or consents of the Bankruptcy Court or otherwise. The

- 33 -

Distribution Agents shall submit detailed invoices to the Plan Administrator or the Litigation Trustee, as applicable, for all fees and expenses for which the Distribution Agents seek reimbursement, and the Plan Administrator or the Litigation Trustee, as applicable, shall pay those amounts that it, in its sole discretion, deems reasonable, and shall object in writing to those fees and expenses, if any, that the Plan Administrator or the Litigation Trustee, as applicable, deems to be unreasonable.  In the event that the Plan Administrator or the Litigation Trustee, as applicable, objects to all or any portion of the amounts requested to be reimbursed in a Distribution Agent's invoice, the Plan Administrator or the Litigation Trustee, as applicable, and such Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses.  In the event that the Plan Administrator or the Litigation Trustee, as applicable, and a Distribution Agent are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

7.5.    Fractional and *De Minimis* Distributions

Notwithstanding anything herein to the contrary, the Plan Administrator or the Litigation Trustee, as applicable, and the Distribution Agent shall not be required to make Distributions or payments of less than $50.00, which amount shall be set forth in the Plan Supplement (whether in Cash or otherwise).

7.6.    Undeliverable Distributions

In the event that any Distribution to any Holder is returned as undeliverable, or no address for such Holder is found in the Debtors' records, no further Distribution to such Holder shall be made unless and until the Plan Administrator, the Litigation Trustee or the Distribution Agent is notified in writing of the then-current address of such Holder, at which time such Distribution shall be made to such Holder not less than 30 days thereafter.  Undeliverable Distributions shall remain in the possession of the Plan Administrator, the Litigation Trustee or the Distribution Agent until such time as such Distribution becomes deliverable or such Distribution reverts to the Wind Down Estates or is canceled pursuant to Article 7.10 herein, and shall not be supplemented with any interest, dividends or other accruals of any kind.

7.7.    Reversion

Any Distribution under the Plan, including Distributions made by the Agents in accordance with Article 7.1 herein, that is an Unclaimed Distribution for a period of six months thereafter, shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code, and such Unclaimed Distribution shall revest in the (i) Wind Down Estates as Plan Assets and all Claims other than General Unsecured Claims but including RBL Deficiency Claims and (ii) Litigation Trust with respect to Unclaimed Distributions on account of General Unsecured Claims other than RBL Deficiency Claims.  Upon such revesting, the Claim of any Holder or its successors and assigns with respect to such property shall be canceled, discharged and forever barred, notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary.  The provisions of the Plan regarding undeliverable Distributions and Unclaimed Distributions shall apply with equal force to Distributions that are issued by the Plan Administrator, the Litigation Trustee or the Distribution Agent made pursuant to any indenture

- 34 -

or Certificate, notwithstanding any provision in such indenture or Certificate to the contrary and notwithstanding any otherwise applicable federal or state escheat, abandoned or unclaimed property law.

Nothing contained herein shall require the Plan Administrator or the Litigation Trustee to attempt to locate any Holder of an Allowed Claim whose Distribution is declared an undeliverable or Unclaimed Distribution.

7.8. <u>Surrender of Canceled Instruments or Securities</u>

Except as otherwise provided in the Plan, on the Effective Date, or as soon as reasonably practicable thereafter, each holder of a Certificate shall be deemed to have surrendered such Certificate to the Distribution Agent. Subject to the foregoing sentence, regardless of any actual surrender of a Certificate, the deemed surrender shall have the same effect as if its Holder had actually surrendered such Certificate (including the discharge of such Holder's Claim or Equity Interest pursuant to the Plan), and such Holder shall be deemed to have relinquished all rights, Claims and Equity Interests with respect to such Certificate. Notwithstanding the foregoing paragraph, this Article 7.8 shall not apply to any Claims reinstated pursuant to the terms of the Plan.

7.9. <u>Compliance with Tax Requirements and Allocations to Principal and Interest</u>

In connection with the Plan, to the extent applicable, the Debtors, the Plan Administrator, the Litigation Trustee and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any tax law, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtors, the Plan Administrator, the Litigation Trustee and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including withholding in kind, liquidating a portion of the Distributions to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions or establishing any other mechanisms they believe are reasonable and appropriate. For purposes of the Plan, any withheld amount (or property) shall be treated as if paid to the applicable claimant. The Plan Administrator and the Litigation Trustee each reserves the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances. Distributions in full or partial satisfaction of Allowed Claims shall be allocated first to trust fund-type taxes, then to other taxes and then to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that has accrued on such Claims.

