## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| WHITE STAR PETROLEUM HOLDINGS, LLC LITIGATION TRUST, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | |
| THE ENERGY & MINERALS GROUP LP, JOHN T. RAYMOND, ELLIOT J. CHAMBERS, SCOTT R. MUELLER, LOUIS JOHN SCHAUFELE IV, LAURA A. TYSON, EMG WHITE STAR HOLDINGS LLC, EMG LIGHTHOUSE HOLDINGS LLC, EMG FUND III MANAGEMENT LP, THE ENERGY & MINERALS GROUP FUND III LP, EMG FUND III GP LP, EMG FUND II MANAGEMENT LP, EMG FUND II GP LP, THE ENERGY & MINERALS GROUP FUND II LP, | ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 21-03060 |
| *Defendants.* | ) ) ) | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF WHITE STAR PETROLEUM HOLDINGS, LLC LITIGATION TRUST'S FIRST AMENDED COMPLAINT

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION......................................................................................................1

II.     BACKGROUND AND PROCEDURAL POSTURE.............................................5
        A.      The White Star Bankruptcy Proceeding and the Litigation Trust....................5
        B.      White Star Holdings............................................................................................6
        C.      The Lighthouse Transaction................................................................................7
        D.      Procedural History ..............................................................................................8

III.    LEGAL STANDARDS..............................................................................................9
        A.      Rule 12 Dismissal................................................................................................9
        B.      Rule 9(b) Requirements and Pleading Standards...............................................10

IV.     ARGUMENTS AND AUTHORITIES ..................................................................11
        A.      Delaware Law Governs This Dispute ...............................................................11
        B.      Plaintiff Trustee Has Not Stated a Claim for Breach of Contract.........................12
        C.      Plaintiff Trustee Has Not Stated a Claim for Tortious Interference.....................14
        D.      Plaintiff Trustee Has Not Stated a Claim for Breach of Fiduciary Duty ...............15
                1.      The White Star LLC Agreement eliminates traditional fiduciary
                        duties. ....................................................................................................15
                2.      Plaintiff Trustee fails to sufficiently allege the existence of any
                        fiduciary duties owed to WSP. ..............................................................17
                3.      Plaintiff Trustee fails to state a claim against the Non-EMG
                        Directors.................................................................................................18
                4.      Plaintiff Trustee's breach of fiduciary duty claim impermissibly
                        attempts to repackage its fatally flawed claim for breach of
                        contract...................................................................................................22
        E.      Plaintiff Trustee Has Not Stated a Claim for Aiding and Abetting Breach
                of Fiduciary Duty...............................................................................................23
        F.      Plaintiff Trustee Has Not Stated a Claim for Gross Negligence or Willful
                Misconduct.........................................................................................................24
        G.      Plaintiff Trustee Has Not Stated a Claim for Breach of the Implied
                Covenant of Good Faith and Fair Dealing .........................................................25
        H.      Plaintiff Trustee Has Failed to Plead Common Law Fraud with the
                Requisite Specificity .........................................................................................26
        I.      Delaware Law Does Not Recognize Statutory Fraud and Plaintiff Trustee
                Fails to Plead Statutory Fraud with the Requisite Specificity in any Event ..........28
        J.      Plaintiff Trustee Has Failed to State a Claim for Securities Fraud ......................29
                1.      Plaintiff Trustee's Claims Are Barred under the TSA. .............................29
                2.      Plaintiff Trustee Fails to Plead a Securities Fraud Claim under the
                        DSA.........................................................................................................30
                3.      Plaintiff Trustee Has Failed to Show Control Person or Aiding
                        Liability. .................................................................................................31
        K.      Plaintiff Trustee Has Failed to State a Claim for Negligent
                Misrepresentation...............................................................................................33
        L.      Plaintiff Trustee Has Failed to State a Claim for Civil Conspiracy ....................35

M.    Plaintiff Trustee Has Failed to Plead Alter Ego Liability as to the EMG Funds .................................................................................................................36

**V.    CONCLUSION AND PRAYER** ........................................................................37

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABC Arbitrage Plaintiffs Grp. v. Tchuruk*,
   291 F.3d 336 (5th Cir. 2002) ...................................................................10, 27, 29

*Air Prods. & Chems., Inc. v. Wiesemann*
   237 F. Supp. 3d 192 (D. Del. 2017).....................................................12, 13, 27, 28

*Alidina v. Internet.com Corp.*,
   No. 17235-NC, 2002 Del. Ch. LEXIS 156 (Del. Ch. Nov. 6, 2002) .......................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................9, 13, 14, 36

*Aspen Advisors LLC v. United Artists Theatre Co.*,
   861 A.2d 1251 (Del. 2004) ...............................................................................14, 15

*Beard* v. *Love*,
   173 P.3d 796 (Okla. Civ. App. 2007) .....................................................................18

*Belford v. Scott*,
   No. H-11-2329, 2012 WL 3069846 (S.D. Tex. July 27, 2012) .............................14

*Belmont v. MB Inv. Partners, Inc.*,
   708 F.3d 470, 484 (3d Cir. 2013)............................................................................32

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
   343 F.3d 719 (5th Cir.), *opinion modified on denial of reh'g*, 355 F.3d 356
   (5th Cir. 2003).....................................................................................................10, 34

*Bhole, Inc. v. Shore Invs., Inc.*,
   67 A.3d 444 (Del. 2013) ..........................................................................................15

*Brown v. Bilek*,
   401 F. App'x 889 (5th Cir. 2010) ...........................................................................10

*Wallace ex rel. Cencom Cable Income P'rs II, Inc., L.P. v. Wood*,
   752 A.2d 1175 (Del. Ch. 1999)..........................................................................36, 37

*Egleston ex rel. Chesapeake Energy Corp. v. McClendon*,
   318 P.3d 210 (Okla. Civ. App. 2013) .....................................................................19

*Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*,
   525 S.W.3d 671 (Tex. 2017)....................................................................................14

*In re Digital Island Sec. Litig.*,
    223 F. Supp. 2d 546 (D. Del. 2002)..................................................................32, 33

*Doberstein v. G-P Indus., Inc.*,
    No. CV 9995-VCP, 2015 WL 6606484 (Del. Ch. Oct. 30, 2015)..........................36

*Doe v. Humble Indep. Sch. Dist.*,
    No. 4:18-CV-4281, 2019 WL 3288385 (S.D. Tex. July 22, 2019) ........................10

*Eames v. Nationwide Mut. Ins. Co.*,
    412 F. Supp. 2d 431 (D. Del. 2006)......................................................................35

*Emerald Partners v. Berlin*,
    787 A.2d 85 (Del. 2001) ..................................................................................18, 19

*Energy Coal S.P.A. v. CITGO Petroleum Corp.*,
    836 F.3d 457 (5th Cir. 2016) ................................................................................12

*Exxon Corp. v. Emerald Oil & Gas Co., L.C.*,
    348 S.W.3d 194 (Tex. 2011)...........................................................................33, 34

*Fawaz v. Byers*,
    CIV.A. H-13-0897, 2014 WL 1671746 (S.D. Tex. Apr. 28, 2014)...................28, 29

*Fisk Ventures, LLC v. Segal*,
    No. Civ. A. 3017-CC, 2008 WL 1961156 (Del. Ch. May 7, 2008)..................24, 25

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
    565 F.3d 200 (5th Cir. 2009) ................................................................................10

*Fortis Advisors LLC v. Dialog Semiconductor PLC*,
    No. CV 9522-CB, 2015 WL 401371 (Del. Ch. Jan. 30, 2015)..........................25, 34

*Gibbons v. Whalen*,
    No. Civ. A. S09A-09-003, 2010 WL 8250809 (Del. Super. Ct. Mar. 22, 2010)....................13

*Great Lakes Chem. Corp. v, Monsanto Co.*,
    96 F. Supp. 2d 376 (D. Del. 2000)........................................................................30

*Grosser v. Red Mango FC, LLC*,
    No. Civ. A. 3:12-CV-2691-N, 2013 WL 12134086 (N.D. Tex. Apr. 25, 2013) ....................29

*Hamilton Partners, L.P. v. Highland Capital Management, L.P.*,
    No. CIV.A. 6547-VCN, 2014 WL 1813340 (Del. Ch. May 7, 2014) ....................21

*Hargrave v. Canadian Valley Elec. Co-op., Inc.*,
    792 P.2d 50 (Okla. 1990).......................................................................................19

*Heller v. Kiernan*,
No. Civ. A. 1484-K, 2002 WL 385545 (Del. Ch. Feb. 27, 2002), *aff'd*, 806
A.2d 164 (Del. 2002) ...................................................................................................16, 17

*Higher Educ. Mgmt. Grp., Inc. v. Mathews*,
No. 9110-VCP, 2014 WL 5573325 (Del. Ch. Nov. 3, 2014) ...................................................23

*Hubbard v. Hibbard Brown & Co.*,
633 A.2d 345 (Del. 1993) .............................................................................................30, 31

*Kahn v. Icahn*,
No. CIV.A. 15916, 1998 WL 832629 (Del. Ch. Nov. 12, 1998), *aff'd*, 746
A.2d 276 (Del. 2000) ..........................................................................................................22

*Kelly v. Blum*,
No. Civ. A. 4516-VCP, 2010 WL 629850 (Del. Ch. Feb. 24, 2010).......................................16

*Klein v. Wasserman*,
No. CV 2017-0643-KSJM, 2019 WL 2296027 (Del. Ch. May 29, 2019) ..............................24

*Krim v. ProNet, Inc.*,
744 A.2d 523 (Del. Ch. 1999)..........................................................................................19, 20

*Kuroda v. SPJS Holdings, L.L.C.*,
971 A.2d 872 (Del. Ch. 2009)....................................................................................25, 26, 35

*LLDVF, L.P. v. Dinicola*,
No. CIV.A. 09-1280 JLL, 2010 WL 3210613 (D.N.J. Aug. 12, 2010) ...................................32

*Lonergan v. EPE Holdings, LLC*,
5 A.3d 1008 (Del. Ch. 2010)...............................................................................................25

*Malpiede v. Townson*,
780 A.2d 1075 (Del. 2001) ...................................................................................................24

*McMahon v. New Castle Assocs.*,
532 A.2d 601 (Del. Ch. 1987)...............................................................................................37

*Mellon Serv. Co. v. Touche Ross & Co.*,
17 S.W.3d 432 (Tex. App.—Houston [1st Dist.] 2000, no pet.) .................................14, 24, 35

*MHS Cap. LLC v. Goggin*,
No. CV 2017-0449-SG, 2018 WL 2149718 (Del. Ch. May 10, 2018)..............................22, 23

*MKE Holdings Ltd. v. Schwartz*,
No. CV 2018-0729-SG, 2019 WL 4723816 (Del. Ch. Sept. 26, 2019)...................................16

*Nemec v. Shrader*,
991 A.2d 1120 (Del. 2010) ......................................................................22, 25, 26

*Newby v. Enron Corp. (In re Enron Corp. Secs., Derivative & ERISA Litig.)*,
761 F. Supp. 2d 504 (S.D. Tex. 2011) .................................................................30

*In re Novell, Inc. S'holder Litig.*,
No. CIV.A. 6032-VCN, 2013 WL 322560 (Del. Ch. Jan. 3, 2013) .......................22

*O'Connor v. Cory*,
No. 3:16-CV-1731-B, 2018 WL 5117197 (N.D. Tex. Oct. 19, 2018).......................26, 28, 30

*Off. Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*,
No. CIV.A. 20228-NC, 2004 WL 1949290 (Del. Ch. Aug. 24, 2004)....................21

*Orman v. Cullman*,
794 A.2d 5 (Del. Ch. 2002)..................................................................................20

*Outokumpu Eng'g Enterprises, Inc. v. Kvaerner EnviroPower, Inc.*,
685 A.2d 724 (Del. Super. Ct. 1996) ...................................................................36

*In re Ply Gem Indus., Inc. S'holders Litig.*,
No. CIV.A. 15779-NC, 2001 WL 755133 (Del. Ch. June 26, 2001) ...............19, 20

*Preferred Inv. Servs., Inc. v. T & H Bail Bonds, Inc.*,
No. CV 5886VCP, 2013 WL 3934992 (Del. Ch. July 24, 2013), *aff'd*, 108
A.3d 1225 (Del. 2015) ........................................................................................14