7.10. <u>Setoffs</u>

Except as otherwise provided herein, a Final Order of the Bankruptcy Court, or as agreed to by the Holder and the Debtors, the Plan Administrator or the Litigation Trustee, as applicable, each Debtor or the Plan Administrator, as applicable, pursuant to the Bankruptcy Code (including section 553 thereof), applicable non-bankruptcy law, or such terms as may be

- 35 -

agreed to by the Holder and the Debtors may, without any further notice to, or action, order or approval of the Bankruptcy Court, set off against any Allowed Claim and the Distributions to be made on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any claims, rights and Causes of Action of any nature that such Debtor or the Plan Administrator, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided* that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor or the Plan Administrator of any such Claims, rights and Causes of Action that such Debtor or the Plan Administrator may possess against such Holder; *provided further* that any setoff against a Holder of an Allowed General Unsecured Claim must be with the consent of the Litigation Trustee, such consent not to be unreasonably withheld.  In no event shall any Holder of a Claim be entitled to set off any Claim against any Claim, right, or Cause of Action of a Debtor or the Plan Administrator, as applicable, unless such Holder has filed a Proof of Claim in these Chapter 11 Cases by the applicable Claims Bar Date preserving such setoff and a Final Order of the Bankruptcy Court has been entered, authorizing and approving such setoff.

7.11.    No Postpetition Interest on Claims

Unless otherwise specifically provided for in the Plan or the Confirmation Order, required by applicable law, or agreed to by the Plan Administrator no Holder of a Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date with respect to such Claim, notwithstanding any dispute or other delay with respect to any Distribution.

7.12.    No Payment Over the Full Amount

In no event shall a Holder of a Claim receive more than the full payment of such Claim.  To the extent any Holder has received payment in full with respect to a Claim, such Claim shall be disallowed and expunged without an objection to such Claim having been filed and without any further notice to or action, order or approval of the Bankruptcy Court.

8. **C**LAIMS **A**DMINISTRATION **P**ROCEDURES

   8.1. Objections to Claims

   Any objections to Claims (other than Administrative Claims) shall be filed on or before the Claims Objection Bar Date. The Plan Administrator shall have standing to object to Claims; *provided* that any objections to General Unsecured Claims shall be in consultation with, and requires the consent of, the Litigation Trustee, such consent not to be unreasonably withheld.

   8.2. Estimation of Claims

   Before or after the Effective Date, the Debtors and the Plan Administrator, as applicable, may, within their reasonable discretion, at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not yet been the subject of a Final Order, shall be deemed to be estimated at zero dollars unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including, but not limited to, for purposes of Distributions).

   Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court or under the Plan. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation of such Claim unless the Holder of such Claim has filed a motion with the Bankruptcy Court requesting the right to seek such reconsideration on or before 20 calendar days after the date such Claim is estimated by the Bankruptcy Court.

   8.3. Expungement and Disallowance of Claims

      8.3.1 Paid, Satisfied, Amended, Duplicated or Superseded Claims. Any Claim that has been paid, satisfied, amended, duplicated (by virtue of the substantive consolidation provided for under this Plan, or otherwise) or superseded, may be adjusted or expunged on the Claims Register by the Plan Administrator on or after 14 calendar days after the date on which notice of such adjustment or expungement has been filed with the Bankruptcy Court, without an objection to such Claim having to be filed, and without any further action, order or approval of the Bankruptcy Court.

      8.3.2 Claims by Persons From Which Property Is Recoverable. Unless otherwise agreed to by the Debtors or Plan Administrator, as applicable, or ordered by the

- 37 -

Bankruptcy Court, any Claims held by any Person or Entity from which property is recoverable under section 542, 543, 550 or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and any Holder of such Claim may not receive any Distributions on account of such Claim until such time as such Cause of Action against that Person or Entity has been resolved.

8.4.    Amendments to Proofs of Claim

On or after the Effective Date, a Proof of Claim may not be amended (other than solely to update or correct the name or address of the Holder of such Claim) without the prior authorization of the Bankruptcy Court or the Plan Administrator and, with respect to any General Unsecured Claim, the Litigation Trustee, and any such amended Proof of Claim filed without such prior authorization shall be deemed disallowed in full and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

8.5.    No Distributions Pending Allowance

If an objection to the amount, validity, priority or classification of a Claim or a portion thereof is filed or is intended to be filed as set forth in Article 10 herein or a Claim otherwise remains a Disputed Claim, except as otherwise provided in a Final Order of the Bankruptcy Court, no payment or Distribution provided under the Plan shall be made on account of such Claim or portion thereof, as applicable, unless and until such Disputed Claim becomes an Allowed Claim.

8.6.    Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes a finally Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the applicable provisions of the Plan.