*RBATHTDSR, LLC v. Project 64 LLC*,
CV 19-1280-RGA, 2020 WL 2748027 (D. Del. May 27, 2020)......................34, 35

*Matter of Rehabilitation of Indem. Ins. Corp., RRG*,
No. 8601-VCL, 2014 WL 1154057 (Del. Ch. Mar. 21, 2014) ..............................31

*Rochez Bros., Inc. v. Rhoades*,
527 F.2d 880 (3d. Cir. 1975)...........................................................................32, 33

*Scott v. Moffit*,
No. CV N18C-11-015 CLS, 2019 WL 3976068 (Del. Super. Ct. Aug. 20,
2019) ...................................................................................................................24

*Solomon v. Armstrong*,
747 A.2d 1098 (Del. Ch. 1999), *aff'd*, 746 A.2d 277 (Del. 2000)..........................19

*Sullivan v. Leor Energy, LLC*,
600 F.3d 542 (5th Cir. 2010) ........................................................................6, 7, 10

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006)..................................................................32

*In re Synutra Int'l, Inc.*,
  No. 2017-0032-JTL, 2018 WL 705702 (Del. Ch. Feb. 2, 2018) ................................21, 24, 25

*In re Tower Air, Inc.*,
  416 F.3d 229 (3d Cir. 2005)..................................................................19

*Townsley v. Airxcel, Inc.*,
  No. 18-cv-1439 (KBF), 2018 WL 3946449 (S.D.N.Y. Aug. 15, 2018) ..................................30

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
  906 A.2d 168 (Del. Ch. 2006)................................................................17, 24

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................9

*Unimobil 84, Inc. v. Spurney*,
  797 F.2d 214 (5th Cir. 1986) ...............................................................10

*Warren* v. *Century Bankcorporation, Inc.*,
  741 P.2d 846 (Okla. 1987)...................................................................18

*Williams v. WMX Techs., Inc.*,
  112 F.3d 175 (5th Cir. 1997) ...............................................................10, 34

**Statutes**

6 Del. C. § 18-1101(c) .......................................................................16

6 Del. C. § 73-103(23) .......................................................................31

6 Del. C. § 73-201(2) ........................................................................30

6 Del. C. § 73-605(b).........................................................................32, 33

6 Del. C. § 2511(6) ..........................................................................28

6 Del. C. § 2513(a) ..........................................................................28

8 Del. C. § 102(b)(7).........................................................................16

10 Del. C. § 8119 ............................................................................24

15 U.S.C. § 78(a) ............................................................................32

28 U.S.C. § 1452(a) ..........................................................................8

Tex. Civ. Prac. & Rem. Code § 16.003(a) ................................................................24, 33, 34

Tex. Bus. & Comm. Code § 27.01(a)(1) .............................................................................28

**Rules**

Fed. R. Bankr. P. 7009 ...............................................................................................1, 10

Fed. R. Bankr. P. 7012 .................................................................................................1, 9

Fed. R. Civ. P. 9(b) ....................................................1, 4, 9, 10, 11, 26, 28, 33, 37

Fed. R. Civ. P. 12(b)(6) ...............................................................................1, 9, 11, 37

Local Bankruptcy Rule 9027-1 ......................................................................................8

Defendants The Energy & Minerals Group, LP ("EMG"); John T. Raymond; Louis John Schaufele IV; Laura A. Tyson; EMG White Star Holdings, LLC ("EMG White Star Holdings"); EMG Lighthouse Holdings, LLC ("EMG Lighthouse Holdings"); EMG Fund III Management, LP; The Energy & Minerals Group Fund III, LP; EMG Fund III GP, LP; EMG Fund II Management, LP; EMG Fund II GP, LP; The Energy & Minerals Group Fund II, L.P. (the "EMG Funds") (collectively with EMG, EMG White Star Holdings, and EMG Lighthouse Holdings, the "EMG Defendants"); Elliot J. Chambers and Scott R. Mueller (the "Non-EMG Directors") (collectively with the EMG Defendants, the "Defendants") file this Motion to Dismiss Plaintiff Trustee's First Amended Complaint [ECF No. 10] (the "Motion") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), and Federal Rules of Bankruptcy Procedure 7012(b) and 7009, as follows:

## I.   INTRODUCTION

Plaintiff Trustee's First Amended Complaint still fails to adequately address the defects with his initial pleading, and does nothing to alter the landscape surrounding this meritless action. Plaintiff Trustee hopes to tap into D&O insurance proceeds by challenging—without the requisite factual or legal support—the propriety of an over four-year-old transaction using a scattershot blast of legal theories.  Although he pleads fourteen causes of action—including breach of fiduciary duty, gross negligence and willful misconduct, breach of contract, tortious interference, and multiple types of fraud—Plaintiff Trustee's various theories all center around the allegation that White Star Petroleum Holdings, LLC ("White Star Holdings"), along with subsidiary White Star Petroleum, LLC ("WSP" and, together with Holdings, "White Star"), paid too much when it acquired Lighthouse Oil & Gas Holdings LP and Lighthouse Oil & Gas Holdings GP LLC ("Lighthouse"), purportedly in violation of White Star Holdings' LLC Agreement.  But Plaintiff

Trustee's creative efforts fall well short of pleading specific facts showing any impropriety associated with the Lighthouse transaction and the First Amended Complaint does not state a claim as a matter of law.

**_Breach of Fiduciary Duty (Count I), Aiding and Abetting Breach of Fiduciary Duty (Count II), and Control Person Liability under the Texas Securities Act and/or the Delaware Securities Act (Count XI)._**   Plaintiff Trustee pleads a breach of fiduciary duty claim against the managers, members, officers, and executives of White Star Holdings, a Delaware LLC.  As a threshold matter, White Star Holdings' LLC Agreement, which governs the relationship, ***expressly eliminates all fiduciary duties***.  With all fiduciary duties eliminated, Plaintiff Trustee cannot state a claim for breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, or control person liability, particularly where the conduct alleged squarely implicates the ***contractual duties*** set forth in the White Star Holdings LLC Agreement.  To avoid this, Plaintiff Trustee attempts to shoehorn fiduciary duties through the operative entity's subsidiary, White Star Petroleum.  Plaintiff Trustee does not sufficiently plead that any of the Defendants actually owed fiduciary duties to White Star Petroleum.  And even if those duties did exist, Plaintiff Trustee has not pleaded facts sufficient to overcome the applicable business judgment presumption.

**_Breach of the Implied Covenant of Good Faith and Fair Dealing (Count III)._**   Plaintiff Trustee pleads a claim for breach of the implied covenant of good faith and fair dealing, yet again implicating the White Star Holdings LLC Agreement, but fails to sufficiently plead the elements necessary to establish such a claim, including that "a gap" exists in the contract at issue (that is, conduct the contract does not actually cover); (2) that the gap is not covered by a separate fiduciary duty; (3) that the conduct at issue "could not be anticipated" when the contract was negotiated;

and (4) that it is "clear from the contract" that the parties would have agreed to proscribe that conduct "had they thought to negotiate the matter."

**_Gross Negligence and Willful Misconduct (Count IV)._**  Plaintiff Trustee pleads gross negligence and willful misconduct claims, which—in addition to being time-barred—are unsupported by facts sufficient to meet the high bar required to establish such an extreme departure from the ordinary standard of care.

**_Negligent Misrepresentation (Count VI)._**  Plaintiff Trustee's claim for negligent misrepresentation fails because it does not include supporting facts as to the essential elements— (1) a particular duty to provide accurate information, based on the plaintiff's pecuniary interest in that information; (2) the supply of false information; (3) a failure to exercise reasonable care in obtaining or communicating information; and (4) a pecuniary loss caused by justifiable reliance on the false information—because it is precluded under both the economic loss and the "gist of the action" doctrines.

**_Tortious Interference (Count VIII)._**  Plaintiff Trustee purports to plead a tortious interference claim, but fails to allege specific facts supporting its elements: that **_Defendants_** were aware of the White Star Holdings' LLC Agreement (with which Plaintiff Trustee alleges EMG, EMG Lighthouse Holdings, and the EMG Funds interfered); that any intentional act by EMG, EMG Lighthouse Holdings, and EMG Funds caused any alleged breach; or that any such action was not justified.

**_Common Law Fraud, Fraudulent Concealment, and Constructive Fraud (Count V) and Statutory Fraud (Count IX)._**  Plaintiff Trustee pleads common law and statutory fraud claims, but fails to demonstrate anything more than conclusory allegations regarding any misrepresentation by Defendants, much less reliance by White Star.  Indeed, Plaintiff Trustee's fraud claims lack any

of the required touchstones of a claim under Federal Rule 9(b), including the who, what, when, where, and how of any purported fraud.

***Securities Fraud (Count X), Control Person Liability (Count XI), and Aiding Liability under the Texas Securities Act and/or the Delaware Securities Act (Count XI).***  While Plaintiff Trustee attempts to plead Delaware and Texas securities fraud claims, Plaintiff Trustee's theory as to reliance has no support; far from pleading that White Star was deceived into entering the transaction, Plaintiff Trustee alleges that White Star, through its purportedly controlling members, entered into the transaction with full knowledge of the relevant facts, but was somehow "required" to rely on misleading statements.  Plaintiff Trustee further fails to plead that there were securities involved in the transaction.  Because of these deficiencies, there is no primary securities fraud liability and similarly no derivative aiding and abetting or control person liability.

***Civil Conspiracy (Count XIII).***  Plaintiff Trustee's claim for civil conspiracy must be dismissed because Plaintiff Trustee fails to plead any requisite underlying wrong.

***Alter Ego Liability (Count XIV).***  Finally, Plaintiff Trustee fails to plead any facts that would support the extraordinary proposition that the EMG Funds should be liable for EMG White Star Holdings' and EMG Lighthouse Holdings' alleged wrongdoing.  Plaintiff Trustee merely posits a lone—and wholly conclusory—allegation that "[White Star] Holdings' and the EMG-Related Entities' business form[s] should be disregarded because they were organized and operated as a mere tool or business conduit of Defendants EMG and the Managers, Members, Officers, and Executives."[1]  This is insufficient to merit piercing of the corporate veil as a matter of settled Delaware law.

---

[1] FAC ¶ 157.  The "Managers, Members, Officers, and Executives" or the "Individual Defendants" are defined as John T. Raymond, Elliot J. Chambers, Scott R. Mueller, Louis John Schaufele IV, and Laura A. Tyson.

Because each claim is fatally flawed, and because the First Amended Complaint contains only broad generalizations and conclusory allegations, this Court should dismiss this case in its entirety.

## II.     BACKGROUND AND PROCEDURAL POSTURE

### A.  The White Star Bankruptcy Proceeding and the Litigation Trust

1.      Plaintiff is White Star Petroleum Holdings, LLC Litigation Trust (the "Litigation Trust"), and proceeds through Plaintiff Trustee Harold Kaplan.[2]   The Litigation Trust was established during the White Star Petroleum Holdings, LLC Bankruptcy Proceeding[3] in the United States Bankruptcy Court for the Western District of Oklahoma (the "White Star Bankruptcy Court") as part of the implementation of the Plan of Liquidation.[4]

2.      On April 16, 2020, the White Star Bankruptcy Court entered the Confirmation Order[5] confirming the Plan of Liquidation and approving the Litigation Trust Agreement[6] and the Plaintiff Trustee's appointment.

3.      The Plan of Liquidation's Effective Date was April 28, 2020.[7]

4.      Under the Plan of Liquidation and the Litigation Trust Agreement, Plaintiff Trustee has the "authority to maintain, prosecute, settle, dismiss, abandon, or otherwise dispose of the Preserved Potential Claims."[8]  The Preserved Potential Claims include claims that could have been

---

[2] FAC ¶ 7.

[3] See In re White Star Petroleum Holdings, LLC, et al., Case No. 19-12521-JDL (Bankr. W.D. Okla.) (the "Bankruptcy Proceeding").

[4] See Notice of Revised Chapter 11 Plan of Liquidation § 5.4.1 [Bankruptcy Proceeding ECF No. 1007] (the "Plan of Liquidation").