8.7.    Administration Responsibilities

Except as otherwise specifically provided in the Plan, after the Effective Date the Plan Administrator shall have the sole authority to (a) file, withdraw or litigate to judgment objections to Claims or M&M Lien Proceedings, (b) settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court, (c) settle or otherwise resolve M&M Lien Proceedings and (d) administer and adjust, or cause to be administered and adjusted, the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court. Nothing in this Article 8.7 shall limit the ability under the Bankruptcy Code of any party-in-interest to object to any Claim prior to the Claims Objection Bar Date, or to appear in the M&M Lien Proceedings, unless otherwise ordered by the Bankruptcy Court; *provided* that in each case, any actions with respect to General Unsecured Claims shall be with the consent of the Litigation Trustee, such consent not to be unreasonably withheld.

8.8. <u>Unsecured Claim Pool Reserve</u>

At the time of any Distributions to Holders of Allowed General Unsecured Claims by the Litigation Trustee, the Litigation Trustee shall set aside in the Unsecured Claim Pool Reserve the amount of Cash that the Litigation Trustee (with the consent of the Plan Administrator, such consent not to be unreasonably withheld) determines would likely have been distributed (a) to the Holders of all M&M Lien Claims as if such Claims had been determined to be Junior M&M Lien Claims and (b) to the Holders of all Disputed Claims that are General Unsecured Claims or M&M Lien Claims as if such Disputed Claims had been Allowed on the Effective Date, with the amount of such Claims to be determined, solely for the purposes of establishing reserves and for maximum Distribution purposes, to be the lesser of (i) the asserted amount of the Claim filed with the Bankruptcy Court as set forth in the non-duplicative Proof of Claim, or (if no proof of such Claim was filed) listed by the Debtors in the Schedules, (ii) the amount, if any, estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code or ordered by other order of the Bankruptcy Court or (iii) the amount otherwise agreed to by the Plan Administrator, with the consent of the Litigation Trustee, such consent not to be unreasonably withheld, and the Holder of such Claim for Distribution purposes. For the avoidance of doubt, the Litigation Trustee shall only be required to reserve once for M&M Lien Claims that are also Disputed Claims.

The Distribution Agent may, at the direction of the Litigation Trustee (with the consent of the Plan Administrator, such consent not to be unreasonably withheld), adjust the Unsecured Claim Pool Reserve to reflect all earnings thereon (net of any expenses relating thereto, such expenses including any taxes imposed thereon or otherwise payable by the reserve), to be distributed on the Distribution Dates, as required by this Plan. The Distribution Agent shall hold in the Unsecured Claim Pool Reserve all dividends, payments and other distributions made on account of, as well as any obligations arising from, the property held in the Unsecured Claim Pool Reserve, to the extent that such property continues to be so held at the time such distributions are made or such obligations arise. The taxes imposed on the Unsecured Claim Pool Reserve (if any) shall be paid by the Distribution Agent from the property held in the Unsecured Claim Pool Reserve, and the Plan Administrator and the Litigation Trustee shall have no liability for such taxes.

To the extent after the Effective Date that a Disputed Claim or an M&M Lien Claim becomes an Allowed General Unsecured Claim, the Distribution Agent will, out of the Unsecured Claim Pool Reserve, distribute to the Holder thereof the Distribution, if any, to which such Holder is entitled in accordance with Article 4.2.4(b) herein. Subject to this Plan, all Distributions made under this paragraph on account of Allowed General Unsecured Claims will be made together with any dividends, payments or other Distributions made on account of, as well as any obligations arising from, the distributed property, then held in the Unsecured Claim Pool Reserve as if such Allowed General Unsecured Claim had been an Allowed Claim on the dates Distributions were previously made to Allowed Claim Holders included in Class 4 under this Plan.

8.9.   <u>M&M Lien Reserve</u>

The Debtors have funded the M&M Lien Reserve with the M&M Lien Reserve Amount.  The Distribution Agent shall hold in the M&M Lien Reserve all dividends, payments and other distributions made on account of, as well as any obligations arising from, the property held in the M&M Lien Reserve, to the extent that such property continues to be so held at the time such distributions are made or such obligations arise.  The taxes imposed on the M&M Lien Reserve (if any) shall be paid by the Distribution Agent from Plan Assets.  To the extent after the Effective Date that an M&M Lien Claim becomes an Allowed Other Secured Claim, the Distribution Agent will, out of the M&M Lien Reserve, distribute to the Holder thereof the Distribution, if any, to which such Holder is entitled in accordance with Article 4.2.2(b) herein. To the extent after the Effective Date a court of competent jurisdiction determines that a Holder of an M&M Lien Claim is entitled to recover any pro rata amounts allocable to an applicable well as trust funds of such applicable well securing such M&M Lien Claim pursuant to 42 O.S. § 144.2, such pro rata amounts shall be distributed to such Holder out of the M&M Lien Reserve. To the extent after the Effective Date that an M&M Lien Claim becomes an Allowed General Unsecured Claim, the Holder of such Claim will receive a Distribution, if any, in accordance with Article 4.2.4(b) and any amount reserved in the M&M Lien Reserve for such M&M Lien Claim shall be released from the M&M Lien Reserve and constitute M&M Lien Reserve Residual.  If the Cash amount held in the M&M Lien Reserve is greater than the M&M Lien Reserve Amount, the Plan Administrator shall direct the Distribution Agent to distribute such M&M Lien Reserve Residual to the Holders of RBL Secured Claims in accordance with Article 4.2.3 herein.