[5] See Findings of Fact, Conclusions of Law and Order Confirming the Joint Chapter 11 Plan of Liquidation of White Star Petroleum Holdings, LLC and Its Debtor Affiliates [Bankruptcy Proceeding ECF No. 1152] (the "Confirmation Order").

[6] See Notice of Further Revised Amended Litigation Trust Agreement [Bankruptcy Proceeding ECF No. 1148] (the "Litigation Trust Agreement").

[7] See Notice of Occurrence of Plan Effective Date [Bankruptcy Proceeding ECF No. 1167].

[8] Litigation Trust Agreement § 3.06; see also Plan of Liquidation § 5.9.

brought by White Star Holdings related to Lighthouse.[9]  The Plan of Liquidation limits recovery

for prepetition actions against former White Star directors or officers to White Star's "available

D&O Policies' combined limits" such that "[n]o party, including the Litigation Trust, shall execute,

garnish or otherwise attempt to collect on any settlement of or judgment in the Prepetition D&O

Actions upon any assets of the Debtors' current or former directors and officers on account of any

Prepetition D&O Action except for actions by the Litigation Trust to the extent necessary to trigger

the D&O Insurance Coverage."[10]

5.     Plaintiff Trustee alleges the claims contained in the First Amended Complaint fall

within his authority to investigate under the Plan of Liquidation and Litigation Trust Agreement.[11]

### B. <u>White Star Holdings</u>

6.     White Star Holdings acquires, develops, operates, and produces unconventional oil

and gas properties.[12]  White Star Holdings is a Delaware limited liability company governed by its

LLC Agreement, which provides for the application of Delaware law, and is incorporated into the

First Amended Complaint.[13]  In Section 8.1, White Star Holdings' LLC Agreement eliminates the

fiduciary duties of its Members and Managers:

> Subject to, and as limited by the provisions of this Agreement, the
> Members and Managers . . . in the performance of their duties as
> such, shall not, to the maximum extent permitted by the Delaware
> Limited Liability Company Act . . . owe any duties (including
> fiduciary duties) as a Member or Manager of the Company,
> notwithstanding anything to the contrary existing at law, in equity
> or otherwise; provided, however, that each Member and Manager

---

[9] *See Notice of Filing of Plan Supplement, Ex. 3 Preserved Potential Claims Schedule* [Bankruptcy Proceeding ECF No. 1093] (the "<u>Preserved Potential Claims Scheduled</u>") at 53.

[10] Plan of Liquidation § 10.11; Preserved Potential Claims Schedule at 52.

[11] FAC ¶¶ 67-69.

[12] *See Declaration of Jeffery J. Zanotti in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Bankruptcy Proceeding ECF No. 2] ¶ 11.

[13] *Fourth Amended and Restated Limited Liability Company Agreement of White Star Petroleum Holdings, LLC* (the "<u>White Star LLC Agreement</u>") § 15.12, attached hereto as **<u>Exhibit A</u>**.  Documents central to claims may be considered by the Court on a motion to dismiss.  *See Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010).

shall act in accordance with the implied contractual covenant of
good faith and fair dealing.[14]

7.      Defendant EMG White Star Holdings, LLC is a Member of White Star Holdings.

Defendants John T. Raymond, Laura L. Tyson, Louis John Schaufele IV, Scott R. Mueller and

Elliot J. Chambers served as Managers of White Star Holdings.[15]

8.      Non-EMG Directors Chambers and Mueller were, at no time, agents or employees

of any EMG Defendant entity.[16]

**C.   The Lighthouse Transaction**

9.      On January 26, 2017, White Star Holdings entered into a Contribution and

Exchange Agreement (the "CEA")[17] with Defendant EMG Lighthouse Holdings, and certain other

parties, to acquire Lighthouse (the "Lighthouse Transaction").

10.     At the time, Lighthouse was owned by Talara Opportunities II, LP ("Talara"), a

Delaware limited partnership; certain individual membership holders; and Defendant EMG

Lighthouse Holdings, a Delaware limited liability company, which owned a minority share.[18]  The

First Amended Complaint gives the erroneous impression that White Star paid $108 million in

cash for the Lighthouse assets.  In fact, the Lighthouse Transaction was structured as a contribution

of equity interests by EMG Lighthouse Holdings, Talara, and Lighthouse management to White

Star Holdings in exchange for 18,500 acres in the Anadarko Basin in Western Oklahoma, including

development targets in the Cleveland, Tonkawa, and Cottage Grove formations.  Lighthouse was

focused on the exploration and production of oil and gas, and the Lighthouse Transaction was part

---

[14] White Star Holdings LLC Agreement § 8.1.

[15] *Id.* § 6.8.

[16] FAC ¶¶ 10-11.

[17] Attached hereto as **Exhibit B**.  Documents central to claims may be considered by the Court on a motion to dismiss.
*See Sullivan*, 600 F.3d at 546.

[18] *See generally* CEA.

of White Star Holdings' strategic plan, positioning the company for continued growth and value

creation with an expanded, diversified footprint in the Midcontinent region.

11.     The CEA is governed by Delaware law.  In pertinent part, Section 12.4 of the CEA

provides that:

> This Agreement and the Legal Relations between the Parties relating
> to this Agreement shall be governed by and construed in accordance
> with the laws of the state of Delaware, without regard to principles
> of conflicts of laws that would direct the application of the laws of
> another jurisdiction.[19]

### D.  Procedural History

12.     On April 26, 2021, Defendants timely removed this action from state court pursuant

to 28 U.S.C. § 1452(a), Southern District of Texas General Order 2012-6, and Southern District of

Texas Local Bankruptcy Rule 9027-1.[20]

13.     Defendants moved to dismiss Plaintiff Trustee's Original Petition[21] on April 30,

2021.[22]

14.     Plaintiff Trustee subsequently filed the First Amended Complaint on May 21,

2021.[23]

15.     Plaintiff Trustee and Defendants agreed that the First Amended Complaint rendered

Defendants' motion to dismiss the Original Petition moot.[24]

---

[19] CEA § 12.4.

[20] *See Notice of Removal* [ECF No. 1].

[21] *See Plaintiff White Star Petroleum Holdings, LLC Litigation Trust's Original Petition*, *White Star Petroleum Holdings, LLC Litig. Tr. v. Energy & Minerals Group LP*, Case No. 2021-14556 (270th Dist. Ct., Harris County, Tex.) (the "Original Petition").

[22] *See Defendants' Motion to Dismiss Plaintiff White Star Petroleum Holdings, LLC Litigation Trust's Original Petition* [ECF No. 3].

[23] *See* FAC [ECF No. 10].

[24] *See Defendants' Notice of Mootness* [ECF No. 12].

16.     Pursuant to the Stipulation filed by the parties on May 28, 2021, Defendants' Motion is due no later than July 9, 2021.[25]

### III.     LEGAL STANDARDS

#### A.  Rule 12 Dismissal

17.     Dismissal under Rule 12(b)(6) for failure to state a claim, made applicable to this proceeding by Fed. R. Bankr. P. 7012, is proper when the alleged facts fail to "state a claim to relief that is plausible on its face."[26]  A two-step analysis applies to a Rule 12(b)(6) motion.  First, a claimant must plead substantive, specific facts that are sufficient to establish a claim.[27]  Vague allegations and "recitals of the elements of a cause of action, supported by mere conclusory statements," cannot survive a motion to dismiss.[28]  Nor will a complaint suffice if it tenders naked assertions devoid of "further factual enhancement."[29]  Courts are not bound to accept as true a legal conclusion couched as a factual allegation.[30]

18.     Second, the claim must be plausible on its face.[31]  A court is required to draw on its experience and common sense and consider whether there are other (non-actionable) reasons for the behavior of a defendant that are more likely.[32]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[33]  Although Plaintiff Trustee's factual allegations

---

[25] *See Stipulation* [ECF No. 13].

[26] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[27] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[28] *Id.* (noting Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (internal citations omitted); *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]").

[29] *Twombly*, 550 U.S. at 557.

[30] *Id.* at 555.

[31] *Id.* at 570.

[32] *Iqbal*, 556 U.S. at 679.

[33] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

may be accepted as true for the purposes of this Motion, the Court may also consider facts shown in documents attached to or relied on in the First Amended Complaint and this Motion.[34]

**B.**   **Rule 9(b) Requirements and Pleading Standards**

19.     Under Rule 9(b), made applicable to this proceeding by Fed. R. Bankr. P. 7009, Plaintiff Trustee must plead allegations constituting fraud or mistake "with particularity."[35]  This heightened pleading standard requires Plaintiff Trustee to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[36]  Rule 9(b) requires the First Amended Complaint to set forth "the who, what, when, where, and how" of the fraud.[37]  In the case of multiple defendants, "general allegations, which do not state with particularity what representations each defendant made, do not meet this requirement."[38]  Courts apply "the particularity requirement of Rule 9(b) to . . . claims predicated on fraud," including breach of fiduciary duty.[39]  The Fifth Circuit likewise recognizes that Rule 9(b) applies to claims of negligent misrepresentation where, as in this case, they are based on the same allegations as claims for fraud.[40]

---

[34] *See Sullivan*, 600 F.3d at 546; *Doe v. Humble Indep. Sch. Dist.*, No. 4:18-CV-4281, 2019 WL 3288385, at *2 (S.D. Tex. July 22, 2019).

[35] Fed. R. Civ. P. 9(b).

[36] *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997)).

[37] *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002).

[38] *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986) (citing 2A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* ¶ 9.03, at 9-20-24 (2d ed. 1985)).

[39] *Brown v. Bilek*, 401 F. App'x 889, 893 (5th Cir. 2010) (citation omitted).

[40] *See, e.g.*, *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir.), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003) ("Although Rule 9(b) by its terms does not apply to negligent misrepresentation claims, this court has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims."); *Williams*, 112 F.3d at 177.

## IV.   ARGUMENTS AND AUTHORITIES

20.     Plaintiff Trustee's First Amended Complaint is the perfect example of a pleading from which Rules 12(b)(6) and 9(b) were designed to provide relief.  Through its First Amended Complaint, Plaintiff Trustee does little more than (1) allege, in conclusory fashion, that White Star Holdings overpaid for certain assets, and (2) rotely recite the elements of myriad causes of action that Plaintiff Trustee (presumably) argues could apply.  This is plainly insufficient under federal pleading standards, particularly given that, unlike most plaintiffs, Plaintiff Trustee has had access to the books and records of White Star before bringing these claims.[41]  As set forth in more detail below, Plaintiff Trustee's failure to allege specific and plausible facts in support of its pleaded claims is fatal to each one.  Accordingly, this Court should dismiss the First Amended Complaint in its entirety.

### A.  Delaware Law Governs This Dispute

21.     Delaware law applies in this matter.[42]  All of Plaintiff Trustee's claims arise "out of White Star's purchase of Lighthouse Oil & Gas LP."[43]  As noted by the Plaintiff Trustee, the purchase of Lighthouse Oil & Gas LP was effectuated through the Contribution and Exchange Agreement, which mandates the application of Delaware law here.[44]  The LLC Agreement of

---

[41] *See* Litigation Trust Agreement § 11.03.

[42] Though the WSP LLC Agreement provides for the application of Oklahoma law, as described below in Section IV.D, Defendants did not owe fiduciary duties to WSP.  However, in the event the Court finds that they did, Plaintiff Trustee has not sufficiently pleaded around the applicable business judgment rule with respect to the Non-EMG Defendants.

[43] FAC ¶ 1.

[44] *See* CEA § 12.4 ("This Agreement and the Legal Relations between the Parties relating to this Agreement shall be governed by and construed in accordance with the laws of the state of Delaware").