SC1:5188533.4

9. **CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN**

9.1. Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of this Article 9.

(a) Confirmation Order. The Confirmation Order shall have been entered in a form and substance reasonably satisfactory to the Debtors, and there shall not be a stay or injunction in effect with respect thereto.

(b) Professional Fee Escrow Account. The Debtors shall have established and funded the Professional Fee Escrow Account in accordance with Article 3.4.2 herein.

(c) Litigation Trust. The Debtors, the RBL Agent and the Committee shall establish the Litigation Trust, and the Litigation Trust Funding Amount shall be funded, as set forth herein.

(d) Necessary Documents. All actions, documents, certificates and agreements necessary to implement the Plan shall have been effected or executed and delivered, as applicable.

(e) Necessary Authorizations. All authorizations, consents, regulatory approvals, rulings or documents that are necessary to implement and effectuate the Plan as of the Effective Date shall have been received, waived or otherwise resolved.

9.2. Waiver of Conditions

The Debtors, with the consent of the RBL Agent and in consultation with the Committee, or by order of the Bankruptcy Court, may waive conditions to the occurrence of the Effective Date set forth in this Article 9 at any time; *provided*, *however*, that the Debtors may not waive the condition set forth in Articles 9.1(a), 9.1(b) and 9.1(c) herein.

9.3. Simultaneous Transactions

Except as otherwise expressly set forth in the Plan, the Confirmation Order or a written agreement by Holdings, each action to be taken on the Effective Date shall be deemed to occur simultaneously as part of a single transaction.

9.4. Effect of Non-Occurrence of the Effective Date

If the Effective Date does not occur by the 60th day following the Confirmation Date or such later date as the Debtors determine, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors, prejudice in any manner

- 41 -

the rights of the Debtors or any other Person, or constitute an admission, acknowledgment, offer or undertaking by the Debtors or any Person.

## 10. SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

### 10.1. Compromise and Settlement

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim, or any Distribution to be made on account of such Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors and their Estates and is fair, equitable and reasonable.

### 10.2. Subordinated Claims

The allowance, classification and treatment of all Allowed Claims and Equity Interests and the respective Distributions and treatments under the Plan take into account, conform to and satisfy the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto; however, the Debtors reserve the right to reclassify or modify the treatment of any Allowed Claim or Equity Interest in accordance with any contractual, legal or equitable subordination relating thereto, unless otherwise provided in a settlement agreement concerning such Allowed Claim or Equity Interest.

### 10.3. Discharge of Claims and Termination of Equity Interests

Pursuant to and to the fullest extent permitted by the Bankruptcy Code, except as otherwise specifically provided in the Plan or the Confirmation Order, the treatment of Claims and Equity Interests under the Plan shall be in full and final satisfaction, settlement, release, discharge, and termination, as of the Effective Date, of all Claims of any nature whatsoever, whether known or unknown, against, and Equity Interests in, the Debtors, any property of the Estates, the Plan Administrator or any property of the Wind Down Estates, including all Claims of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim or Equity Interest based upon such Claim, debt, right or Equity Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Equity Interest based upon such Claim, liability, obligation or Equity Interest is Allowed pursuant to section 502 of the Bankruptcy Code or (c) the Holder of such a Claim, liability, obligation or Equity Interest has accepted the Plan. Except as otherwise provided herein, any default by the Debtors or their Affiliates with respect to any Claim that existed immediately prior to or on account of the filing of these Chapter 11 Cases shall be deemed cured on the Effective Date.

### 10.4. Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the

Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Wind Down Estates and their successors and assigns.