White Star Petroleum Holdings, the operative entity in the purchase of Lighthouse Oil & Gas LP, also provides for Delaware law.[45]

**B.** **Plaintiff Trustee Has Not Stated a Claim for Breach of Contract**

22.     Despite Plaintiff Trustee's best efforts to repackage its allegations into as many claims and causes of action as possible, this is at base a claim for breach of contract—here, the White Star Holdings LLC Agreement.  Indeed, all of Plaintiff Trustee's causes of action boil down to a single grievance: Plaintiff Trustee alleges that managers and members of White Star Holdings injured White Star Holdings by causing it to overpay for Lighthouse.  Plaintiff Trustee directs its Breach of Contract claim (Count VII) to just one defendant: EMG White Star Holdings.[46]  But Plaintiff Trustee fails to adequately plead (1) that EMG White Star Holdings actually breached the White Star Holdings LLC Agreement, or (2) that White Star Holdings suffered any damage from the alleged breach.[47]

23.     Plaintiff Trustee's allegations with regard to its breach of contract theory are impermissibly vague and nonspecific.  For instance, Plaintiff Trustee alleges that "[v]alid contracts existed between [White Star] Holdings and Defendant EMG White Star, including but not limited to the [White Star] Holdings LLC Agreement," but fails to enumerate any additional contracts alleged to exist or to have been breached.[48]  In the absence of any enumeration of these other

---

[45] Generally, choice of law decisions can be made at the motion to dismiss stage when factual development is not necessary to resolve the inquiry.  *See Energy Coal S.P.A. v. CITGO Petroleum Corp.*, 836 F.3d 457, 459 (5th Cir. 2016).

[46] Plaintiff Trustee frequently refers to "EMG White Star" even though that term is not defined anywhere in the First Amended Complaint.  Based on context, however, it is apparent that Plaintiff Trustee is referring to EMG White Star Holdings.

[47] *Cf. Air Prods. & Chems., Inc.v. Wiesemann,* 237 F. Supp. 3d 192, 213 (D. Del. 2017).

[48] FAC ¶ 118.

"[v]alid contracts," the Court must assume that Plaintiff Trustee's claim can only be premised on a theory that the White Star Holdings LLC Agreement was breached.[49]

24.     Similarly, Plaintiff Trustee alleges that EMG White Star Holdings' conduct violated, "among other provisions," Section 14.4 of the White Star Holdings LLC Agreement.[50] Again, in the absence of any further enumeration, the Court must assume that Plaintiff Trustee's claim can be premised only on a theory that EMG White Star Holdings breached Section 14.4 of the White Star Holdings LLC Agreement.[51]   However, Plaintiff Trustee posits only conclusory allegations regarding precisely *how* that provision was breached, alleging simply that EMG White Star Holdings "fail[ed] to take any other meaningful measures to determine the terms by which White Star would acquire Lighthouse in an arms'-length transaction with an unaffiliated entity."[52] This is little more than a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," which "do[es] not suffice."[53]   Because of these deficiencies, Plaintiff Trustee's claim must be dismissed.[54]

---

[49] *Id.*

[50] FAC ¶ 119.  Section 14.4 provides as follows:

> **Affiliate Transactions.** Neither the Company nor any Subsidiary thereof shall enter into any agreement, contract, instrument or transaction, or amendment thereto, in each case with any Manager, Officer, holder of more than ten percent (10%) of the outstanding Common Units or any Affiliate of the Company or any Subsidiary thereof or any Affiliate of any such Manager, Officer, holder or Affiliate unless, in each case, such agreement, contract, instrument or transaction is on arms' length terms that are at least as favorable to the Company or the applicable Subsidiary thereof that would be obtained if such agreement, contract, instrument or transaction were being entered into by the Company or a Subsidiary thereof with a Person that is not any such Manager, Officer, holder or Affiliate or an Affiliate of any such Person.

White Star Holdings LLC Agreement § 14.4.

[51] *Id.*

[52] FAC ¶ 120.

[53] *Iqbal*, 556 U.S. at 678.

[54] *See Gibbons v. Whalen*, No. Civ. A. S09A-09-003, 2010 WL 8250809, at *3 (Del. Super. Ct. Mar. 22, 2010).

**C. Plaintiff Trustee Has Not Stated a Claim for Tortious Interference**

25.     Plaintiff Trustee's claim for tortious interference against the EMG and the EMG-Related Entities[55] similarly fails, because the First Amended Complaint contains no plausible allegations supporting the elements of "(1) a contract; (2) about which defendant[s] knew; and (3) an intentional act that is a significant factor in causing the breach of such contract; (4) without justification; (5) which causes injury."[56]

26.     In addition to failing to identify that Defendants were aware of the contract purportedly breached,[57] Plaintiff Trustee fails to plead any requisite "intentional act" by any named Defendant or any resulting breach.[58]  Further, the First Amended Complaint never alleges specific conduct by a specific Defendant.  Instead, Plaintiff Trustee engages in impermissible group pleading, asserting baldly that EMG and the EMG-Related Entities "interfered with these contractual relationships,"[59] without ever specifying what conduct was allegedly committed by each Defendant.  Plaintiff Trustee's vague references to "interference" cannot support a claim.[60]

---

[55] The "EMG-Related Entities" are defined in the Petition as EMG Lighthouse Holdings, LLC; EMG Fund III Management, LP; The Energy & Minerals Group Fund III, LP; EMG Fund III GP, LP; EMG Fund II Management, LP; EMG Fund II GP, LP; The Energy & Minerals Group Fund II, L.P.  *See* FAC at 1.

[56] *Aspen Advisors LLC v. United Artists Theatre Co.*, 861 A.2d 1251, 1266 (Del. 2004) (internal citation omitted).  Even if Texas law applies, which it does not, Plaintiff Trustee fails to state a claim for tortious interference as the elements are substantially the same under Delaware and Texas law.  *See Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689, 697 (Tex. 2017) (noting that justification is an affirmative defense, not an element, under Texas law).  Moreover, if Texas law applies, Plaintiff Trustee's claim is time-barred.  *See Mellon Serv. Co. v. Touche Ross & Co.*, 17 S.W.3d 432, 435 n.1 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

[57] Yet again, Plaintiff Trustee alleges that the "valid contracts" among White Star and EMG White Star "include, but are not limited to, the [White Star] Holdings LLC Agreement."  FAC ¶ 123.  In the absence of any further enumeration of applicable contracts, the Court must assume that Plaintiff Trustee's claim is limited to the White Star Holdings LLC Agreement.

[58] *Preferred Inv. Servs., Inc. v. T & H Bail Bonds, Inc.*, No. CV 5886VCP, 2013 WL 3934992, at *17 (Del. Ch. July 24, 2013), *aff'd*, 108 A.3d 1225 (Del. 2015) (finding no tortious interference when "[n]othing in the record . . . suggest[ed] that [defendants] engaged in any wrongful conduct or *attempted to induce* or cause T & H to breach the Agreement.") (emphasis added).

[59] FAC ¶ 125.

[60] *See id.*; *Iqbal*, 556 U.S. at 678; *see also Belford v. Scott*, No. H-11-2329, 2012 WL 3069846, at *6 (S.D. Tex. July 27, 2012) (granting motion to dismiss where "plaintiff has failed to plead sufficient facts to raise her right to relief against each defendant above the speculative level") (citing *Iqbal*, 556 U.S. at 678).

27.     Finally, Plaintiff Trustee fails to address whether EMG and the EMG Related Entities were without justification for any acts alleged as interference[61]; nor has Plaintiff Trustee pleaded that EMG and the EMG Related Entities acted in bad faith or maliciously to injure White Star Holdings.[62]

28.     Because Plaintiff Trustee's claim for tortious interference pleads none of the required elements, it should be dismissed.

**D.  <u>Plaintiff Trustee Has Not Stated a Claim for Breach of Fiduciary Duty</u>**

29.     Plaintiff Trustee fails to state a breach of fiduciary duty claim[63] for three fundamental reasons: (1) the White Star LLC Agreement expressly eliminates fiduciary duties (as is permitted under Delaware law); (2) Plaintiff Trustee fails to sufficiently allege any fiduciary duty owed by the Managers, Members, Officers, and Executives or EMG White Star to WSP; and (3) the claim impermissibly attempts to repackage Plaintiff Trustee's failed breach of contract claim.  Notwithstanding these arguments, even if the Court were to find that some fiduciary duties were owed, the claims against the Non-EMG Directors (defined *infra*) should be dismissed for the independent reason that the First Amended Complaint does not state a claim for breach of fiduciary duty because it fails to overcome the business judgment presumption.

*1.  The White Star LLC Agreement eliminates traditional fiduciary duties.*

30.     Plaintiff Trustee cannot state a breach of fiduciary duty claim against EMG White Star Holdings or the Individual Defendants because the White Star LLC Agreement eliminated

---

[61] *Aspen Advisors*, 861 A.2d at 1266.

[62] An entity cannot be held liable for interference with the contract of an affiliate "unless the plaintiff pleads and proves that the affiliate sought not to achieve permissible financial goals but sought maliciously or in bad faith to injure plaintiff."  *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013) (internal citation omitted).

[63] The First Amended Complaint alleges a breach of "the duty of loyalty and utmost good faith, duty of candor, duty to refrain from self-dealing, and duty to act with integrity of the strictest kind, duty of fair and honest dealing, and a duty of full disclosure."  FAC ¶ 80.

fiduciary duties.  Under Delaware law,[64] to state a claim for breach of fiduciary duty, Plaintiff

Trustee must first show that a fiduciary duty exists, and then show that a fiduciary breached that

duty.[65]  Delaware law is clear that LLCs, as creatures of contract, are free to eliminate all fiduciary

duties, including the duty of loyalty.[66]  Here, the White Star LLC Agreement explicitly eliminates

fiduciary duties, including the duty of loyalty, for the Individual Defendants as "Managers" and

Defendant EMG White Star Holdings as a "Member":

> [T]he Members and Managers . . . in the performance of their duties as such,
> shall not, ***to the maximum extent permitted by the Act and other applicable
> Law, owe any duties (including fiduciary duties) as a Member or Manager
> of the Company, notwithstanding anything to the contrary existing at law,
> in equity or otherwise***; provided, however, that each Member and Manager
> shall act in accordance with the implied contractual covenant of good faith
> and fair dealing.[67]

31.     Plaintiff Trustee attempts to suggest that "this elimination of duties" was somehow

abrogated by the White Star Holdings LLC Agreement's requirement that any contract entered into

with an Affiliate (as defined in the White Star Holdings LLC Agreement) must be subject to arms'

length terms.[68]  However, as discussed *infra*, this is a wholly separate and ***purely contractual

requirement*** that does not purport to restrict, limit, or otherwise interfere with the clear elimination

---

[64] As noted above, the White Star LLC Agreement provides for Delaware law in this matter.  *See* Part IV.B.

[65] *Heller v. Kiernan*, No. Civ. A. 1484-K, 2002 WL 385545, at *3 (Del. Ch. Feb. 27, 2002), *aff'd*, 806 A.2d 164 (Del. 2002) (citations omitted).

[66] *See* 6 Del. C. § 18-1101(c) (a "member's or manager's or other person's duties may be expanded or restricted or eliminated by provisions in the limited liability company agreement"); *see also Kelly v. Blum*, No. Civ. A. 4516-VCP, 2010 WL 629850, at *11 (Del. Ch. Feb. 24, 2010) (noting that that the Delaware LLC Act goes further than "8 Del. C. § 102(b)(7), which authorizes a corporation to adopt provisions limiting liability for a director's breach of the duty of care . . . , by allowing broad exculpation of *all* liabilities for breach of fiduciary duties—including the duty of loyalty."); *MKE Holdings Ltd. v. Schwartz*, No. CV 2018-0729-SG, 2019 WL 4723816, at *9 (Del. Ch. Sept. 26, 2019) ("[The LLC] was formed as a Delaware limited liability company and, therefore, pursuant to Delaware law its operating or governing agreement may eliminate the fiduciary duties its managers would otherwise owe.").

[67] White Star Holdings LLC Agreement § 8.1 (emphasis added).

[68] *See* FAC ¶ 71 ("[T]his elimination of duties was undertaken "[s]ubject to, and as limited by the provisions of [the Holdings LLC] Agreement.") (citing White Star Holdings LLC Agreement § 8.1).

of fiduciary duties enumerated in Section 8.1(a).  As such, Plaintiff Trustee cannot show that EMG

White Star Holdings and the Individual Defendants have a fiduciary duty to White Star.

### 2. Plaintiff Trustee fails to sufficiently allege the existence of any fiduciary duties owed to WSP.

32.     The Trustee's purported breach of fiduciary duty claims on behalf of WSP also fail

because the Managers, Members, Officers, and Executives and EMG White Star do not owe

fiduciary duties to WSP.  To establish a breach of fiduciary duty, Plaintiff Trustee must first show

that such a duty exists.[69]  Here, Plaintiff Trustee cannot do so against the named Defendants.