10.5. **Debtor Release**

**Except as otherwise specifically provided in the Plan with respect to Preserved Potential Claims, for good and valuable consideration, including the service of the Released Parties to facilitate the administration of the Chapter 11 Cases and the implementation of the orderly liquidation contemplated by the Plan, on and after the Effective Date, the Released Parties are hereby released and discharged by the Debtors, the Plan Administrator and the Estates, including any successor to the Debtors or any Estate representative, from all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for indemnification, tort, contract, violations of federal or state securities laws or otherwise, including, those that any of the Debtors, the Plan Administrator or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or any other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the conduct of the businesses of the Debtors, these Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any Security of the Debtors, the release or discharge of any mortgage, lien or security interest, the distribution of proceeds, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the administration of Claims and Equity Interests prior to or during these Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Plan Supplement, the Disclosure Statement or, in each case, related agreements, instruments or other documents, any action or omission with respect to Intercompany Claims, any action or omission as an officer, director, agent, representative, fiduciary, controlling person, member, manager, affiliate or responsible party, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan, other than claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission is determined by a Final Order to have constituted gross negligence, willful misconduct, fraud, or a criminal act; *provided*, *however*, the release under this Article 10.5 shall not apply to any Preserved Potential Claims to the extent such Preserved Potential Claims are brought by and for the benefit of the Litigation Trust with the approval of the Litigation Trustee.**

10.6. **Voluntary Release by Holders of Claims and Equity Interests**

**For good and valuable consideration, including the service of the Released Parties to facilitate the administration of the Chapter 11 Cases, the implementation of the orderly liquidation contemplated by the Plan and the release of mortgages, liens and security interests on property of the Estates, the distribution of proceeds, on and after the**

- 44 -

Effective Date, to the fullest extent permitted by applicable law, the Releasing Parties (regardless of whether a Releasing Party is a Released Party) shall be deemed to conclusively, absolutely, unconditionally, irrevocably and forever release, waive and discharge the Released Parties of any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for indemnification, tort, contract, violations of federal or state securities laws or otherwise, including, those that any of the Debtors, the Plan Administrator or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or any other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the conduct of the businesses of the Debtors, these Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the administration of Claims and Equity Interests prior to or during these Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Plan Supplement, the Disclosure Statement or, in each case, related agreements, instruments or other documents, any action or omission with respect to Intercompany Claims, any action or omission as an officer, director, agent, representative, fiduciary, controlling person, member, manager, affiliate or responsible party, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan, other than claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission is determined by a Final Order to have constituted gross negligence, willful misconduct, fraud, or a criminal act.  For the avoidance of doubt, nothing in this Article 10.6 will cause the release of Preserved Potential Claims that are otherwise transferred to, and may be prosecuted by, the Litigation Trust pursuant to the terms of this Plan.

10.7.  **Scope of Releases**

Each Person providing releases under the Plan, including the Debtors, the Plan Administrator, the Estates and the Releasing Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person expressly waives any and all rights that it may have under any statute or common law principle which would limit the effect of such releases to those claims or causes of action actually known or suspected to exist at the time of execution of such release.

10.8.  **Exculpation**

Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtors and their directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of this Plan in good faith and in

- 45 -

compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

The Exculpated Parties shall neither have nor incur any liability arising on or after April 30, 2019 to any Entity for any act or omission in connection with these Chapter 11 Cases, including (a) the operation of the Debtors' businesses during the pendency of these Chapter 11 Cases; (b) the administration of Claims and Equity Interests during these Chapter 11 Cases; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Disclosure Statement and the Plan, the Plan Supplement, and any related contract, instrument, release or other agreement or document created or entered into in connection therewith (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan); (d) the offer and issuance of any securities under or in connection with the Plan or (e) the administration and adjudication of Claims, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

10.9. <u>Injunction</u>

Except as otherwise expressly provided in the Plan or Confirmation Order with respect to Preserved Potential Claims, the satisfaction, release and discharge pursuant to this Article 10 shall also act as a permanent injunction against any Person who has held, holds or may hold Claims, Equity Interests or Causes of Action against commencing or continuing any action, employment of process or act to collect, enforce, offset, recoup or recover any Claim, Equity Interest or Cause of Action satisfied, released, or discharged under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, including to the extent provided for or authorized by sections 524 and 1141 thereof.

10.10. <u>Limitations on Exculpations and Releases</u>

Notwithstanding anything to the contrary herein, none of the releases or exculpations set forth herein shall operate to waive or release any obligation or Causes of Action of any Person or Entity: (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement or related documents, including the Preserved Potential Claims.

10.11. <u>Limitations on Recovery with Respect to Prepetition D&O Actions</u>

Any recovery by or on behalf of the Litigation Trust (and the beneficiaries thereof) on account of any Prepetition D&O Actions, including in each case by way of settlement or judgment, shall be limited to the Debtors' available D&O Policies' combined limits, after payment from such D&O Policies of the D&O Insurance Coverage. No party, including the Litigation Trust, shall execute, garnish or otherwise attempt to collect on any

settlement of or judgment in the Prepetition D&O Actions upon any assets of the Debtors' current or former directors and officers on account of any Prepetition D&O Action except for actions by the Litigation Trust to the extent necessary to trigger the D&O Insurance Coverage.  The restrictions and limitations set forth in the preceding three sentences shall be defined as the "**D&O Limitations**."  In the event the D&O Insurance Coverage for any settlement or judgment in the Litigation Trust's favor is subject to denial as a result of the existence of any D&O Limitations, such D&O Limitations giving rise to the denial shall be null and void *ab initio* to the extent necessary to prevent the coverage denial.