33.     None of the Managers, Members, Officers, and Executives, nor EMG White Star,

is a member or manager of WSP; WSP's sole member-manager is White Star Holdings,[70] and

White Star Holdings' LLC Agreement explicitly disclaims any fiduciary duties between the

Managers of White Star Holdings and its subsidiaries:

> [A] Manager shall only owe fiduciary duties to the Member who designated such Manager, and shall be permitted to act solely in the best interests of such Member and not [Holdings] and its Subsidiaries or other Members.[71]

34.     Plaintiff Trustee urges that the Managers, Members, Officers, and Executives of

Holdings and EMG White Star have a fiduciary duty to WSP "based on the control they exercised

over White Star Petroleum's property."[72]  But Plaintiff Trustee ignores that any control over WSP's

property (including by its CEO) was necessarily exercised for the benefit of Holdings.[73]  Not only

is WSP a wholly-owned subsidiary of White Star Holdings, but White Star Holdings is WSP's sole

member-manager.  It would be nonsensical to impose fiduciary duties on White Star Holdings'

---

[69] *Heller*, 2002 WL 385545, at *3.

[70] FAC at 1 n.1.

[71] White Star Holdings LLC Agreement § 8.1.

[72] FAC ¶ 78.

[73] *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 200-01 (Del. Ch. 2006) ("[T]he law is that the [subsidiary] directors were obligated to manage [subsidiary] with loyalty to [parent], the company's sole stockholder.").

managers, members, or controllers requiring them to treat WSP with a **greater** standard of care than White Star Holdings.  Accordingly, Plaintiff Trustee cannot allege a fiduciary duty owed by the Managers, Members, Officers, and Executives, or EMG White Star beyond any duty they may have owed to White Star Holdings.  Since no such duty to White Star Holdings exists, Plaintiff Trustee's claims must fail.

### 3.  Plaintiff Trustee fails to state a claim against the Non-EMG Directors.

35.     Notwithstanding the above facts to the contrary, even if the Court were to find that some fiduciary duties were owed by Defendants, the claims against Messrs. Chambers and Mueller (the "Non-EMG Directors") should be dismissed for the independent reason that the Amended Complaint does not state a claim for breach of fiduciary duty under either Delaware law (for White Star Holdings) or Oklahoma law (for WSP).  These directors are protected by the "business judgment rule" in both jurisdictions, meaning that courts will assume that "'in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"[74]  A plaintiff can only evade the business judgment rule if it can show that "that the board of directors, in reaching its challenged decision, violated any one of its triad of fiduciary duties:  due care, loyalty, or good faith."[75]

36.     Where the business judgment rule applies, the presumption in favor of the directors can be rebutted only "in those *rare* cases where the decision under attack is so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad

---

[74] *Emerald Partners v. Berlin*, 787 A.2d 85, 90 (Del. 2001) (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)).  Oklahoma courts routinely look to Delaware law in evaluating claims for breach of fiduciary duty.  *See Beard* v. *Love*, 173 P.3d 796, 802 (Okla. Civ. App. 2007); *see also Warren* v. *Century Bankcorporation, Inc.*, 741 P.2d 846, 848–50 (Okla. 1987) (adopting the intrinsic fairness aspect of the business judgment rule in Delaware law as "consistent with Oklahoma's extant jurisprudence").

[75] *Id.* at 91 (internal citations omitted).

faith."[76]   Unless a plaintiff carries this burden, the business judgment rule insulates corporate actions from judicial scrutiny and "operates to provide substantive protection for the directors and for the decisions that they have made."[77]

37.     The business judgment rule applies fully on a motion to dismiss.  To survive a motion to dismiss, a plaintiff must affirmatively plead facts sufficient to "overcome the presumption of the business judgment rule."[78]   "Overcoming the presumptions . . . is a near-Herculean task,"[79] and "the burden of pleading and proof is on the party challenging the decision to allege facts to rebut the presumption."[80]

38.     Here, Plaintiff Trustee has not "overcome" the business judgment rule at all.  *First*, the First Amended Complaint does not plead a breach of the duty of loyalty.  To do so, Plaintiff Trustee was required to plead facts sufficient to overcome the presumption that directors "exercise[] disinterested and independent business judgment."[81]   Plaintiff Trustee does not seriously contend that the Non-EMG Directors were "interested" in the Lighthouse Transaction in any way.  There is no allegation that either of them would have benefited in any concrete way from *overpaying* for the Lighthouse assets—the Plaintiff Trustee's central theory of the case here.[82]

---

[76] *Alidina v. Internet.com Corp.*, No. 17235-NC, 2002 Del. Ch. LEXIS 156, at *13 (Del. Ch. Nov. 6, 2002) (internal quotation marks and citations omitted).

[77] *Emerald Partners*, 787 A.2d at 91 (internal citations omitted); *Hargrave v. Canadian Valley Elec. Co-op., Inc.*, 792 P.2d 50, 57 (Okla. 1990) ("Because directors and trustees are the 'managers' of corporate affairs, wide latitude is given in order that the corporation may be managed efficiently.") (internal citations omitted).

[78] *Krim v. ProNet, Inc.*, 744 A.2d 523, 527 (Del. Ch. 1999); *Egleston ex rel. Chesapeake Energy Corp. v. McClendon*, 318 P.3d 210, 215 (Okla. Civ. App. 2013) (applying the business judgment presumption on a motion to dismiss).

[79] *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005).

[80] *Solomon v. Armstrong*, 747 A.2d 1098, 1111–12 (Del. Ch. 1999), *aff'd*, 746 A.2d 277 (Del. 2000) (citing *Aronson*, 473 A.2d at 812).

[81] *See In re Ply Gem Indus., Inc. S'holders Litig.*, No. CIV.A. 15779-NC, 2001 WL 755133, at *6 (Del. Ch. June 26, 2001) (internal citations omitted); *Egleston*, 318 P.3d at 215.

[82] *See In re Ply Gem Indus., Inc. S'holders Litig.*, 2001 WL 755133, at *6–7.

39.     While the First Amended Complaint simply alleges, in conclusory fashion, that various Defendants "benefited from this breach [of fiduciary duty] based on their connection or affiliation to EMG and their own pecuniary interests,"[83] the only specific allegation that the Non-EMG Directors could somehow be deemed "interested" is a vague sentence speculating that unspecified documents "suggest that Chambers offered Mueller a position at the head of the merged business."[84] But courts have found that similar promises of future positions are insufficient to create the necessary conflict of interest to overcome the business judgment presumption.[85]

40.     Plaintiff Trustee also fails to allege sufficient facts to show that the Non-EMG Directors lacked independence.  A director lacks independence if he is "either beholden to the controll[er ] or so under its influence that their discretion [wa]s sterilized."[86]  To be "controlled" by another, courts consider whether a director was "*dominated* by that other party, whether through close personal or familial relationship or through force of will."[87]  To be "beholden," courts consider whether "the allegedly controlling entity has the unilateral power . . . to decide whether the challenged director continues to receive a benefit, financial or otherwise, upon which the challenged director is so dependent . . . that the threatened loss of that benefit might create a reason to question" the directors' ability to consider the transaction objectively.[88]

---

[83] FAC ¶ 84.

[84] FAC ¶ 57.

[85] *See Orman v. Cullman*, 794 A.2d 5, 28–29 (Del. Ch. 2002) ("No case has been cited to me, and I have found none, in which a director was found to have a financial interest *solely* because he will be a director in the surviving corporation.  To the contrary, our case law has held that such an interest is not a disqualifying interest.") (internal citations omitted); *Krim*, 744 A.2d at 528 n.16 ("[T]he fact that several directors would retain board membership in the merged entity does not, standing alone, create a conflict of interest.") (internal citations omitted).

[86] *In re Ply Gem Indus., Inc. S'holders Litig.*, 2001 WL 755133, at *6 (internal citations omitted).

[87] *Orman*, 794 A.2d at 25 n.50.

[88] *Id.*

41.     Here, Plaintiff Trustee affirmatively concedes that Mr. Mueller's approval was *necessary* in order for the Lighthouse merger to be consummated,[89] but alleges no facts at all to show that he was, in any way, "dominated" by EMG.  With respect to Mr. Chambers, the First Amended Complaint alleges that he "fell in line" with directives from EMG Defendants, but these generalized allegations are too speculative to state a claim.[90]  That Mr. Chambers coordinated or agreed with certain EMG-appointed managers[91] does not make him "beholden" to EMG, and Plaintiff Trustee alleges no facts regarding the nature of Mr. Chambers' personal relationships with EMG directors or EMG's power over any "benefits" Mr. Chambers received.[92]

42.     Finally, Plaintiff Trustee does not allege sufficient facts to show that the Non-EMG Directors breached their duties of care.  To do so, the First Amended Complaint must "plead . . . that the defendant was recklessly uninformed or acted outside the bounds of reason."[93]  It does not do that.  There is no plausible allegation that either Non-EMG Director was uninformed, let alone *recklessly* uninformed.[94]  Indeed, Plaintiff Trustee does not plead any facts relating to what information Mr. Mueller did or did not have access to in approving this transaction at all.  With respect to Mr. Chambers, Plaintiff Trustee explicitly points to the many documents Mr. Chambers considered to in order to inform himself of the benefits of the transaction, including data, financial

---

[89] FAC ¶ 57.

[90] *See, e.g.*, FAC ¶ 49.

[91] FAC ¶¶ 39, 49.

[92] *See, e.g.*, *Off. Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*, No. CIV.A. 20228-NC, 2004 WL 1949290, at *10 (Del. Ch. Aug. 24, 2004) ("General allegations of domination . . . are simply not sufficient under Delaware law to state a traditional duty of loyalty claim" and "*approving of or acquiescing in the challenged transactions, without more*" is similarly insufficient.) (internal citations omitted) (emphasis in original); *Hamilton Partners, L.P. v. Highland Capital Management, L.P.*, No. CIV.A. 6547-VCN, 2014 WL 1813340, at *16 (Del. Ch. May 7, 2014) (finding no inference of domination on a motion to dismiss because the complaint did not "describe [the directors'] relationships with [the controller] in any meaningful detail") (internal citations omitted).

[93] *In re Synutra Int'l, Inc.*, No. 2017-0032-JTL, 2018 WL 705702, at *5 (Del. Ch. Feb. 2, 2018) (internal quotation and citations omitted).

[94] *Id.*

models and budgets, economic summary projections, and a Lighthouse acreage map.[95]  Thus,

Plaintiff Trustee fails to plead around the business judgment rule to show that either Non-EMG

Director breached either the duty of loyalty or the duty of care to either entity.

### 4. Plaintiff Trustee's breach of fiduciary duty claim impermissibly attempts to repackage its fatally flawed claim for breach of contract.

43.    Separately, Plaintiff Trustee's breach of fiduciary duty claim must be dismissed

because the First Amended Complaint merely restates Plaintiff Trustee's breach of contract

claim.[96]  "It is a well-settled principle that where a dispute arises from obligations that are expressly

addressed by contract, that dispute will be treated as a breach of contract claim," such that "any

fiduciary claims arising out of the same facts that underlie the contract obligations would be

foreclosed as superfluous."[97]  This rule stems from "the primacy of contract law over fiduciary

law" in Delaware,[98] which gives the flexibility in governance that is precisely why many

companies choose to form under the laws of Delaware.[99]

44.    A critical aspect of Plaintiff Trustee's attempt to repackage its flawed claim for

breach of contract is in its allegation that "[w]hile Section 8.1(a) [of] the [White Star] Holdings

LLC Agreement purported to eliminate fiduciary duties of [White Star] Holdings' members and

managers to the company, this elimination of duties was undertaken '[s]ubject to, and as limited

---

[95]  FAC ¶¶ 35, 37 n.7.  *See, e.g.*, *In re Novell, Inc. S'holder Litig.*, No. CIV.A. 6032-VCN, 2013 WL 322560, at *15–16 (Del. Ch. Jan. 3, 2013) (finding no adequate allegation of a breach of the duty of care because plaintiffs did not plead any facts suggesting the board was uninformed, and in fact plaintiffs alleged that the board did have access to information including valuations, and noting that "fairness opinions 'are generally not essential, as a matter of law, to support an informed business judgment'") (internal citations omitted).