10.12. **Reservation of Rights**

The releases and exculpations provided by Articles 10.5, 10.6 and 10.8 of the Plan, the limitations on such releases and exculpation with respect to Preserved Potential Claims and any other provisions of this Plan are without prejudice to the rights of any Released Party under Sections 8.1 and 15.4 and the other provisions of the WSTR LLC Agreement and any similar provisions of the constitutive documents of any Debtor.

SC1:5188533.4

## 11.    MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

### 11.1.   Modification of Plan

Subject to the limitations contained in the Plan: (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications with respect to the treatment of Class 3 or 4 to satisfy section 1129(b) of the Bankruptcy Code and (b) after the entry of the Confirmation Order, the Debtors or the Plan Administrator and the Litigation Trustee collectively, as applicable, may, upon order of the Bankruptcy Court, (i) amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or (ii) remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### 11.2.   Effect of Confirmation on Modification

Entry of a Confirmation Order shall mean that all modifications and amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code, and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

### 11.3.   Revocation of Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date and to file subsequent plans of reorganization or liquidation.  If the Debtors revoke or withdraw the Plan, or if the Confirmation Order is not entered or the Effective Date does not occur, then:  (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void and (c) nothing contained in the Plan shall:  (i) constitute a waiver or release of any claims by or Claims against, or any Equity Interests in, any Debtor or any other Entity; (ii) prejudice in any manner the rights of the Debtors or any other Entity or (iii) constitute an admission of any sort by the Debtors or any other Entity.

## 12. RETENTION OF JURISDICTION

### 12.1. Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain its existing exclusive jurisdiction over all matters arising in or out of, or related to, these Chapter 11 Cases or the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(a) Allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status, or amount of any Claim or Equity Interest, including the resolution of any request for payment of any General Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

(b) Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c) Resolve any matters related to: (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is a party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including any disputes regarding cure obligations; and (ii) any dispute regarding whether a contract or lease is, or was, executory or expired;

(d) Ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the Plan and adjudicate any and all disputes from, or relating to Distributions under the Plan;

(e) Adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and Causes of Action, and grant or deny any applications, involving a Debtor that may be pending before the Bankruptcy Court on the Effective Date;

(f) Adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(g) Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, Plan Supplement or the Disclosure Statement;

- 49 -

(h)    Enter and enforce any order for the sale of property pursuant to section 363, 1123, or 1146(a) of the Bankruptcy Code;

(i)    Adjudicate, decide or resolve any and all disputes as to the ownership of any Claim or Equity Interest;

(j)    Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with enforcement of the Plan;

(k)    Resolve any cases, controversies, suits, disputes or Causes of Action with respect to the existence, nature and scope of the releases, injunctions and other provisions contained in the Plan, and enter such orders as may be necessary or appropriate to implement and enforce such releases, injunctions and other provisions;

(l)    Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(m)    Determine any other matters that may arise in connection with or relate to the Plan, the Plan Supplement, the Plan Administration Agreement, the Litigation Trust Agreement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan, the Plan Supplement or the Disclosure Statement;

(n)    Enter an order or final decree concluding or closing these Chapter 11 Cases;

(o)    Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(p)    Hear and determine disputes, cases, controversies or Causes of Action arising in connection with the interpretation, implementation or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

(q)    Hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retirement benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(r)    Enforce all orders previously entered by the Bankruptcy Court and

(s)     Hear any other matter not inconsistent with the Bankruptcy Code.

SC1:5188533.4

13. **MISCELLANEOUS PROVISIONS**

13.1. Immediate Binding Effect

Notwithstanding Bankruptcy Rule 3020(e), 6004(g) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Plan Administrator, the Litigation Trustee and any and all Holders of Claims and Equity Interests (irrespective of whether Holders of such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

13.2. Additional Documents

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors, the Plan Administrator, the Litigation Trustee and all Holders of Claims or Equity Interests receiving Distributions pursuant to the Plan and all other parties-in-interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

13.3. Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (a) any Debtor with respect to the Holders of Claims or Equity Interests or other Entity or (b) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

13.4. Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

13.5. Term of Injunction or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in these Chapter 11 Cases pursuant to section 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

- 52 -

13.6.   Entire Agreement

On the Effective Date, the Plan and the Plan Supplement shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations with respect to this subject matter, all of which have become merged and integrated into the Plan.