[96]  *Compare* FAC ¶¶ 70-87 (fiduciary duty claim) with *id.* ¶¶ 117-121 (breach of contract claim).

[97]  *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010); *MHS Cap. LLC v. Goggin*, No. CV 2017-0449-SG, 2018 WL 2149718, at *8 (Del. Ch. May 10, 2018) ("Delaware law is clear that fiduciary duty claims may not proceed in tandem with breach of contract claims absent an 'independent basis for the fiduciary duty claims apart from the contractual claims.'") (quoting *Renco Grp., Inc. v. MacAndrews AMG Holdings LLC*, 2015 WL 394011, at *7 (Del. Ch. Jan. 29, 2015)).

[98]  *MHS Capital*, 2018 WL 2149718, at *8 (internal citations omitted).

[99]  *See, e.g.*, *Kahn v. Icahn*, No. CIV.A. 15916, 1998 WL 832629, at *2 (Del. Ch. Nov. 12, 1998), *aff'd*, 746 A.2d 276 (Del. 2000) (collecting cases and discussing a limited partnership agreement).

by the provisions of [the Holdings LLC] Agreement.'"[100]  Plaintiff Trustee thus seeks to muddy

the waters of the White Star Holdings LLC Agreement's clear elimination of fiduciary duties by

suggesting that the wholly separate and ***purely contractual requirement*** that any contract entered

into with an Affiliate (as defined in the White Star Holdings LLC Agreement) must be subject to

arms' length terms somehow abrogates that elimination or somehow creates a standalone fiduciary

duty.

45.     Plaintiff Trustee's fiduciary duty claim does not depend on additional facts, is not

broader in scope, and does not involve different considerations in terms of a potential remedy.[101]

Because Plaintiff Trustee makes virtually identical allegations in its breach of fiduciary duty and

breach of contract claims concerning the alleged overpayment for Lighthouse,[102] Plaintiff

Trustee's fiduciary duty claims should be dismissed.

### E.  **Plaintiff Trustee Has Not Stated a Claim for Aiding and Abetting Breach of Fiduciary Duty**

46.     It is axiomatic that "a claim for aiding and abetting a breach of fiduciary duty or

contractual fiduciary duty requires an underlying breach that was aided or abetted."[103]  Because

Plaintiff Trustee has failed to identify any fiduciary duties that the Individual Defendants and EMG

White Star Holdings owed to White Star Holdings or to WSP, Plaintiff Trustee's aiding and

abetting breach of fiduciary duty claim against EMG and the EMG Related Entities likewise fails.

47.     Further, even if a fiduciary duty existed (which it does not), Plaintiff Trustee fails

to include any allegations that EMG and the EMG Related Entities "knowingly" participated in a

---

[100] FAC ¶ 71.

[101] *MHS Capital*, 2018 WL 2149718, at *8 (quoting *Renco Grp.,* 2015 WL 394011, at *7).

[102] *Compare* FAC ¶¶ 70-87 (fiduciary duty claim) with *id.* ¶¶ 117-121 (breach of contract claim).

[103] *See Higher Educ. Mgmt. Grp., Inc. v. Mathews*, No. 9110-VCP, 2014 WL 5573325, at *13 n.77 (Del. Ch. Nov. 3, 2014) (citations omitted).

breach of that duty—another essential element to a claim of aiding and abetting breach of fiduciary duty.[104]

### F.   **Plaintiff Trustee Has Not Stated a Claim for Gross Negligence or Willful Misconduct**

48.     As a preliminary matter, Plaintiff Trustee's claim for gross negligence or willful misconduct is time-barred.  Under Delaware law, the statute of limitations for gross negligence and willful misconduct is two years, rendering Plaintiff Trustee's claim for the Lighthouse Transaction—which closed in 2017—untimely.[105]  Even if its claim is not time-barred, however, Plaintiff Trustee fails to meet the very high bar required to state a claim for gross negligence or willful misconduct under Delaware law, which is an "extreme" departure from any ordinary standard of care.[106]  To establish gross negligence, a plaintiff must "plead and prove that the defendant was recklessly uninformed or acted outside the bounds of reason."[107]  Conclusory allegations do not suffice.[108]  To establish willful misconduct, a plaintiff must plead facts supporting a finding that the defendants intended to harm the company.[109]

49.     The First Amended Complaint includes little more than conclusory allegations as to the Individual Defendants' and EMG White Star Holdings' conduct, itemizing a list of actions

---

[104] *See Malpiede v. Townson*, 780 A.2d 1075, 1098 (Del. 2001).

[105] *See Scott v. Moffit*, No. CV N18C-11-015 CLS, 2019 WL 3976068, at *5 (Del. Super. Ct. Aug. 20, 2019); 10 Del. C. § 8119.  The same is true in the unlikely event Texas law governs Plaintiff Trustee's claim.  *See Mellon*, 17 S.W.3d at 435 n.1; Tex. Civ. Prac. & Rem. Code § 16.003(a).

[106] *See, e.g., Klein v. Wasserman*, No. CV 2017-0643-KSJM, 2019 WL 2296027, at *5 (Del. Ch. May 29, 2019) (bad faith "includes fiduciary conduct motivated by an actual intent to do harm") (internal citations and quotation marks omitted); *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168 (Del. Ch. 2006) *aff'd* 931 A.2d 438 (Del. 2007) (plaintiff must allege extreme facts to satisfy standard for gross negligence and cannot ask the court to infer that "later failure resulted from a grossly deficient level of effort or from disloyal motives.").

[107] *In re Synutra Int'l, Inc.*, Civ. No. 2017-0032-JTL, 2018 WL 705702, at *5 (Del.Ch. Feb. 2, 2018) (internal quotation and citations omitted).

[108] *Fisk Ventures, LLC v. Segal*, No. Civ. A. 3017-CC, 2008 WL 1961156, at *10, n.41 (Del. Ch. May 7, 2008) (rejecting plaintiff's "conclusory assertions" of bad faith under an LLC agreement when members took an action that plaintiff disagreed with).

[109] *See id.*  ("[T]he hollow invocation of 'bad faith' does not magically render a deficient complaint dismissal-proof.") (internal citations omitted).

and stating baldly that those actions "constituted an extreme departure from the ordinary standard of care, signifying more than inadvertence or inattention."[110]  This unsupported allegation does not satisfy the requirement that Plaintiff Trustee plead facts supporting conduct "so grossly off-the-mark as to amount to reckless indifference or a gross abuse of discretion."[111]  As such, Plaintiff Trustee's claim for gross negligence and willful misconduct should be dismissed.

### G.  Plaintiff Trustee Has Not Stated a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

50.     The Court should also dismiss Plaintiff Trustee's claim that the Individual Defendants and EMG White Star Holdings breached the implied contractual covenant of good faith and fair dealing.  To state an implied covenant claim, Plaintiff Trustee must allege (1) "a gap" in the contract at issue (that is, conduct the contract does not actually cover);[112] (2) that the gap is not covered by a separate fiduciary duty;[113] (3) that the conduct at issue "could not be anticipated" when the contract was negotiated;[114] and (4) that it is "clear from the contract" that the parties would have agreed to proscribe that conduct "had they thought to negotiate the matter."[115]

51.     Implied covenant claims are "rarely invoked successfully,"[116] and Plaintiff Trustee's claim is no exception.  Most notably, Plaintiff Trustee fails to plead the threshold requirement of a contractual "gap" necessitating application of the implied covenant in the first place.  While Plaintiff Trustee alleges that the White Star Holdings LLC Agreement "is silent regarding how the parties are required to ensure the relative favorability of the affiliate

---

[110] FAC ¶ 102.

[111] *In re Synutra Int'l,* 2018 WL 705702, at *5 (internal quotation marks and citations omitted).

[112] *See Fortis Advisors LLC v. Dialog Semiconductor PLC,* No. CV 9522-CB, 2015 WL 401371, at *4 (Del. Ch. Jan. 30, 2015).

[113] *Lonergan v. EPE Holdings, LLC,* 5 A.3d 1008, 1017 (Del. Ch. 2010).

[114] *Nemec,* 991 A.2d at 1126.

[115] *Fisk Ventures,* 2008 WL 1961156, at *10 (citations and internal quotations omitted).

[116] *See Kuroda v. SPJS Holdings, L.L.C.,* 971 A.2d 872, 888 (Del. Ch. 2009); *accord, e.g., Lonergan,* 5 A.3d at 1018.

transaction,"[117] it fails to allege that that purported "gap" is one that "neither party [to the White Star Holdings LLC Agreement] anticipated."[118]   Plaintiff Trustee similarly fails to allege the remaining necessary elements identified above.[119]

52.     Plaintiff Trustee's "[g]eneral allegations of bad faith conduct are not sufficient" to support a claim for the breach of the implied covenant of good faith and fair dealing.[120]   Plaintiff Trustee's implied covenant claim must therefore be dismissed.

## H.   Plaintiff Trustee Has Failed to Plead Common Law Fraud with the Requisite Specificity

53.     Plaintiff Trustee fails to state a claim for common law fraud because (1) the Plaintiff Trustee's claims do not meet Rule 9(b)'s heightened pleading standards for fraud; (2) the First Amended Complaint impermissibly repeats the (deficient) breach of contract claim without stating an independent claim for fraud; and (3) Plaintiff Trustee fails to plead the necessary elements of fraudulent concealment and constructive fraud.

54.     First, Plaintiff Trustee's common law fraud claims should be dismissed because its non-specific allegations and group pleading fall well short of satisfying Rule 9(b)'s heightened pleading standard.[121]   Rule 9(b) requires that Plaintiff Trustee "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain

---

[117] FAC ¶ 97.

[118] *Nemec*, 991 A.2d at 1125.

[119] FAC ¶ 96.

[120] *Kuroda*, 971 A.2d at 888.

[121] Plaintiff Trustee does not identify whether Delaware or Texas law should apply to its claims.  Delaware law applies because Texas choice of law principles will give effect to the choice of law provision because Delaware has a substantial relationship with the parties, there was a reasonable basis for choosing Delaware law, and applying the law of Delaware is not contrary to a fundamental Texas' policy. *See O'Connor v. Cory*, No. 3:16-CV-1731-B, 2018 WL 5117197, at *10 (N.D. Tex. Oct. 19, 2018) (holding that Delaware law applies to tort claims where a choice of law clause applies Delaware law and no exception under the Restatement of Conflicts of Law applies).  Therefore, any claim for fraud under Texas law must be dismissed. Even if Texas law were to apply in this matter (which it does not), Plaintiff Trustee still fails to state a claim under Rule 9(b) for the reasons discussed herein.

why the statements were fraudulent . . . ."[122]  Instead of specifically stating the circumstances relating to the alleged fraud, the First Amended Complaint impermissibly lumps together the Individual Defendants and EMG White Star Holdings and sweepingly states that the Defendants as a whole defrauded White Star, rather than identifying which Defendants did what, when, and where.[123]  Accordingly, Plaintiff Trustee has not pleaded fraud with specificity, and the claims should be dismissed.

55.    Second, a "breach of contract claim cannot be 'bootstrapped' into a fraud claim merely by adding the words 'fraudulently induced' or alleging that the contracting parties never intended to perform."[124]  Plaintiff Trustee alleges the exact same conduct constitutes fraudulent misrepresentations and a failure to disclose that constitutes an alleged breach of contract.[125]  For both claims, Plaintiff Trustee formulaically recites the elements of the claim punctuated by the allegation that they were done in connection with or associated with "the Lighthouse transaction."[126]  This impermissible reframing of the poorly pleaded breach of contract claim as a tort claim is alone grounds for dismissal.[127]

56.    Third, Plaintiff Trustee's claim for fraudulent concealment must fail because Plaintiff Trustee fails to plead any facts that the Individual Defendants and EMG White Star Holdings "took some affirmative act designed or intended to prevent, and which [did] prevent, the discovery of facts giving rise to the fraud claim," a necessary element of proving fraud by

---

[122] *ABC Arbitrage Plaintiffs Grp.*, 291 F.3d at 349.