13.7.   Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Copies of such exhibits and documents may be obtained upon written request to the Debtors' counsel at the address below or by downloading such exhibits and documents from the Bankruptcy Court's website at www.nysb.uscourts.gov or the website of the Debtors' notice and claims agent at www.kccllc.net/WhiteStar.

13.8.   Nonseverability of Plan Provisions Upon Confirmation

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors and (c) nonseverable and mutually dependent.

13.9.   Dissolution of Committee

After the Effective Date, the Committee's functions shall be restricted to and shall not be heard on any issue except:  (a) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code, (b) motions or litigation, including pending appeals, seeking enforcement of the provisions of the Plan or under the Confirmation Order; *provided* that with respect to pending appeals and related proceedings, the Committee shall continue to comply with sections 327, 328, 329, 330, 331 and 1103 of the Bankruptcy Code and the Professional Fee Order in seeking compensation for services rendered.  Upon the resolution of all matters set forth in (a)–(c) in the prior sentence, the Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases.

13.10.   Closing of Chapter 11 Cases

The Plan Administrator shall, promptly after the full administration of these Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close these Chapter 11 Cases.

13.11.   Conflicts

Except as set forth in the Plan, to the extent that any provisions of the Disclosure Statement, the Plan Supplement, or any order of the Bankruptcy Court (other than the Confirmation Order) referenced in the Plan (or any exhibits, appendices, supplements or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

13.12.   Further Assurances

The Debtors, the Plan Administrator, the Litigation Trustee, all Holders of Claims receiving Distributions hereunder, and all other parties-in-interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

13.13.   No Stay of Confirmation Order

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

13.14.   Waiver or Estoppel

Each Holder of a Claim or an Equity Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Equity Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement or papers filed with the Bankruptcy Court prior to the Confirmation Date.

13.15.   Post-Effective Date Service

After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities that have filed renewed requests for service.

13.16.   Notices

All notices, requests, pleadings and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually

- 54 -

delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(a)     If to the Debtors, to:

301 N.W. 63rd Street
Oklahoma City, OK 73116
Attn:  Jeffrey J. Zanotti

with copies to:

Sullivan & Cromwell LLP
125 Broad St.
New York, NY 10004
Attn:    Andrew G. Dietderich
         Brian D. Glueckstein
         Alexa J. Kranzley

(b)     If to the RBL Agent, to:

MUFG Union Bank, N.A.
500 North Akard Street, Suite 4200
Dallas, TX 75201
Attn:    David Helffrich

with copies to:

Winston & Strawn LLP
333 South Grand Ave., 38th Floor
Los Angeles, CA 90071
Attn:    Justin Rawlins

(c)     If to the Committee, to:

Morgan, Lewis & Brockius LLP
One Federal Street
Boston, MA 02110
Attn:    Andrew J. Gallo

and:

Morgan, Lewis & Brockius LLP
101 Park Ave.
New York, NY 10178
Attn:    Craig A. Wolfe

- 55 -

(d)      If to the U.S. Trustee, to:

215 Dean A. McGee Avenue
Suite 408
Oklahoma City, OK 73102
Attn:   Marjorie J. Creasey

SC1:5188533.4

Oklahoma City, Oklahoma
Dated: March 31, 2020

WHITE STAR PETROLEUM HOLDING, LLC, on behalf of itself and all other Debtors

By:   */s/ Jeffrey J. Zanotti*
      Name:  Jeffrey J. Zanotti
      Title:  Senior Vice President, General Counsel and Secretary

*/s/ John D. Dale*
John D. Dale, OBA No. 19787
GABLEGOTWALS
1100 ONEOK Plaza
100 West 5th Street
Tulsa, Oklahoma 74103-4217
Telephone: (918) 595-4800
Fax: (918) 595-4990
Email: jdale@gablelaw.com

-and-

*/s/ Craig M. Regens*
Craig M. Regens, OBA No. 22894
GABLEGOTWALS
One Leadership Square
211 North Robinson
Oklahoma City, Oklahoma  73102
Telephone:   (405) 568-3313
Facsimile:    (405) 235-2875
cregens@gablelaw.com

-and-

Andrew G. Dietderich, NY Bar 2850584
Brian D. Glueckstein, NY Bar 4227005
Alexa J. Kranzley, NY Bar 4707386
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:     (212) 558-4000
Facsimile:      (212) 558-3588
dietdericha@sullcrom.com
gluecksteinb@sullcrom.com
kranzleya@sullcrom.com

*Co-Counsel to the Debtors*

**<u>Exhibit B</u>**

**Notice of Confirmation**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

———————————————————— x
:
In re : Chapter 11
:
: Case No. 19-12521-JDL
WHITE STAR PETROLEUM HOLDINGS, LLC, :
*et al.*,[1] : Jointly Administered
:
Debtors. :
———————————————————— x