[123] FAC ¶¶ 105-109.

[124] *Wiesemann,* 237 F. Supp. 3d at 216 (internal citations omitted).

[125] *Compare* FAC ¶¶ 104-110 (fraud claim) *with id.* ¶¶ 117-121 (breach of contract claim).

[126] FAC ¶¶ 105, 119.

[127] "As a general rule under Delaware law, 'where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort.'"  *Wiesemann*, 237 F. Supp. 3d at 216 (internal citations omitted).

fraudulent concealment.[128]   Because Plaintiff Trustee fails to even address this element of fraudulent concealment, the claim for fraudulent concealment must be dismissed.

**I.   Delaware Law Does Not Recognize Statutory Fraud and Plaintiff Trustee Fails to Plead Statutory Fraud with the Requisite Specificity in any Event**

57.   Plaintiff Trustee's claim for statutory fraud must fail because Delaware law, applicable here, does not recognize such a cause of action.[129]   Moreover, even if Texas law applied, which it does not, Plaintiff Trustee's claim for statutory fraud must still be dismissed because Plaintiff Trustee failed to meet the applicable heightened pleading standards.   To properly plead Texas statutory fraud, codified in section 27.01 of the Texas Business & Commerce Code, Plaintiff Trustee must prove EMG and EMG Lighthouse Holdings (1) made false representations about a past or existing material fact, (2) to a person for the purpose of inducing that person to enter into a contract, and (3) that person relied on the false representations when entering into a contract.[130]

58.   Rule 9(b)'s heightened pleading standards apply to statutory fraud cases arising under section 27.01.[131]   Plaintiff Trustee's conclusory allegations that EMG and EMG Lighthouse Holdings "made false representations . . . for the purpose of inducing White Star to enter a contract" and that they had "actual awareness of the falsity" fail to meet these heightened pleading standards.[132]   Plaintiff Trustee does not specify "the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were

---

[128] *Id.* ("Active concealment requires more than mere silence.") (internal citations omitted).

[129] As explained above, Delaware law applies to the tort claims alleged in the Petition, including Plaintiff Trustee's claim for statutory fraud.  *See* Part IV.H.  The only fraud statute under Delaware Law is the Delaware Consumer Fraud Act ("DCFA"), which obviously does not apply to Plaintiff Trustee's allegations, as it covers fraud related to the "sale, lease or advertisement of any merchandise."  6 Del. C. § 2513(a).  "Merchandise" is defined under the DCFA as "any objects, wares, goods, commodities, intangibles, real estate or services," not the sale of a business, which is what Plaintiff Trustee alleges here.  6 Del. C. § 2511(6).  Because Delaware law applies, and there is no applicable statutory fraud claim under Delaware law, Plaintiff Trustee's claim for statutory fraud should be dismissed in its entirety.  *See O'Connor,* 2018 WL 5117197, at *11.

[130] TEX. BUS. & COMM. CODE §  27.01(a)(1).

[131] *Fawaz v. Byers,* CIV.A. H-13-0897, 2014 WL 1671746, at *3 (S.D. Tex. Apr. 28, 2014) (internal citations omitted).

[132] FAC ¶¶ 129-130.

28

fraudulent . . . ."[133]  Plaintiff Trustee also fails to plead any facts that EMG and EMG Lighthouse Holdings had actual awareness of the allegedly false representations.[134]   As such, Plaintiff Trustee's claim for statutory fraud must also be dismissed.

**J.   Plaintiff Trustee Has Failed to State a Claim for Securities Fraud**

59.     Plaintiff Trustee purports to bring claims for securities fraud under either the Texas Securities Act (the "TSA") or the Delaware Securities Act (the "DSA").  Both claims, which do not differ substantially from Plaintiff Trustee's insufficiently-pled fraud claims, fail because (1) Plaintiff Trustee as a matter of law cannot bring claims under the TSA, as such claims are governed by Delaware law, and (2) in any event, Plaintiff Trustee has failed to plead the requisite elements to support a claim for securities fraud.

*1.   Plaintiff Trustee's Claims Are Barred under the TSA.*

60.     Any cause of action under the TSA is barred as a matter of law because Delaware law governs the Plaintiff Trustee's claims.  Section 12.4 of the CEA, which governed the transfer of interests under the Lighthouse Transaction that purportedly asserts Plaintiff Trustee's securities claims, provides that "this Agreement and the legal relations between the Parties relating to this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to principles of conflicts of laws that would direct the application of the laws of another jurisdiction."[135]  This clause is broad enough to reach all claims related to the CEA or the parties' relationship created thereunder, including Plaintiff Trustee's extracontractual claims for securities fraud.[136]

---

[133] *ABC Arbitrage Plaintiffs Grp.*, 291 F.3d at 349.

[134] *Fawaz*, 2014 WL 1671746, at *3 (internal citations omitted) ("[A]ctual awareness . . . means that a person knows what he is doing is false, deceptive, or unfair.").

[135] CEA § 12.4.

[136] *See Grosser v. Red Mango FC*, LLC, No. Civ. A. 3:12-CV-2691-N, 2013 WL 12134086, at *6–7 (N.D. Tex. Apr. 25, 2013) (interpreting a similarly broad clause).

61.     When another state's laws apply (here, Delaware), but a party asserts securities claims under a different state's laws (here, Texas), courts enforce the parties' agreement and negate application of other states' securities laws.[137]   The Plaintiff Trustee's claims under the TSA are thus barred as a matter of law, including its claims against Defendants for primary liability, control person liability, and aiding and abetting.[138]   Moreover, even if the TSA could apply here, the Plaintiff Trustee's claims would fail for the same reasons as his claims under the DSA, as discussed below.[139]

### 2.   *Plaintiff Trustee Fails to Plead a Securities Fraud Claim under the DSA.*

62.     Plaintiff Trustee's claims for securities fraud under the DSA fail because they fall well outside the ambit of the Delaware securities laws, which are intended to protect passive investors and regulate investments.[140]   To state a claim for securities fraud, a plaintiff must show that the defendant: (1) made a misstatement or omission; (2) of material fact; (3) with scienter; (4) in connection with a purchase or sale of a security; (5) upon which the plaintiff (or another person if the action is brought by the Delaware Securities Division) relied; and (6) that reliance proximately caused the plaintiff's (or other person's) injury.[141]

63.     Here, Plaintiff Trustee alleges that Defendants EMG and EMG Lighthouse Holdings committed securities fraud by requiring White Star to rely on representations as to the

---

[137] *See O'Connor*, 2018 WL 5117197, at *10 (barring plaintiffs' Texas Securities Act claims when Delaware law was contractually provided by parties' agreement); *Newby v. Enron Corp. (In re Enron Corp. Secs., Derivative & ERISA Litig.)*, 761 F. Supp. 2d 504, 576 (S.D. Tex. 2011) (dismissing TSA claim after determining New York law governed the parties' dispute); *see also Townsley v. Airxcel, Inc.*, No. 18-cv-1439 (KBF), 2018 WL 3946449, at *7 (S.D.N.Y. Aug. 15, 2018) (dismissing a plaintiff's claim under the Texas Securities Act because "the parties agreed that the subject matter of the contract would be governed by New York law" and "New York law does not include the TSA.").

[138] *See* FAC ¶¶ 132-154.

[139] *See O'Connor*, 2018 WL 5117197, at *11 (finding that "the Texas Securities Act and the Delaware Securities Act are similar").

[140] *See, e.g.*, *Great Lakes Chem. Corp. v. Monsanto Co.*, 96 F. Supp. 2d 376, 387–88 (D. Del. 2000) ("The primary goal of the securities laws is to regulate investments, and not commercial ventures.").

[141] *See* 6 Del. C. § 73-201(2) (noting that the DSA should be interpreted similarly to Rule 10b-5 of the Securities and Exchange Act of 1934); *Hubbard v. Hibbard Brown & Co.*, 633 A.2d 345, 349 (Del. 1993).

valuation of Lighthouse's assets that they knew or ought to have known were false and misleading.[142]  This allegation alone undermines Plaintiff Trustee's entire theory of securities fraud liability.  Far from pleading that White Star was deceived into entering the transaction, Plaintiff Trustee alleges that White Star, through its purportedly controlling members, entered into the transaction with full knowledge of the relevant facts.[143]  It is nonsensical for Plaintiff Trustee to allege that White Star was defrauded because it was "required" to rely on misleading statements.  White Star is imputed with the same knowledge possessed by its controllers.[144]

64.    Further, Plaintiff Trustee has also failed to plead that the "assets and interests" of Lighthouse are securities.  The DSA defines "security" to include, in relevant part: "any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; . . . or, in general, any interest or instrument commonly known as a 'security.'"[145]  While Plaintiff Trustee pleads that the Lighthouse Transaction involved "stock in a corporation or a joint stock company," no corporations—and thus, no stock—were involved in the Lighthouse Transaction.[146]  There are no other allegations as to why these interests would qualify as securities.  For all these reasons, Plaintiff Trustee's claim for securities fraud must be dismissed.

---

[142] FAC ¶ 135.

[143] *See id.*; *see* FAC ¶¶ 28, 37.

[144] *See Matter of Rehabilitation of Indem. Ins. Corp., RRG*, No. 8601-VCL, 2014 WL 1154057, at *10 (Del. Ch. Mar. 21, 2014) ("Although RB Entertainment may lack knowledge of what the Commissioner's investigation has uncovered, it cannot lack knowledge of the substance of the allegations about Cohen's conduct. Cohen controls RB Entertainment, and his knowledge is imputed to the entity.").

[145] *See* 6 Del. C. § 73-103(23).

[146] FAC ¶ 92; *see generally* CEA (identifying the entities involved in the Lighthouse transaction as limited liability companies and limited partnerships).

### 3. *Plaintiff Trustee Has Failed to Show Control Person or Aiding Liability.*

65.     Because Plaintiff Trustee has failed to state an underlying violation of any securities laws, Plaintiff Trustee's claims for secondary liability (both control person and aiding and abetting liability) must be dismissed.[147]  To state a claim for control person liability, Plaintiff Trustee is required to plead: (1) an underlying violation by a controlled person or entity; (2) that the Defendants are controlling persons; and (3) that the Defendants were in some meaningful sense culpable participants in the fraud.[148]  Plaintiff Trustee's allegations must "detail[] the manner in which [the Defendants] . . . tightly controlled" the business and operations of the entities making the allegedly misleading statements.[149]  As explained above, Plaintiff Trustee has failed to state an underlying violation, and for that reason alone its secondary liability claims must fail.  Further, Plaintiff Trustee makes only threadbare assertions of control, stating that the Defendants "directly or indirectly controlled EMG and EMG Lighthouse Holdings, LLC."[150]  Plaintiff Trustee does not sufficiently tie the alleged controllers (nearly every other named Defendant) to the alleged primary violators, EMG and EMG Lighthouse Holdings.  Plaintiff Trustee's reliance on positions and titles of certain Defendants to establish control is plainly insufficient.[151]

---

[147] *See* 6 Del. C. § 73-605(b) (providing for control person and aiding and abetting liability only if there is "a seller or buyer liable under" the DSA); *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484 (3d Cir. 2013) ("Under the plain language of the [federal securities] statute, plaintiffs must prove not only that one person controlled another person, but also that the 'controlled person' is liable under the [Exchange] Act.") (analyzing analogous language under the federal securities statute).

[148] *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 560–61 (D. Del. 2002); *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880, 885 (3d. Cir. 1975).  Defendants rely on federal securities cases as persuasive authority because the operative language of the DSA is substantially similar to that of the federal securities act.  *Compare* DSA 6 Del. C. § 73-605(b) *with* 15 U.S.C. § 78(a).

[149] *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 286 (3d Cir. 2006).

[150] FAC ¶ 139.

[151] *See In re Digital Island Sec. Litig.*, 223 F. Supp. 2d at 561 ("[I]t is well-settled that the mere fact that an individual is a director of a firm is not sufficient to show he is a controlling person of the firm.") (internal quotations omitted); *LLDVF, L.P. v. Dinicola*, No. CIV.A. 09-1280 JLL, 2010 WL 3210613, at *14 (D.N.J. Aug. 12, 2010) (applying analogous federal law and noting that conclusory allegations that defendant entities controlled their directors, without accompanying factual assertions, fail to show control).