## NOTICE OF ENTRY OF ORDER CONFIRMING THE JOINT
## CHAPTER 11 PLAN OF LIQUIDATION OF WHITE STAR
## PETROLEUM HOLDINGS, LLC AND ITS DEBTOR AFFILIATES

      **PLEASE TAKE NOTICE** that on April [●], 2020, the Honorable Janice D. Loyd, United States Bankruptcy Judge for the United States Bankruptcy Court for the Western District of Oklahoma, entered the *Findings of Fact, Conclusions of Law and Order Confirming the Joint Chapter 11 Plan of Liquidation of White Star Petroleum Holdings, LLC and its Debtor Affiliates* [Doc. [●]] (the "Confirmation Order"). The Confirmation Order, among other things, confirmed the *Joint Chapter 11 Plan of Liquidation of White Star Petroleum Holdings, LLC and its Debtor Affiliates* [Doc. 1020, Ex. 1] (including the Plan Supplement and all other exhibits and schedules thereto, as may be amended, modified or supplemented from time to time in accordance with its terms and the terms hereof, the "Plan").[2]

      **PLEASE TAKE FURTHER NOTICE** that in accordance with Section 3.1 of the Plan, any Holder of an Administrative Claim (except as otherwise provided in the Plan) must file and serve a request for payment of such Administrative Claim on the Plan Administrator on or before 4:00 p.m. on the 35th day after the Effective Date. Any Holder of an Administrative Claim who is required to, but does not, file and serve a request for payment of such Administrative Claim pursuant to the procedures specified in the Confirmation Order on or prior to the Administrative Claim Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claim against the Plan Administrator or its property, and such Administrative Claim shall be

---

[1] The Debtors in these chapter 11 cases, and the last four digits of their U.S. taxpayer identification numbers are: White Star Petroleum Holdings, LLC (0575) ("WSTR Holdings"), White Star Petroleum, LLC (0977) ("WSTR"), White Star Petroleum II, LLC (4347) ("WSTR II"), White Star Petroleum Operating, LLC (5387) ("WSTR Operating") and WSP Finance Corporation (9152) ("WSP Finance" and together with WSTR Holdings, WSTR, WSTR II and WSTR Operating, the "Debtors"). The Debtors' corporate headquarters is located at 301 N.W. 63rd Street, Suite 600, Oklahoma City, OK 73116.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

deemed discharged as of the Effective Date.

> **PLEASE TAKE FURTHER NOTICE** that in accordance with Section 6.2 of the Plan, any Proof of Claim arising from or relating to the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan must be filed with the Notice and Claims Agent before 4:00 p.m. (Central Time) on the 35th day after the Effective Date.

> **PLEASE TAKE FURTHER NOTICE** that Article 10 of the Plan and the Confirmation order contain certain release, exculpation and injunction provisions that are binding on the Holders of Claims and Equity Interests as set forth in more detail in the Plan and Confirmation Order.

> **PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding on the Debtors, the Plan Administrator, the Litigation Trustee and any Holder of a Claim or an Equity Interest and such Holder's respective successors and assigns, regardless of whether the Claim or the Equity Interest of such Holder is Impaired under the Plan, and regardless of whether such Holder voted to accept the Plan.

> **PLEASE TAKE FURTHER NOTICE** that copies of the Confirmation Order and the Plan may be obtained from the Court's website, https://ecf.okwb.uscourts.gov, or obtained free of charge by accessing the website of the Debtors' claims and noticing agent, https://www.kccllc.net/WhiteStar.

Dated: April [●], 2020
Oklahoma City, Oklahoma

_____
John D. Dale, OBA No. 19787
GABLEGOTWALS
1100 ONEOK Plaza
100 West 5th Street
Tulsa, Oklahoma 74103-4217
Telephone: (918) 595-4800
Fax: (918) 595-4990
Email: jdale@gablelaw.com

-and-

_____
Craig M. Regens, OBA No. 22894
GABLEGOTWALS
One Leadership Square
211 North Robinson
Oklahoma City, Oklahoma  73102
Telephone:   (405) 568-3313
Facsimile:     (405) 235-2875
cregens@gablelaw.com

-and-

Andrew G. Dietderich, NY Bar 2850584
Brian D. Glueckstein, NY Bar 4227005
Alexa J. Kranzley, NY Bar 4707386
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:     (212) 558-4000
Facsimile:      (212) 558-3588
dietdericha@sullcrom.com
gluecksteinb@sullcrom.com
kranzleya@sullcrom.com

*Co-Counsel to the Debtors*