66.     Plaintiff Trustee also fails to plead the critical nexus that "defendants were in some meaningful sense culpable participants in the fraud."[152]  Control person liability does not turn on mere application of respondeat superior.[153]  Without specific factual allegations as to how each Defendant *culpably participated* in an alleged fraud through EMG and/or EMG Lighthouse Holdings, the control liability claims cannot survive dismissal.  Neither can the aiding and abetting liability claims, which require the Plaintiff Trustee to plead that each Defendant "materially" aided in the sale of the securities.[154]  It is insufficient to "restate the legal standard for control person liability" without providing "adequate facts to support these allegations," and these claims must be dismissed.[155]

**K.  <u>Plaintiff Trustee Has Failed to State a Claim for Negligent Misrepresentation</u>**

67.     Plaintiff Trustee's claim for negligent misrepresentation against the Individual Defendants and EMG White Star Holdings must fail because (1) Plaintiff Trustee's formulaic recitation of the elements fails to plead the essential elements of negligent misrepresentation as required even by Rule 8, much less with the particularity required by Rule 9(b); (2) the economic loss doctrine precludes recovery; and (3) the "gist of the action" doctrine precludes Plaintiff Trustee's claim because Plaintiff Trustee fails to plead an independent tort.[156]

68.     Under Delaware law,[157] a claim of negligent misrepresentation "requires proof of all of the elements of common law fraud except 'that plaintiff need not demonstrate that the

---

[152] *Cf. In re Digital Island Sec. Litig.*, 223 F. Supp. 2d at 560.

[153] *Rochez Bros.*, 527 F.2d at 884–85 ("The legislative history of [Exchange Act] Section 20(a) illustrates that Congress intended liability to be based on something besides control.  That something is culpable participation.").

[154] 6 Del. C. § 73-605(b).

[155] *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d at 563.

[156] Additionally, to the extent Plaintiff Trustee's claim is governed by Texas law, it is time barred.  *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011); Tex. Civ. Prac. & Rem. Code § 16.003(a).

[157] As explained above, Delaware law applies to the tort claims alleged in the Petition, including Plaintiff Trustee's claim for negligent misrepresentation.  *See* Part IV.H.  In the unlikely event Texas law applied, which it does not, Plaintiff Trustee's claim would be time-barred.  Tex. Civ. Prac. & Rem. Code § 16.003(a); *Exxon*, 348 S.W.3d at 202.

misstatement or omission was made knowingly or recklessly.'"[158]   Moreover, where, as here, a

negligent misrepresentation claim is premised on the same assertions as one for fraud, a plaintiff

must plead that claim with the same particularity that applies to fraud.[159]   Because Plaintiff Trustee

here has "failed to plead its common law fraud claim with the requisite particularity, its negligent

misrepresentation claim fails for the same reason."[160]

69.     A claim for negligent misrepresentation also requires either "(i) a special

relationship between the parties over which equity takes jurisdiction (like a fiduciary relationship)

or (ii) justification for a remedy that only equity can afford."[161]   Plaintiff Trustee fails to allege any

relationship amongst the parties from which equitable duties arise.   The present dispute is at most

a contractual one, which Plaintiff Trustee fails to properly plead, as explained above.

70.     Even if Plaintiff Trustee properly pleaded the essential elements of negligent

misrepresentation, which it has not, "[t]he economic loss doctrine 'prevents plaintiffs from

recovering in tort for losses that are solely economic in nature.'"[162]   Plaintiff Trustee only claims

damages related to the alleged overpayment of Lighthouse Transaction and related capital

expenditures.[163]   As such, Plaintiff Trustee's claim for negligent misrepresentation must also fail

under the economic loss doctrine.

71.     Finally, Plaintiff Trustee's claim for negligent misrepresentation should also be

dismissed under the "gist of the action" doctrine.[164]   "The gist of the action doctrine precludes tort

---

[158] *Fortis Advisors*, 2015 WL 401371, at *9 (internal citations omitted).

[159] *See, e.g.*, *Benchmark Elecs.*, 343 F.3d at 723; *Williams,* 112 F.3d at 177.

[160] *Fortis Advisors*, 2015 WL 401371, at *9 (internal citations omitted).

[161] *Id.* (internal citations omitted).

[162] *RBATHTDSR, LLC v. Project 64 LLC*, No. CV 19-1280-RGA, 2020 WL 2748027, at *4 (D. Del. May 27, 2020)
(internal citations omitted).   Delaware law recognizes a narrow exception to this doctrine if "plaintiff can establish:
'(1) defendant supplied the information to the plaintiff for use in business transactions with third parties; and (2)
defendant is in the business of supplying information . . . .'" *See id.*   Plaintiff Trustee has failed to plead either element.

[163] FAC ¶ 62.

[164] *RBATHTDSR*, 2020 WL 2748027, at *4 (internal citations omitted).

claims that arise from contractual breaches and requires Plaintiff to point to independent events that give rise to a tort claim."[165] As Plaintiff Trustee's claim for negligent misrepresentation merely regurgitates their allegations for breach of contract,[166] Plaintiff Trustee has failed to meet the pleading requirements for a claim of negligent misrepresentation.

**L.  Plaintiff Trustee Has Failed to State a Claim for Civil Conspiracy**

72.    Finally, Plaintiff Trustee's claim for civil conspiracy against all Defendants must be dismissed.[167] "[A] claim for civil conspiracy requires a plaintiff to show (1) a combination of two or more persons, (2) an unlawful act done to further the conspiracy, and (3) damages."[168] Civil conspiracy "is not an independent cause of action, and thus, a civil conspiracy claim must be predicated upon an underlying wrong."[169] Accordingly, Plaintiff Trustee must plead and prove both that a civil conspiracy existed between the Defendants and the elements of the underlying wrong.[170] Because Plaintiff Trustee has failed to properly plead any underlying wrong,[171] as explained above, Plaintiff Trustee's claim for civil conspiracy must be dismissed. Even if Plaintiff Trustee had properly pleaded an underlying wrong (which it has not), the allegations that "Defendants engaged in a conspiracy" are bare conclusions that are insufficient to meet Plaintiff Trustee's pleading burden.[172] As such, the claim must be dismissed.

---

[165] *Id.* (internal citations omitted).

[166] *Compare* FAC ¶¶ 77-81 (negligent misrepresentation claim) *with id.* ¶¶ 117-121 (breach of contract claim).

[167] As explained above, Delaware law applies to the tort claims alleged in the Petition, including Plaintiff Trustee's claim for civil conspiracy. *See* Part IV.H. In the event Texas law applies, however, Plaintiff Trustee's claim is time-barred. *See Mellon*, 17 S.W.3d at 435 n.1.

[168] *Eames v. Nationwide Mut. Ins. Co.*, 412 F. Supp. 2d 431, 438 (D. Del. 2006) (internal citations omitted).

[169] *Id.* (internal citations omitted).

[170] *Id.*

[171] Moreover, "unless the breach also constitutes an independent tort, a breach of contract cannot constitute an underlying wrong on which a claim for civil conspiracy could be based; similarly, a claim for civil conspiracy cannot be predicated on a breach of the implied *contractual* covenant of good faith and fair dealing unless the breach also constitutes an independent tort." *Kuroda*, 971 A.2d at 892 (emphasis in original).

[172] *Iqbal*, 556 U.S. at 678.

### M. **Plaintiff Trustee Has Failed to Plead Alter Ego Liability as to the EMG Funds**

73. Plaintiff Trustee fails to plead facts sufficient to support its newly-added alter ego liability theory, which is designed to subject the EMG Funds to liability solely based on EMG White Star Holdings' and EMG Lighthouse Holdings' alleged wrongdoing.[173] Plaintiff Trustee's allegations that EMG used the EMG Funds to exert control over the White Star and EMG White Star Holdings are conclusory and the Court should disregard them.[174]

74. "'Persuading a Delaware court to disregard the corporate entity is a difficult task.'"[175] Piercing the corporate veil under the alter ego theory "'requires that the corporate structure cause fraud or similar injustice.'"[176] Effectively, "the corporation must be a sham and exist for no other purpose than as a vehicle for fraud."[177]

75. Mere dominion and control of the parent over the subsidiary will not support alter ego liability.[178] Instead, the degree of control required is "exclusive domination and control . . . to the point that [the subsidiary] no longer ha[s] legal or independent significance of [its] own."[179]

76. Beyond a lone conclusory allegation that "[White Star] Holdings' and the EMG-Related Entities' business form[s] should be disregarded because they were organized and operated as a mere tool or business conduit of Defendants EMG and the Managers, Members, Officers, and Executives, who use the protection of those entities as a vehicle to insulate themselves from

---

[173] *See Doberstein v. G-P Indus., Inc.*, No. CV 9995-VCP, 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015).

[174] *See Iqbal*, 556 U.S. at 678–80; FAC ¶¶ 154-157.

[175] *Wallace ex rel. Cencom Cable Income P'rs II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999) (quoting *Harco Nat. Ins. Co. v. Green Farms. Inc.*, No. Civ. A. 1131, 1989 WL 110537, at *4 (Del. Ch. Sept. 19, 1989)).

[176] *Wallace*, 752 A.2d at 1183 (quoting *Outokumpu Eng'g Enterprises, Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 729 (Del. Super. Ct. 1996)).

[177] *Wallace*, 752 A.2d at 1183 (emphasis added).

[178] *Outokumpu*, 685 A.2d at 729 (citing *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 271 n.15 (D. Del. 1989)).

[179] *Outokumpu*, 685 A.2d at 729 (citation omitted).

liability for their own misconduct,"[180] Plaintiff Trustee does not make a single factual allegation tending to demonstrate that the EMG Funds "exist for no other purpose than as a vehicle for fraud."[181]  Instead, Plaintiff Trustee's alter ego liability claim is "merely an attempt to bootstrap a legal claim into the Court of Chancery's jurisdiction through the 'invocation of familiar chancery terms.'"[182]  That attempt cannot succeed.

## V.   <u>CONCLUSION AND PRAYER</u>

For the foregoing reasons, Defendants respectfully request that the Court dismiss with prejudice Plaintiff Trustee's First Amended Complaint in its entirety against all Defendants pursuant to Federal Rules 12(b) and 9(b), and Bankruptcy Rules 7009 and 7012(a), and grant Defendants such other relief deemed just and proper.

---

[180] FAC ¶ 157.

[181] *Wallace*, 752 A.2d at 1183.

[182] *McMahon v. New Castle Assocs.*, 532 A.2d 601, 603 (Del. Ch. 1987).

Dated: July 9, 2021                                    Respectfully Submitted,


**GIBBS & BRUNS LLP**                                  **AKIN GUMP STRAUSS HAUER & FELD LLP**

Kathy D. Patrick                                       Marty L. Brimmage, Jr.
Southern District No. 7075                             Southern District No. 30464
TX Bar No. 15581400                                    TX Bar No. 00793386
1100 Louisiana Street, Suite 5300                      M. Scott Barnard
Houston, Texas 77002                                   Southern District No.  22873.
Telephone: (713) 751-5253                              TX Bar No. 24001690
Facsimile: (713) 750-0903                              Lauren E. York
kpatrick@gibbsbruns.com                                Southern District No. 3633012
                                                       TX Bar No. 24098647
         - and –                                       2300 N. Field Street, Suite 1800
                                                       Dallas, Texas 75201
**SULLIVAN & CROMWELL LLP**                            Telephone: (214) 969-2800
Thomas C. White                                        Facsimile:  (214) 969-4343
125 Broad Street                                       mbrimmage@akingump.com
New York, New York 10004-2498                          sbarnard@akingump.com
Telephone:  (212) 558-4000                             lyork@akingump.com
Facsimile:  (212) 558-3588
whitet@sullcrom.com                                    *Attorneys for the EMG Defendants*


*Attorneys for Non-EMG Directors*

**<u>Certificate of Service</u>**

I certify that on July 9, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

_____
Marty L. Brimmage, Jr.

**<u>Exhibit A</u>**
**Fourth Amended and Restated Limited Liability Company Agreement**

**FILED UNDER SEAL**

**<u>Exhibit B</u>**
**Contribution and Exchange Agreement**


**FILED UNDER SEAL**